**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ILA LAFRENTZ, et al. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.: 4:18-cv-04229 |
| | § | |
| 3M COMPANY, et al. | § | |
| | § | |
| Defendants. | § | |
| | § | |

### DEFENDANT 3M COMPANY'S SECOND SUPPLEMENTAL EXPERT WITNESS DISCLOSURES UNDER FEDERAL RULE OF CIVIL PROCEDURE 26(a)

Defendant 3M Company ("3M") submits the following second supplemental expert witness disclosures for expert witnesses it may use at trial.

### PRELIMINARY STATEMENT

These second supplemental disclosures are based upon information currently available to 3M. This is a lawsuit in which Plaintiffs allege that Plaintiff James B. LaFrentz was injured as a result of exposure to asbestos. Based on information known to date, the 3M 8710 respirator appears to be the only 3M product allegedly at issue in this matter. Discovery is still continuing in this action. This disclosure by 3M is based on the discovery that has been completed to date. 3M specifically reserves the right to amend, supplement or modify these disclosures at the conclusion of discovery in this case and as more information becomes known. Subject to the reservations stated herein, and 3M's right to supplement this disclosure, 3M discloses below its experts who may be called to testify at the time of trial.

# 3M COMPANY'S TESTIFYING EXPERT WITNESSES

**Erik Johnson, M.P.H, C.I.H., C.S.P**
**3M Center Building, 235-2E-91**
**St. Paul, Minnesota 55144**
**(651) 737-2713**

Mr. Johnson, who is a Certified Industrial Hygienist, will testify concerning various subject areas, including the design and utility of respiratory protection equipment manufactured by 3M which allegedly was worn by Plaintiff in this case. Mr. Johnson will also provide opinion testimony concerning the applicable regulations and industry standards relating to respiratory protection equipment. Further, Mr. Johnson may give opinion testimony addressing OSHA regulations and industry standards that apply to employers in this litigation.

Mr. Johnson has been employed by 3M for over 25 years. As a result of his experience and employment with 3M, Mr. Johnson has knowledge concerning the design and utility of 3M respiratory protection equipment. He will testify that 3M respiratory protection equipment is safe and effective for the intended purpose of the product. Mr. Johnson is familiar with the types of laboratory testing conducted by 3M for respiratory protection equipment, and will testify concerning the laboratory testing, findings of such testing, significance of the testing results, and that the testing conducted by 3M was appropriate and adequate. His testimony may include information concerning the materials and component parts utilized in the manufacture of 3M respiratory protection equipment. He may provide opinion testimony relating to the filtration capability of 3M respiratory protection equipment. Mr. Johnson may also testify as to the testing performed under conditions of humidity and temperature.

Mr. Johnson's testimony will include the subject areas of the testing of respirators by NIOSH and the United States Bureau of Mines (USBM). His testimony may also include

various provisions of 30 CFR 11 and/or 42 CFR 84, including the approval process, extensions of approval, approval labels and markings, quality control plans and other relevant regulatory provisions. He may explain 30 CFR 11 and/or 42 CFR 84 and other governmental regulations that apply to the testing and certification of respirators, including the laboratory testing conducted by NIOSH concerning filtration and pressure drop. His testimony may include an explanation of how the tests provided under 30 CFR 11 and/or 42 CFR 84 are conducted, the test challenge utilized, and the fact that the NIOSH testing and other testing establish that the 3M's NIOSH approved respiratory protection equipment provides appropriate respiratory protection against various dusts, including asbestos, under those circumstances in which the 3M respiratory protection equipment was appropriately selected and used. Mr. Johnson may testify that the laboratory testing conducted by NIOSH under the criteria of 30 CFR 11 and/or 42 CFR 84, although valid for certification, would not represent the conditions or concentrations that would be expected in a job site involving dust exposures where the maintenance free respirators would be appropriately selected and used. His testimony may also address the test conditions for certification under 30 CFR 11 and/or 42 CFR 84, including the loading of the respirator being tested and the resulting airflow resistance for final inhalation and exhalation do not represent actual workplace conditions where the 3M respiratory protection equipment would be appropriately selected and worn.

