Case 4:18-cv-04229   Document 133   Filed on 03/31/21 in TXSD   Page 1 of 10

United States District Court
Southern District of Texas
**ENTERED**
March 31, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JAMES B LAFRENTZ, *et al*, § § § Plaintiffs, § VS. § LOCKHEED MARTIN CORPORATION, *et al*, § § § Defendants. § § § § | CIVIL ACTION NO. 4:18-CV-4229 |

## **ORDER**

Pending before the Court is 3M Company's ("3M") and General Dynamics Corporation's ("General Dynamics") (collectively the "Defendants") Motion for Sanctions. (Doc. No. 112). The Plaintiffs have filed a response (Doc. No. 114) and each defendant has filed a reply (Doc. Nos. 115 & 116). In addition, the Court heard oral argument on the motion via telephone conference on March 12, 2021. After considering the motion, briefing, and applicable law, the Court denies the requested relief. Nevertheless, as explained below, the Court is of the opinion that a lesser remedy is appropriate under the circumstances.

### I.   **Background**

This is an asbestos case. The Plaintiffs are family members of the decedent, James LaFrentz, who was employed by General Dynamics from 1978 to 1984. The Plaintiffs claim that LaFrentz was exposed to asbestos while working for General Dynamics and that the 3M dust mask he wore did not sufficiently protect him from that exposure. He filed suit in 2018, but unfortunately died on October 12, 2019. His body was buried a few days later. It is also undisputed that LaFrentz was a heavy smoker during his lifetime. The parties disagree on whether at the time of LaFrentz's

death he was suffering from mesothelioma, which is normally attributable to asbestos exposure, or lung cancer, which could be attributable to his history of heavy smoking.

The instant dispute, however, involves a much more discrete issue—whether the Defendants are entitled to an adverse inference jury instruction because of the Plaintiffs' failure to conduct an autopsy of LaFrentz or otherwise preserve lung tissue following LaFrentz's death. The Defendants claim, and intend to argue at trial, that LaFrentz died from smoking-related lung cancer rather than mesothelioma caused by exposure to asbestos. According to the Defendants, in August of 2019 General Dynamics' counsel told LaFrentz's counsel that General Dynamics disputed LaFrentz's mesothelioma diagnosis. (Doc. No. 112 at 7). It is undisputed that on October 9, 2019, LaFrentz's counsel advised 3M's counsel orally that LaFrentz's death was imminent and 3M's counsel asked that LaFrentz's lung tissue be preserved for analysis upon his death. (*Id.*). 3M's counsel then followed up that afternoon with an email to LaFrentz's counsel that stated in full:

> This letter is to reiterate our discussion today at the status conference to preserve the tissue of Mr. LaFrentz in the event of his passing, including but not limited [to] the lung tissue.

(Doc. No. 112, Ex. 11). The next day, General Dynamics' counsel sent an email to LaFrentz's counsel "join[ing] in [3M's counsel's] letter/request." (*Id.*, Ex. 12 at 1). LaFrentz's counsel did not respond to these emails.

LaFrentz died a few days later on October 12, 2019. (*See id.*, Ex. 3 at 10). He was buried apparently before any of the lawyers knew about his death. (*Id.* at 8). The Plaintiffs did not have an autopsy performed or in any other fashion preserve lung tissue of LaFrentz. (*Id.*). They filed a Suggestion of Death on October 29, 2019. (Doc. No. 46). Plaintiffs Ila LaFrentz (LaFrentz's widow), Katherine Porterfield, Jim LaFrentz, and William LaFrentz (all LaFrentz's children) were all deposed after LaFrentz's death and all testified that they did not know that the Defendants