Mr. Johnson may testify that the NIOSH laboratory testing, including the certification testing was performed in order to assess the potential breathing resistance of the tested respirator, and that the ease with which a worker breathes through any respirator potentially impacts upon the comfort of the person wearing the respirator. Mr. Johnson may testify that an employee, who has been properly trained by the employer, will discard a maintenance free respirator if the

respirator is damaged or if breathing resistance is excessive. Mr. Johnson may testify that an increase in the breathing resistance of a respirator does not affect the health of a worker. Mr. Johnson may explain the results of testing of 3M respiratory protection equipment and the significance of such testing of any alleged exposure experienced by Plaintiff in this case. In that regard, Mr. Johnson will testify regarding laboratory or workplace testing of 3M respiratory protection equipment relating to asbestos or other contaminants conducted by 3M, Los Alamos Scientific Laboratory, McGill University, the Institute of Occupational Medicine and others. Mr. Johnson may offer testimony that the initial certification of certain 3M respiratory protection equipment was for respiratory protection against pneumoconiosis and fibrosis-producing dusts, including, but not limited to, asbestos.

Mr. Johnson's testimony may include an explanation of Permissible Exposure Levels (PELs) and Threshold Limit Values (TLVs). He may offer testimony regarding the acceptance of PELs and TLVs by industrial hygienists, certified safety professionals and others. He will also explain the relationship between PELs or TLVs and assigned protection factors for respirators. His testimony may also relate to the subject areas of particle technology, aerosol physics, particle measurement, particle size distribution, inhalation, exhalation, breathing resistance, filtration, pressure drop and the potential deposition of particle into the lung.

Mr. Johnson has personally performed work in the laboratory and in the field concerning the fit of various types of 3M respiratory protection equipment. He will testify regarding workplace protection factor testing performed by 3M, DuPont, Duracell and others. He may testify on the subjects of protection factors, wear factors, and other related topics. Mr. Johnson may offer opinion testimony that the appropriate protection factors that should be assigned to particular 3M respiratory protection equipment. Mr. Johnson may testify relative to his

experience and knowledge relating to the evolution of the design, use and acceptance of respirators by workers, the methods used to determine the fit of half-facepiece dust respirators and other related subject areas. His testimony may include at all times, the design of the 3M respiratory protection equipment allowed the employer and/or employee to properly fit the respirator and to test the facepiece-to-face seal of the 3M respiratory protection equipment. Mr. Johnson may offer testimony relating to the capability of the 3M respiratory protection equipment to fit employees, and will include within the subject of the fit, fit testing performed by 3M and others, which establishes that the 3M respiratory protection equipment provide an appropriate fit. He may testify that the workplace protection factor studies conducted by 3M and others establish that, in the workplace, the protection provided by a properly fitted 3M respirator will equal or exceed the assigned protection factor for such products. In addition, Mr. Johnson may testify regarding the published studies by OSHA designating the assigned protection factors for half-facepiece particulate respirators. Mr. Johnson may also express the opinion that qualitative fit testing using a validated fit test protocol with test challenges such as saccharin and other validated test challenges represents an appropriate method for an employer to assess the fit of a respirator selected for use by an employee. In addition, he may offer testimony addressing 3M's research, development and testing relating to respirators that 3M introduced to provide employers an opportunity to perform quantitative fit testing. Mr. Johnson will provide testimony concerning 3M's research, development and testing of saccharin as an acceptable fit test challenge and the availability of the 3M Qualitative Face Fit Kit.

Mr. Johnson has reviewed various packages and advertisements relating to 3M respiratory protection equipment. He will testify that the packaging and advertising relating to 3M respiratory protection equipment was reasonable and appropriate at the time of publication.

He will explain that in addition to the packaging, 3M made available to employers information, literature and training concerning the respiratory protection equipment manufactured by 3M. His testimony will include specific reference to additional materials and communications that would have been available upon request by employers in this litigation. He will address the lack of training provided by Plaintiff's employers concerning the use of respiratory protection equipment and the hazards of asbestos.