disputed LaFrentz's mesothelioma diagnosis and that they did not know that the Defendants had requested the preservation of LaFrentz's lung tissue. (*See* Doc. No. 112, Ex. 3 at 11–12; Ex. 13 at 7–8; Ex. 14 at 9–13; Ex. 15 at 7–10). Jim LaFrentz testified further that, at the time of his father's death, he had no reason to question the mesothelioma diagnosis and therefore no cause to ask for an autopsy. (*Id.*, Ex. 14 at 12–13). Obviously, the requests of defense counsel made to Plaintiffs' counsel were never passed along to the family. The Defendants knew that LaFrentz had been buried without an autopsy and without any lung tissue preservation as early as October 22, 2019, (*see* Doc. No. 112 at 8), but filed this motion for sanctions on January 15, 2021. The Defendants' expert has testified that the tissue that was retained from LaFrentz prior to his death was not enough to make a definitive diagnosis and that the only way to say with certainty whether LaFrentz had mesothelioma or non-small cell lung cancer was through a postmortem examination. (*See* Doc. No. 112, Ex. 16 at 7). The Defendants contend that this course of action by the Plaintiffs and/or their counsel constitutes spoliation of evidence and that the Court should grant an adverse inference jury instruction to remedy it.

The Plaintiffs argue that the oral communications and preservation letter were not enough to trigger a duty on their part to conduct an autopsy of LaFrentz, that any failure to perform an autopsy did not constitute "destruction" of evidence as required for a finding of spoliation, and that the Defendants have failed to establish that any additional tissues obtained by an autopsy would have been favorable to their defenses. (*See* Doc. No. 114). In addition, they contend that, even if there was a duty to preserve, they properly discharged it by turning over all retained tissues obtained from LaFrentz prior to his death. (*See id.*).

3

## II.     Legal Standard

"Spoliation of evidence is the destruction or the significant and meaningful alteration of evidence." *Crain v. City of Selma*, 952 F.3d 634, 639 (5th Cir. 2020). "The authority to sanction litigants for spoliation arises jointly under the Federal Rules of Civil Procedure and the court's own inherent powers." *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). Among the sanctions available to the court is the adverse inference jury instruction—an instruction to the jury that it "may draw an adverse inference that a party who intentionally destroys important evidence in bad faith did so because the contents of those documents were unfavorable to that party." *Crain*, 952 F.3d at 639 (quoting *Whitt v. Stephens Cty.*, 529 F.3d 278, 284 (5th Cir. 2008)). A party seeking the sanction of an adverse inference instruction must establish that: (1) the party having control over the evidence had a duty to preserve it at the time it was destroyed; (2) the evidence was destroyed with a "culpable state of mind," and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense. *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 340 (M.D. La. 2006) (citing *Zubulake*, 220 F.R.D. at 220). A party has a duty to preserve evidence "when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). In addition, an adverse inference instruction is permitted only when the moving party can show that the spoliation was done with "bad faith" or "bad conduct." *Id.* In this context, bad faith means "destruction for the purpose of hiding adverse evidence." *Id.*

In addition, Federal Rule of Civil Procedure 35 governs physical and mental examinations of parties. *See* Fed. R. Civ. Pro. 35. To be entitled to an independent medical examination (IME), a party must show: (1) that the physical or mental state of the party is in controversy, and (2) that

there is good cause for ordering the examination. *Roberts v. AC Marine, Inc.*, CIV.A. 12-2317, 2013 WL 1814923, at *2 (E.D. La. Apr. 29, 2013) (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 106 (1964)). Even though the text of Rule 35 does not state explicitly that it applies to autopsies or other postmortem examinations, many courts, including several within the Fifth Circuit, have held that it does. *See, e.g., In re Certain Asbestos Cases*, 112 F.R.D. 427, 434 (N.D. Tex. 1986) (holding that Rule 35 can be used to compel autopsies); *Coates v. AC & S, Inc.*, 133 F.R.D. 109, 110 (E.D. La. 1990) (acknowledging that, under Rule 35, all parties have the right to a report following "a pathologist's or other expert's examination of tissue samples taken from the body of a person who is now deceased"); *see also Patterson v. Def. POW/MIA Accounting Agency*, 343 F. Supp. 3d 637, 656–57 (W.D. Tex. 2018) (collecting cases). Accordingly, the proper mechanism to compel an autopsy is to file a motion under Rule 35 and make a similar showing as required when requesting an IME.

### III. Analysis

#### A. What framework applies?

The Defendants argue that the usual spoliation of evidence analysis that is laid out above applies. According to them, there is no reason for this Court to deviate from the same framework it would apply if a party destroyed important documents or electronically stored information. Those types of evidence are no different than lung tissue. In contrast, the Plaintiffs argue that the spoliation analysis cannot apply because the Defendants never moved for an autopsy under Rule 35. According to them, they had no duty to preserve the lung tissue absent a court order following briefing on a motion under Rule 35.