As a Certified Industrial Hygienist, Mr. Johnson has knowledge concerning the OSHA regulations and industry standards that apply to the responsibilities and obligations of the employers in this litigation. He is also knowledgeable concerning OSHA Directives relating to 29 CFR 1910.1001 and 29 CFR 1910.134 and the subject of respiratory protection. His testimony may include an explanation of the controlling OSHA regulations and industry standards, such as ANSI Z88.2, 1969, 1980 and 1992, and the 29 CFR 1910.134 and the requirement for written respiratory protection programs. Mr. Johnson will provide opinion testimony that based upon accepted industrial hygiene principles, workplace safety practices, and applicable OSHA regulations, the employer has the responsibility to inform and advise employees exposed to hazardous dusts of the potential health consequences of exposure and to communicate other relevant information to employees. Mr. Johnson may testify concerning the violation by employers in this litigation of the controlling OSHA regulations, industry standards, industrial hygiene practices and accepted workplace practices, and the employee's responsibilities. Mr. Johnson will testify relating to applicable OSHA regulations concerning asbestos. He may also testify concerning Plaintiff's asbestos exposure as well as Plaintiff's use of respiratory protective equipment.

3M reserves the right to offer Mr. Johnson's expert opinion testimony concerning any

issue raised by other experts or any other party in this litigation, provided these opinions are within his fields of expertise. 3M reserves the right to offer Mr. Johnson's expert opinion testimony regarding any other 3M protective equipment which may be put at issue by plaintiff.

3M also incorporates by reference the testimony, opinions and bases therefore given in the deposition of Mr. Johnson taken in this case. Mr. Johnson's expert report, list of prior testimony and CV were previously produced but are attached again for convenience as Exhibit A and are incorporated herein.

**Dennis J. Seal, Ph.D., P.E.**
**Seal Design and Engineering, Inc.**
**Human Factors and Product Safety**
**5423 Vanderbilt Avenue**
**Dallas, Texas 75206**
**(214) 823-9364**

Dr. Seal may testify in the subject areas of warnings, human factors product safety engineering and employer responsibility. He may provide opinion testimony concerning the subject areas of packaging, advertisements, sales literature, training literature and other information relating to 3M respiratory protection equipment.

Dr. Seal has reviewed various documents and materials concerning 3M respiratory protection equipment and is familiar with the literature and other information which was made available by 3M to distributors and potential customers. He may explain that in addition to the packaging for the 3M respiratory protection equipment, 3M made available to employers information, user guides, literature and training concerning respiratory protection equipment manufactured by 3M. His testimony may include specific reference to additional materials and communications which would have been available upon request by employers in this litigation. Dr. Seal will testify concerning applicable OSHA regulations, including the 29 CFR 1910.134,

the OSHA Hazard Communication ALT, and industry standards which apply to the conduct of employers in this litigation. In that regard, he may offer opinion testimony addressing the function and purpose of information provided by the manufacturers of products which are to be used in a regulated work environment.

Dr. Seal may testify that the information that accompanied 3M respiratory protection equipment by way of labeling or packaging represented reasonable and appropriate information for the use and limitations of such products. He may further offer opinion testimony that the packaging, advertisements, sales literature, training literature and materials provided by 3M relating to 3M respiratory protection equipment were reasonable and provided appropriate information. He may testify that, as to Plaintiff, the most effective means or method of providing warnings or instructions to Plaintiff would be the communication of that information from Plaintiff's employers. He may explain that the applicable OSHA regulations provide that, for purposes of training, instruction, supervision and warnings, the employer, and not the manufacturer of products, such as 3M, is in the best position to effectively communicate with employees. Dr. Seal may offer opinion testimony that based upon accepted industrial hygiene principles, workplace safety practices and applicable OSHA regulations, the employer has the responsibility to inform and advise employees exposed to asbestos or other hazardous dusts of the potential health consequences of exposure and to communicate other relevant information to employees.

Dr. Seal may testify that, in his opinion, 3M respiratory protection equipment presents no significant health hazard. Dr. Seal may also testify that a warning, as defined by ANSI Z535.4, is not necessary for 3M respiratory protection equipment. Finally, Dr. Seal may express the

opinion that the placement or inclusion of additional information on the packaging of 3M respiratory protection equipment would not modify or alter the conduct of Plaintiff in this case.

With respect to other 3M respiratory protection equipment that Plaintiff allegedly used, if any, Dr. Seal may testify as to any of the areas of testimony set forth above, including as to other 3M respiratory protection equipment, the subject of warnings, ANSI Z535.4, and the employer's responsibility.

3M reserves the right to offer Dr. Seal's expert opinion testimony concerning any issue raised by other experts or any other party in this litigation, provided these opinions are within his fields of expertise.

3M also incorporates by reference the testimony, opinions and bases therefore given in the deposition of Dr. Seal taken in this case. Dr. Seal's expert report, list of prior testimony and CV were previously produced but are again attached for convenience as Exhibit B and are incorporated herein.