The Court is of the opinion that, under the unique fact situation presented here, both parties are partly correct. The Defendants did not have an inherent right to an examination or an autopsy

of LaFrentz. *See Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 391 (S.D. Tex. 2013). Accordingly, there was no preexisting duty to preserve LaFrentz's lung tissue. A physical examination under Rule 35, including an autopsy, is distinct from other discovery provisions in that the requesting party must make an affirmative showing that it is entitled to it. *Id.* The Supreme Court has acknowledged that "there must be greater showing of need under Rule[ ] . . . 35 than under the other discovery rules." *Schlagenhauf v. Holder,* 379 U.S. at 118. Even though parties are under a duty to preserve most evidence based merely on its relevance, a duty to perform a physical examination or autopsy is only triggered upon the court's order, after the moving party submits proof of good cause. *See In re Certain Asbestos Cases*, 113 F.R.D. 612, 614 (N.D. Tex. 1986). To hold instead that the Plaintiffs had a duty to preserve LaFrentz's body and perform an autopsy, without a formally-filed request from the Defendants, would render the "good cause" requirement meaningless. As Plaintiffs point out, such a holding would enable "every defendant in every critically injured lawsuit [to] avoid the time of and expense of securing admissible evidence about good cause and merely send a letter, thereby shifting the burden to the plaintiff to conduct an autopsy or risk a spoliation of evidence sanction." (Doc. No. 114 at 6).

On the other hand, the Plaintiffs (or at the very least their counsel) were on notice that the Defendants wanted LaFrentz's lung tissue preserved or an autopsy performed. The Plaintiffs do not dispute that their counsel never responded to defense counsel's request that LaFrentz's lung tissue be preserved. The Defendants are correct that:

> After Defendants notified Plaintiffs that they disputed the mesothelioma diagnosis and wanted LaFrentz's lung tissue preserved, Defendants reasonably expected that Plaintiffs would at least notify Defendants of LaFrentz's passing. Defendants then would have had the opportunity to confer with Plaintiff about an autopsy and, potentially, seek the Court's guidance under Rule 35 if no agreement could be reached.

(Doc. No. 115 at 5). While the case law indicates that it would not have been inappropriate for the Defendants to move under Rule 35 prior to LaFrentz's death, *see Asbestos Cases*, 112 F.R.D. at 429 (considering Rule 35 motion that requested an order requiring an autopsy "in the event of the death of any plaintiff"), it is not surprising that the Defendants were hesitant to make what some might consider a morbid motion prior to LaFrentz's passing. Even if the Plaintiffs did not have a duty to preserve the lung tissue or conduct an autopsy before they received the preservation request orally and by email, they likely did after these requests, or at the very least the Plaintiffs' counsel had a duty to respond to defense counsel's requests.

Accordingly, the Court is left with one "coulda" and two "shouldas." The Defendants could have filed a motion for an autopsy under Rule 35 as soon as they realized they needed additional lung tissue to properly dispute the mesothelioma diagnosis, but certainly when they knew that LaFrentz's death was imminent. The Plaintiffs' counsel undoubtedly should have in some way responded to the Defendants' request to preserve the lung tissue. In the absence of a response and a resolution of the issue, they should have taken steps to preserve the evidence. Waiting until after the burial to tell Defendants' counsel that LaFrentz had died and that no steps to preserve the evidence had been taken when the Plaintiffs' counsel knew that the Defendants had made such a request days earlier was at best unprofessional and at worst a bad faith attempt to prevent the Defendants from obtaining relevant evidence.