**Philip D. Eitzman, Ph.D.**
**3M OH&ESD**
**3M Center**
**Building 235-2B-86**
**St. Paul, Minnesota 55144**
**(651) 733-3483**

Dr. Eitzman is an employee of 3M. He received a B.S. Ch.E. in Chemical Engineering from the University of Florida in 1986 and his Ph.D. in Chemical Engineering from the University of Minnesota in 1994. Dr. Eitzman began his employment at 3M in 1991 in the Bioapplications Laboratory. He joined the Occupational Health and Environmental Safety Division, which manufactures and sells 3M's respiratory protection equipment, in 1994, where he was a Maintenance-Free Respirator Laboratory Group Leader. Dr. Eitzman's work has included the development of filter media for respiratory protection equipment, as well as the

development of disposable respirators, respirator design, manufacturing equipment design and quality control. In addition, Dr. Eitzman is the holder of numerous patents pertaining to respirator filter media. Because Dr. Eitzman is an employee of 3M Company, there is no charge for his testimony.

Dr. Eitzman's opinions are based on his education, training, experience and his review of various 3M documents and data, the testimony and opinions of various 3M lay and expert witnesses, scientific publications, texts and studies, the pleadings and other documents and evidence in this case. Dr. Eitzman has consulted various other sources concerning the matters at issue in this action. Dr. Eitzman may be asked to review and respond to any testimony and documents produced by the parties in this action, and testimony of other witnesses, including lay or expert witnesses, whose testimony or information is not reasonably available by the time of his deposition.

Dr. Eitzman has reviewed, evaluated and analyzed the testing conducted by 3M for 3M respiratory protection equipment and if called, he may testify concerning that testing, including testing performed for purposes of quality control and quality assurance, the results of such testing, and his opinions that the testing conducted by 3M, and the decisions based thereon were appropriate. In addition, Dr. Eitzman will testify about the filtration capability of 3M respiratory protection equipment. Dr. Eitzman may testify regarding laboratory and workplace testing on 3M respiratory protection equipment relating to asbestos or other dusts conducted by 3M, Los Alamos Scientific Laboratory, McGill University, DuPont, and the Institute of Occupational Medicine and others.

Dr. Eitzman is familiar with the materials and process used by 3M in the manufacture of the filter media and other components of 3M respiratory protection equipment. His experience

includes knowledge of the various studies and tests related to 3M respiratory protection, including the testing of respiratory protection equipment under the criteria of 30 CFR 11 and/or 42 CFR 84 and testing performed for purposes of quality control, quality assurance, or otherwise. Dr. Eitzman may testify concerning the testing and certification of respiratory protection equipment, including the laboratory testing conducted by NIOSH concerning filtration and pressure drop. He may testify that in 1972, the government certified certain 3M respiratory protection equipment for respiratory protection against pneumoconiosis- and fibrosis- producing dusts, including asbestos. He may testify that at all relevant times 3M respiratory protection equipment maintained its certification with NIOSH. He may also testify that the laboratory testing conducted by NIOSH under the criteria of 30 CFR 11 and/or 42 CFR 84 with respect to pressure drop was performed in order to assess the potential breathing resistance of the tested respirator, and that the ease with which a worker breathes through any respirator potentially affects the respirator user's comfort and acceptance of the respirator by the user. He may further testify that the breathing resistance of respiratory protection equipment is not an issue of health for the worker. He may offer an opinion concerning the results of studies and tests performed on 3M respiratory protection equipment and any other product identified, under the testing criteria of 30 CFR 11 and/or 42 CFR 84, and with other testing performed by 3M in the laboratory or elsewhere, including the testing with sodium chloride and dioctyl phthalate. Dr. Eitzman is also familiar with tests performed relating 3M respiratory protection equipment under conditions of extreme and prolonged humidity and high temperature, such conditions being more extreme than a workplace setting.

Dr. Eitzman may provide testimony addressing the filtration efficiency of any 3M respiratory protection equipment relative to particle size distribution of respirable dust. He may

also testify generally relating to the capture mechanisms of the respiratory system. Dr. Eitzman may testify that the established permissible exposure limits (PELs) and threshold limit values (TLVs) are recognized and accepted by the Occupational Health community as a means for assessing potentially hazardous exposures.