**B.    Is a remedy appropriate?**

Despite this analysis, the Court is not convinced that the movants have met their burden to show that the Plaintiffs had a duty to conduct an autopsy after LaFrentz died, such that their failure to do so equates to bad faith and a finding of spoliation. Nevertheless, it is also true that the Plaintiffs' failure to respond to the preservation request prejudiced the Defendants by leaving them

7

unable to take appropriate and timely action to ask the Court for an autopsy. If counsel was going to disagree with their request, counsel should have told them, and in so doing given them the opportunity to timely approach the Court. If he was going to agree, he should have taken steps to do so immediately. Moreover, this request should have been passed along to the family members. This Court, while not convinced that these missteps were the result of a mere omission or were the result of bad faith, is convinced the request should have been honored or denied in a timely and appropriate fashion, and that some remedy for this less than candid behavior is needed.

Even though the Court has not held that the Plaintiffs spoliated evidence in bad faith, the framework for selecting an appropriate spoliation remedy is still instructive. When doing so, a court must ensure that the remedy is "no harsher than necessary to respond to the need to punish or deter and to address the impact on discovery." *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 618 (S.D. Tex. 2010). In other words, any remedy should "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party." *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 801 (N.D. Tex. 2011) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)). In addition, Federal Rule of Evidence 611 gives the Court broad discretion and control "over the mode and order of examining witnesses and presenting evidence." Fed. R. Evid. 611(a); *see also Cranberg v. Consumers Union of U.S., Inc.*, 756 F.2d 382, 391 (5th Cir. 1985) (trial judge's "duty extends far beyond ruling on objections and preserving decorum in the courtroom" and has "an overall responsibility to see that the trial is just").

Here, the Court aims to fashion a remedy that will encourage counsel to be forthright with prompt and appropriate responses to requests from opposing counsel and to restore the prejudiced

parties (the Defendants) to a somewhat level playing field. Even if true that the Plaintiffs, themselves, were not aware that the Defendants were contesting LaFrentz's mesothelioma diagnosis and had requested that LaFrentz's lung tissue be preserved, Plaintiffs' counsel has not disputed that he was aware. Counsel should have, at the very least, discussed the possibility of an autopsy with his clients and informed opposing counsel how they planned to proceed.

Even though the Court is not granting the requested adverse inference jury instruction, *see Rimkus*, 688 F. Supp. 2d at 619 ("adverse inference instructions . . . are properly viewed as among the most severe sanctions a court can administer"), it can take less drastic measures. For example, a different Southern District of Texas court fashioned a remedy less severe than an adverse inference instruction in *Rimkus*, 688 F. Supp. 2d 598. There, the non-spoliating party could not sufficiently show that the spoliating party had done so intentionally and with bad faith. *Id.* at 620. Therefore, while not appropriate to outright instruct the jury to infer that the deleted evidence would have been unfavorable to the spoliating party, the court instead "allow[ed] the jury to hear the evidence about the deletion of emails and attachments and about discovery responses that concealed and delayed revealing the deletions." *Id.* at 646. The jury was then instructed that the spoliating party had a duty to preserve the evidence and the jury was asked whether the party's failure to do so was intentional to prevent its use in the litigation. *Id.* If the jury answered yes to that question, then it was "instructed that it may, but [was] not required to, infer that the content of the deleted [and] lost emails would have been unfavorable to the defendants." *Id.*

Since the Court is convinced that Plaintiffs' counsel acted intentionally but is not convinced that the Plaintiffs acted in bad faith, it will not instruct the jury that they can infer the missing evidence would have been adverse. In addition, the Court recognizes that the presentation of evidence on this issue, as done in *Rimkus*, may be cumbersome because attorneys would have to

9

take the stand. Accordingly, the Court will instruct the jury, if requested to, that: (1) the Defendants timely made an appropriate request to Plaintiffs' counsel to preserve LaFrentz's lung tissue; (2) that the request was not refused, rejected, or otherwise responded to as it should have been; (3) that LaFrentz died and was buried before Plaintiffs' counsel informed the Defendants' counsel about the death; and (4) that, due to the conduct of the Plaintiffs, the lung tissue that could have aided the experts in proving the cause of death was buried before the Defendants or the Court were informed and could have taken action. The Court denies the request to actually instruct the jury as to what, if any, inferences it should draw from this instruction.

## IV.   Conclusion

For the foregoing reasons, the Court grants in part and denies in part the Defendants' motion for sanctions (Doc. No. 112).

Signed at Houston, Texas, this __31st__ day of March, 2021.

Andrew S. Hanen
United States District Judge