Dr. Eitzman may testify that based upon his education, experience, training or knowledge of testing relating to 3M respiratory protection equipment the respirator, as tested and certified by NIOSH, could be used to provide respiratory protection up to 10x PEL. He may testify that workplace protection factor studies conducted by 3M and others establish that, in the workplace, the protection provided by a properly fitted 3M respiratory protection equipment will equal or exceed the assigned protection factor of 10 for half-facepiece respirators. He may also testify about the filter media used by 3M for their respiratory protection equipment and that the filter media provided a safe and effective means of filtration. His testimony may also relate to the subject areas of particle technology, aerosol physics, particle measurement, particle size distribution, inhalation and exhalation, breathing resistance, filtration and the potential deposition of particles into the lung.

Dr. Eitzman may provide opinion testimony that the testing and certification of 3M respiratory protection equipment and any other product identified, pursuant to 30 CFR 11 and/or 42 CFR 84, represented a scientifically valid and acceptable test for determining the filtration efficiency of a respirator. He may testify that the testing conducted under the criteria of 30 CFR 11 and/or 42 CFR 84 was an equally valid test of the filter efficiency of a respirator as dusts performed using other test challenge agents, such as sodium chloride or dioctyl phthalate.

Dr. Eitzman may testify relating to the fit of 3M respiratory protection equipment. He may testify concerning how fit testing performed by 3M and others establishes that 3M

respiratory protection equipment will provide a worker with the appropriate fit of the respirator. He may testify that the design of 3M respiratory protection equipment allowed the employer/employee to properly fit the respirator and test the facepiece-to-face seal of such respiratory protection equipment. If called, Dr. Eitzman may also provide opinion testimony that typical workplace conditions of high humidity or temperature will not adversely affect the filter efficiency of 3M respiratory protection equipment.

3M reserves the right to offer Dr. Eitzman's expert opinion testimony concerning any issue raised by other experts or any other party in this litigation, provided these opinions are within his fields of expertise. 3M reserves the right to offer Dr. Eitzman's expert opinion testimony regarding any other 3M protective equipment which may be put at issue by plaintiff.

3M also incorporates by reference the testimony, opinions and bases therefore given in the deposition of Dr. Eitzman taken in this case. Dr. Eitzman's expert report, list of prior testimony and CV were previously produced but are attached for convenience as Exhibit C and are incorporated herein.

**Jennifer Sahmel, M.P.H., C.I.H., C.S.P., F.A.I.H.A.**
**Insight Risk, LLC**
**1035 Pearl Street**
**Boulder, CO 80302**

Ms. Sahmel is Certified Industrial Hygienist (CIH) [American Board of Industrial Hygiene (ABIH)] and a Certified Safety Professional (CSP) [Board of Certified Safety Professionals (BCSP)] with 20 years of experience in human health exposure, risk assessment, and workplace health and safety, she is also a Fellow of the American Industrial Hygiene Association (FAIHA). She has experience in exposure assessment methodologies, the history and state of the science for industrial hygiene over time, health risk decision making, exposure monitoring, and safety

management systems, and has conducted chemical-specific exposure assessments for a wide range of substances.

Ms. Sahmel will testify at trial regarding occupational exposures of Plaintiff as described by Plaintiff, Plaintiff's co-workers, and other alleged exposure witnesses and whether such exposures could be considered as creating a scientifically significant amount of risk for the development of an asbestos-related disease, including the manner in which risk assessment properly may be performed for individuals in various trades or occupations, and a risk assessment for the plaintiffs in these cases.

Ms. Sahmel may testify regarding the recognition, evaluation and control of health and safety hazards, as well as the accepted standards, industrial hygiene practices and workplace safety practices during the years of Plaintiff's employment. She may further testify as to the principles of industrial hygiene and the factors that are important to industrial hygiene studies, the manner in which experts use industrial hygiene data and how the data should be interpreted in specific cases, and the manner in which industrial hygiene data should be properly considered in evaluating exposures.

Ms. Sahmel may further testify as to the state of the art of industrial hygiene during the times relevant to Plaintiff's alleged exposures. State of the art testimony may include whether it was recognized that a risk of development of asbestos-related disease was recognized for persons such as Plaintiff and the appropriate steps to guard against that recognized risk, if any.

She may further testify as to the development and utility of methodologies identifying and measuring asbestos in air, dust and products, and the process of setting threshold limit values ("TLVs"), the OSHA PELS, and other levels for asbestos exposure. This testimony will also

include the historical standards and recommendations from both governmental and non-governmental agencies concerning workplace levels of asbestos exposure.

Ms. Sahmel may further testify as to the relationship between scientific knowledge and the development of public policy standards relating to asbestos exposure, and all aspects of government regulation of asbestos exposure. In addition, she may testify to the development of knowledge regarding the dose-response relationship between exposure to asbestos and disease, and other related matters.

She may testify regarding expert testimony or opinions offered on behalf of Plaintiff, including but not limited to testimony, if any, regarding the evolution of knowledge of the effects of asbestos exposure, standards and regulations applicable to asbestos exposure, and testing done by or on behalf of Plaintiff. She may also testify regarding the asbestos exposure described by Plaintiff, Plaintiff's co-workers, and other alleged exposure witnesses in this case.

Ms. Sahmel may further testify as to the different types of asbestos fiber, their physical and chemical composition, characteristics and uses in various products as well as their potential to cause disease. She may also testify to the exposures in this case, as described by Plaintiff, Plaintiff's co-workers, and other alleged exposure witnesses in this case, and whether the alleged exposures created a significant risk of asbestos-related disease.

Ms. Sahmel is also expected to testify and opine that Plaintiff's employers were responsible to provide Mr. Mullins with a safe and healthful workplace, and to follow applicable workplace safety regulations; Mr. Mullins' employers were responsible to understand and know the concentration of hazardous dust in the workplace and bring the workers' exposure to dust, such as asbestos, below the PEL; Mr. Mullins' employers were responsible to know the concentration of the dust in the workplace and to select the proper safety equipment including

respirators used in his workplace operation.

She may further testify as to the proper and accepted protocols for analysis of airborne samples for fiber release from asbestos-containing products, the potential for various products to release asbestos fibers, and the government and industry standards regarding the same.

In formulating her opinions, Ms. Sahmel may rely upon both unpublished and published studies regarding the manufacturing, handling, installation, and removal of asbestos-containing products and materials.

3M also incorporates by reference the testimony, opinions and bases therefore given in the deposition of Ms. Sahmel taken in this case. Ms. Sahmel's expert report, list of prior testimony and CV are attached as Exhibit D, her and Supplemental Report is attached as Exhibit E, all of which are incorporated herein.

**Tim D. Oury, M.D.**
**Department of Pathology**
**University of Pittsburgh**
**S-785 Scaife Hall**
**3550 Terrace Street**
**Pittsburgh, Pennsylvania 15261**

Dr. Oury is a board certified pathologist who will testify regarding the pathological diagnosis of the medical conditions of Plaintiff, and whether he is of the opinion that Plaintiff actually suffered asbestos-related diseases or from a different disease process. Dr. Oury reviewed available pathological materials, including at least 57 slides, medical records, radiology studies, case materials, and expert reports, including of Ken Garza, Theresa Emory and Dr. Kim Anderson. Dr. Oury will testify that Mr. LaFrentz did not have mesothelioma. He also will testify that a diagnosis of mesothelioma based solely on limited pathology, cytology specimens, or very small biopsies is fraught with hazards and cannot be done to a reasonable degree of medical certainty. He will further testify that the retrieval and preservation of Mr. LaFrentz's

lung tissue for pathological review would have provided a proper basis for a diagnosis and fiber burden/digestion study, which Plaintiffs' failed to do. Dr. Oury will testify that asbestos exposure did not contribute to the pathogenesis of Mr. LaFrentz's renal cell carcinoma. Dr. Oury will further testify as to whether Plaintiff had a condition or illness caused by asbestos exposure. He may also testify on the latency period related to each type of asbestos related disease and the effects of exposure to various asbestos-containing products upon persons in occupational and non-occupational settings. Dr. Oury will further testify regarding the epidemiology of asbestos-related diseases, the criteria for diagnosis of asbestos-related disease, as well as the existence of a dose response relationship between exposure to asbestos and asbestos-related diseases, general causation, and specific causation of Plaintiff's disease(s). Dr. Oury may also testify regarding asbestos-containing products generally, including their asbestos fiber content, manufacture, use and respective ability to cause or contribute to disease, including quantification of exposures to asbestos thermal system insulation products. Dr. Oury will testify that the dose calculated by Plaintiffs' expert Ken Garza did not contribute to the pathogenesis of the tumor involving Mr. LaFrentz's right lung. Dr. Oury may further testify regarding the propensity of various asbestos fiber types to contribute to mesothelioma or other asbestos-related disease. He may also testify regarding the determination of the relative risks of suffering personal injury or death as a result of exposure to various asbestos-containing products in occupational settings. Dr. Oury will explain the dose response relationship between exposure to asbestos and asbestos-related disease for each type or disease alleged.

Dr. Oury may testify regarding any matters included in any reports he prepares for this case and any matters disclosed in any party's witness and expert disclosures and expert reports. Dr. Oury may also testify regarding the existence or non-existence of any alleged asbestos-

related disease in Mr. LaFrentz, including but not limited to, pleural changes, asbestosis, kidney cancer, lung cancer, and/or mesothelioma, where applicable.

He will also testify on general medicine issues regarding asbestos-related diseases including, but not limited to, lung physiology, lung function, lung defense mechanisms and the mechanisms by which asbestos fibers do or do not cause a particular disease. He may also testify that background levels of asbestos fibers in human tissue do not represent disease and background or ambient air exposures do not cause disease. Dr. Oury will testify that any alleged asbestos exposure to Mr. LaFrentz from his work at General Dynamics would not have contributed to the pathogenesis of Mr. LaFrentz's lung tumor, even if it is proven that it is a mesothelioma. This includes the 0.096 fiber/cc year dose calculated by Plaintiffs' expert Ken Garza.

Dr. Oury may also testify whether certain asbestos-containing products are unreasonably dangerous. He may also testify on increased risk of cancer issues. Dr. Oury may also testify on the health consequences of smoking and the relationship between smoking and non-and asbestos-related diseases, generally, and with respect to Mr. LaFrentz. He will testify regarding the contribution if any, of smoking to Mr. LaFrentz's disease(s). Generally and with respect to Mr. LaFrentz, Dr. Oury may testify as to his review and interpretation of x-ray films, review and interpretation of pulmonary function testing, the nature and extent of any impairment or disability, whether a condition is progressive and whether other diseases or conditions were present in Mr. LaFrentz. Dr. Oury will testify that Mr. LaFrentz's work at General Dynamics cannot and did not cause or contribute and was not a substantial factor of any of Mr. LaFrentz's diseases. He may also provide testimony consistent with the disclosure of any other expert disclosed by 3M Company, General Dynamics, or any other party to the LaFrentz cases. Dr.

Oury may also give the following opinions: There is a dose-response relationship for development of any asbestos-related disease, and the dose is the most significant factor in causation of an asbestos-related disease. The risk is proportional to the dose: the greater the accumulating over time. The dose is measured in fiber years, i.e., the product of exposure (f/cc) over time (years). As an example, an individual exposed at a continuous level of 1 f/cc for 20 years will have amassed 20 fibers years of exposure. There are threshold levels of dose necessary before asbestos-diseases will develop. It is also his opinion that the nonoccupationally exposed general public is not at risk for the development of an asbestos-related condition or disease, even though there is asbestos in the ambient air. Thus, because of the large dose needed to cause an asbestos-related disease, a single asbestos fiber does not substantially contribute to disease. Dr. Oury will testify that the dose of the 0.096 fiber/cc years calculated by Plaintiffs' expert Ken Garza did not increase Mr. LaFrentz's disease(s) and did not contribute to the development of any disease. Dr. Oury may testify that exposure to chrysotile asbestos does not increase the risk of asbestos diseases or cause asbestos-related diseases at any level allegedly experienced by Plaintiff from his work at General Dynamics. Dr. Oury may testify that Plaintiff's alleged exposures at General Dynamics was not a substantial factor in the development of Plaintiff's diseases, asbestos-related or not, and did not cause any of Plaintiff's diseases. Dr. Oury may testify to the increased risk and causative role that amphibole products have in the induction of asbestos-related diseases including mesothelioma and the specific disease(s) that Plaintiff had. Dr. Oury may testify that Plaintiff's work with piping and pipe insulation prior to his work at General Dynamics increased Plaintiff's risk of mesothelioma. Dr. Oury may testify to his review and reliance of other expert reports and opinions in this case. It is also anticipated that Dr. Oury will provide testimony and opinions, including in rebuttal, to that of witnesses called by Plaintiff

who offer testimony in these or in related fields. Dr. Oury's testimony will be based on one or more of the following: his training, experience, education, medical and scientific studies, including his own published materials. Additional bases include his ongoing review of the medical, governmental and scientific literature, and case materials as well as review of Mr. LaFrentz's medical records, radiology studies, and all available cytology/pathology materials provided him. Dr. Oury may rely upon all of the testing and opinions of an industrial hygienist disclosed by 3M Company or General Dynamics. Such testing is incorporated by reference. He may or will be provided with product exposure information and other case specific data in this case, including, but not limited to, prior case depositions, complaints/petitions, written discovery responses, and other discovery products and disclosures produced in the LaFrentz lawsuits. In addition, please see Dr. Oury's expert report, CV, and list of prior testimony, which are attached as Exhibit F and incorporated herein. Dr. Oury will testify to the same and related opinions. 3M also incorporates by reference the testimony, opinions and bases therefore given in the deposition of Dr. Oury taken in this case.


**C. Alan Brown, M.D.**
**Cottage Health**
**400 West Pueblo Street**
**Santa Barbara, California 93105**

Dr. Brown is a clinical cardiologist. He is board certified in Internal Medicine and Cardiovascular Diseases. Dr. Brown will testify regarding Mr. LaFrentz's health issues, Mr. LaFrentz 's smoking history and consequences therein, and comorbidities. Dr. Brown will testify to Mr. LaFrentz's severely reduced life expectancy based on Plaintiff's multiple cardiovascular conditions, health, and risk factors, including Mr. LaFrentz's substantial history of smoking and failure of compliance (including to stop smoking), atherosclerotic coronary artery disease, his

first myocardial infarction at age 50 (at least as shown by available medical records), diabetes mellitus type 2 with poor regimen compliance, hypertension, dyslipidemia, peripheral arterial disease, congestive heart failure with severe left ventricular dysfunction and atrial fibrillation. Additional risk factors for progressive atherosclerotic disease including obesity and a long history of cigarette smoking with resultant chronic obstructive pulmonary disease. The bases of Dr. Brown's opinions include his educational background, training, and experience. The bases also include Dr. Brown's review of Mr. LaFrentz's medical history, medical records, case materials, and medical and scientific literature. Dr. Brown will testify, in general and specific to Mr. LaFrentz, regarding the cardiovascular system, cardiology medical issues, and the numerous risk factors, their impact on health, development of disease, and reduction of life expectancy. Dr. Brown will testify that Mr. LaFrentz's life expectancy at death was at most one to

two years because of his multiple cardiovascular conditions and risk factors. It also is anticipated that Dr. Brown will provide testimony and opinions in rebuttal to that of witnesses, if any, called by Plaintiffs' who offer testimony in these or in related fields. Dr. Brown's testimony will be based on one or more of the following: his training, experience, education, medical and scientific studies, including his own published materials. Additional bases include his ongoing review of the medical, governmental and scientific literature, and case materials, including Mr. LaFrentz's medical records. He may or will be provided with product exposure information and other case specific data in this case, including, but not limited to, prior case depositions, complaints/petitions, written discovery responses, and other discovery products and disclosures produced in the LaFrentz lawsuits. In addition, please see Dr. Brown's expert report, CV, and list of prior testimony, which are attached as Exhibit G and incorporated herein. Dr. Brown will

testify to the same and related opinions. 3M also incorporates by reference the testimony, opinions and bases therefore given in the deposition of Dr. Brown taken in this case.

Respectfully Submitted,

/s/ *Michele E. Taylor*
William Book
Southern District Bar No. 1761
Michele E. Taylor
Southern District Bar No. 14240

TAYLOR BOOK ALLEN & MORRIS, L.L.P.
1221 McKinney, Suite 4300
LyondellBasell Tower
Houston, Texas 77010
Telephone: (713) 222-9542
Facsimile: (713) 655-7727
E-mail: wbook@taylorbook.com
mt@taylorbook.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of December, 2020, I electronically filed the foregoing Defendant 3M Company's Second Supplemental Expert Witness Disclosures Under Federal Rule of Civil Procedure 26(a) with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have thereby electronically served this document upon all counsel of record who are registered with the Court's CM/ECF system.

BY:     /s/ Michele E. Taylor
          Michele E. Taylor
          Counsel for Defendant, 3M Company