corporate tax rate is much lower than the maximum income tax rate for individuals. A corporation may choose its own fiscal year. Corporations may deduct from 85% to 100% of the dividends they receive on stock they own from their gross income.[79] A corporation is less restricted in its deduction for losses and bad debts than is an individual.[80] The corporation may also deduct the premiums that it pays on group term life insurance.[81] Under certain circumstances, the corporation may reimburse employees for medical expenses or pay for accident and health insurance and those amounts will not be income to the employees but will be deductible to the corporation.[82] The corporation may also set up a wage continuation plan under section 105(d) of the Code which will allow an employee to receive as much as $100.00 per week of his salary tax-free when he is sick. Finally, the corporation may pay up to a $5,000.00 death benefit, which is tax-free income to the survivor of an employee under section 101(b) of the Code. Thus, the disadvantages may very well be outweighed by the advantages.

In conclusion, however, the "score" really cannot be given. There are indeed so many factors involved in the determination that neither form of organization is unqualifiedly "better" than the other. For each individual, the factors will undoubtedly be different. No one answer can be given. One conclusion, however, can be drawn. Every professional should endeavor to become knowledgeable in the numerous advantages that the tax law gives him and should carefully consider how he can best be helped by their provisions.

*William Levin*

---

[79] See INT. REV. CODE OF 1954, § 243. Individuals have no dividend deduction and may exclude only the first $100.00 of dividends received in the taxable year. INT. REV. CODE OF 1954, § 116(a).

[80] INT. REV. CODE OF 1954, §§ 165, 166, 172, 270.

[81] Rev. Rul. 56-400, 1956-2 CUM. BULL. 116.

[82] INT. REV. CODE OF 1954, §§ 105, 106.

## VOIR DIRE EXAMINATION OF JURORS CONCERNING INSURANCE COMPANY INTERESTS

One of the evidential questions with which the courts have been vitally and justifiably concerned is whether the existence of liability insurance may be injected into a negligence case by innuendo or otherwise. Admittedly, the fact that the defendant is covered by liability insurance is not evidence of negligence. This ripened into an accepted view from which there was forged a general rule that evidence of such insurance is

# Exhibit 7

inadmissible. Such evidence is ordinarily irrelevant to any of the issues in the case. It tends not only to influence jurors to bring in verdicts against defendants on insufficient evidence, but also to award higher damages than they would have if they believed that the defendants themselves would be required to pay.[1]

There are, however, recognized exceptional situations in which such evidence is admissible:

> First, the fact of insurance may be relevant upon some other issue, such as agency or ownership or control of the vehicle or instrumentality involved.
> Second, the fact of insurance may be relevant as bearing upon the credibility of a witness.
> Third, the admission of a party bearing on negligence or damages may include a reference to the fact of insurance which cannot be severed without substantially lessening the evidential value of the admission.
> Fourth, the fact of insurance may be elicited unintentionally by examining counsel, when the witness makes an unexpected or unresponsive reference to insurance. . . . The reference will be stricken on request but is usually not a ground for mistrial or reversal.[2]

Another situation which might be termed an exception, and which reflects the practice in most states, is permitting plaintiff's counsel in their *voir dire* examination to examine prospective jurors about their possible interest in a liability insurance company where it appears that the defendant is protected by insurance.[3] This poses an inescapable dilemma.

## THE DILEMMA

On the one hand, the plaintiff is entitled to have those jurors eliminated who have a financial interest in the result of the trial by reason of an interest in defendant's insurance company; but on the other hand, the defendant is entitled to a jury whose verdict will not reflect the fact that it had in mind that an insurance company, and not the defendant, would be required to pay the judgment. One horn of this dilemma is created by the understandable inclination on the part of plaintiff's counsel to someway, somehow, let the jury know that an insurance company, and not the defendant, is defending the suit, thereby implying that any judgment rendered would be paid by the insurance company. Although the motivation therefor may be open to question, it is aided and abetted by

---

[1] University of Chicago Jury Project (to be published in the fall of 1965); Broeder, *The University of Chicago Jury Project*, 38 NEB. L. REV. 744 (1959); Phillips, *Mention of Insurance During Trial* 1961 TRIAL LAW. GUIDE, 247, 254 (1961). See also, Annot., 74 A.L.R. 860 (1931); Annot., 105 A.L.R. 1330 (1936); Annot., 4 A.L.R.2d 761 (1949). See generally, 50 C.J.S. *Juries* § 275(c)(2) (1947); 31 Am. Jur. *Jury* § 208 (1958); 34 I.L.P. *Trial* § 83 (1958); 2 WIGMORE, EVIDENCE § 282a (3rd ed. 1940); MCCORMICK, EVIDENCE § 168 (1954).

[2] MCCORMICK, *op. cit. supra* at 356.      [3] Phillips, *supra* note 1.

four thoughts. Public acquaintance with an attitude toward liability insurance is far different today from what it was around the turn of the century when the rule against disclosure was enunciated. Its existence and impact upon our civilization is one of the "facts of life."[4] Secondly, it is highly improbable that a jury could be selected today in Illinois where a great number of the jurors would not be entirely familiar with the common use of liability insurance. It is often the case that the court is called upon to and does instruct the jury that in considering the evidence, they are not required to set aside their own observations and experience in the affairs of life. In such cases it is not difficult to understand and anticipate that the jury would know that insurance is a fact of life and consider it, whether mentioned or not.[5] Thirdly, some authorities regard the "hush, hush" policy as antiquated, and in a state of transition, and the mention of insurance during the trial no longer "rings the prejudicial note" it did years ago.[6] Lastly, other authorities point up the "hypocritical futility" of trying to conceal the fact that insurance exists, and suggest that it is time to avoid the evasive means used to conceal this fact.[7] They obviously have in mind the increased means of communication, the tremendous increase in the use and number of automobiles on our streets and highways, and the fact that most of these are covered by liability insurance.

The objection to the mention of insurance stems from the fear of defendants' counsel that if the jury learns of insurance, it is more apt to render a substantial verdict for the plaintiff. The task of the court in arriving at a solution is rendered most difficult with this antithetical situation before it. The courts have wrestled with the necessity of deciding on which horn of this dilemma to rest their decision. This in turn makes it imperative that the courts weigh and determine rights of the respective parties.

It is not the purpose of this comment to resolve this dilemma, but rather to suggest an unoriginal remedy that might eliminate its cause. Before submitting this remedy, an inquiring and comprehensive look at the reaction of our Illinois courts when so confronted, is in order.

### PAST ILLINOIS CONSIDERATION

In *Iroquois Furnace Co. v. McCrea*,[8] counsel for the plaintiff asked the jury, "Anybody acquainted with Mr. Hertig, who represents the insur-

---

[4] Pinkerton v. Oak Park National Bank, 16 Ill. App. 2d 91, 147 N.E.2d 390 (1958).

[5] *Supra* note 2; Ozmon, *The Word Insurance . . . When Is It Proper?* 51 ILL. B.J. 996 (1963).

[6] Sphatt v. Tulley, 38 Ill. App. 2d 229, 186 N.E.2d 670 (1962).

[7] 2 WIGMORE, *op. cit.* supra note 1.    [8] 191 Ill. 340, 61 N.E. 79 (1901).

ance company, I believe the Union Casualty Company of St. Louis?"[9] Defendant's counsel objected to the question. Thereupon, the trial court inquired whether the question was asked in good faith, and upon receiving an affirmative answer, permitted counsel to inquire of the jurors, collectively, whether or not they knew of the company, or were stockholders or otherwise interested therein, or had any friends who were stockholders, to which there was no response. Upon affirming the judgment for the plaintiff, the supreme court said, "[t]he question was proper, at least for the purpose of enabling counsel to exercise their right of peremptory challenge, if for no other purpose."[10] This was the first ground breaking decision in Illinois enunciating the "good faith" requirement.

In the three supreme court cases that followed,[11] it was found that questions pertaining to insurance, asked on *voir dire*, were offensive to the good faith test, but nonetheless, the court affirmed judgments for the plaintiff because the amounts of the judgments were not excessive and the record supported them.

In 1913, in *Mithen v. Jeffery*,[12] one of the jurors, during the *voir dire* examination, stated, in response to a question, that his business was all kinds of insurance, including liability insurance. The following colloquy ensued:

"Do you know Mr. Jackson?"—"No." "Mr. Snow, here?"—"No." "The Travelers' Insurance Company?"[13]

The last question was objected to by the defendant. It should be observed that here the question did not seek to ascertain whether the juror was interested, financially or otherwise, in the company. The court sidestepped the necessity of deciding whether the allowance of these questions constituted reversible error, but said, "[t]he purpose of an attorney in making such inquiries as were allowed in this case is to inform the jury that a defendant is insured, and such an examination is improper."[14]

Two years later, the supreme court delved further into this matter, armed with and fortified by the earlier Illinois cases, and attempted to set up guidelines for the better handling of this dilemma. In *Smithers v. Henriquez*,[15] counsel for plaintiff, out of the presence of the jury and prior to its empanelment, sought permission to ask the jurors if they were inter-

---

[9] 368 Ill. 588, 593, 15 N.E.2d 499, 502 (1938).

[10] 191 Ill. 340, 344, 61 N.E. 79, 81 (1901).

[11] Eldorado Coal & Coke Company v. Swan, 227 Ill. 586, 81 N.E. 691 (1907); Kenny v. Marquette Cement Mfg. Company, 243 Ill. 396, 90 N.E. 724 (1909); Aetitus v. Spring Valley Coal Company, 246 Ill. 32, 92 N.E. 579 (1910).

[12] 259 Ill. 372, 102 N.E. 778 (1913).   [14] *Id.* at 376, 102 N.E. at 780.

[13] *Id.* at 375, 102 N.E. at 779.   [15] 368 Ill. 588, 15 N.E.2d 499 (1938).

ested financially, as stockholders or otherwise, in the American Employers' Insurance Company. He ingeniously supported his request by a procedural device, an affidavit, which charged, and was later admitted by the defendant, that the suit was being defended by the insurance company, represented by the attorney for the defendant. This affidavit further stated that unless plaintiff's counsel be allowed to question prospective jurors as to their financial interest in the insurance company, plaintiff's rights might be seriously prejudiced. During the colloquy, plaintiff's counsel mentioned that in the last case he tried, there were three or four jurors connected with the company involved in that case. Plaintiff submitted a single question proposed to be asked of the jurors which the court held to be proper, and the examination was ordered limited to that question. After twelve jurors were called into the jury box, plaintiff's counsel stated the issue, named the parties and their respective counsel, and asked them to raise their hands if they knew anything about the defendants or their attorneys. He received no response. He then asked one of the jurors, "Are you, Mr. Long, or any of you gentlemen, interested financially, either as stockholders or otherwise, in the American Employers' Insurance Company?"[16] There was no response, and the inquiry was not pursued. Defendant objected to the question, claiming the purpose of the inquiry was a mere subterfuge and a clever guise to get before the jury the fact that the insurance company was defending the suit. Defendant hastened to point out that the affidavit of the plaintiff did not allege she believed or had any ground to believe that any of the jurors were financially interested in the defending insurance company.[17] In affirming the judgment for plaintiff, the court said that it appears from the record that the inquiry was made in good faith. Where such is the case, the jury not being actuated by passion or prejudice on that account, and the object of the inquiry being the elimination of interested parties from the jury, the verdict will not be disturbed.[18] For the next nine years, the *Smithers* case became the measuring rod for determining whether insurance could be mentioned on *voir dire*.[19]

In 1947, in *Wheeler v. Rudek*,[20] the supreme court adopted a more rigid criterion for determining what constituted good faith. The case in-

---

[16] *Id.* at 590, 15 N.E.2d at 501.

[17] Keep this objection in mind when reading the Court's opinion in the *Wheeler* case, *infra*.

[18] *Supra* note 15 at 592-3 and 598, 15 N.E.2d 499 at 501-02, and 504.

[19] See Edwards v. Hill-Thomas Line Company, 378 Ill. 180, 37 N.E.2d 801 (1941); Kavanaugh v. Parret, 379 Ill. 273, 40 N.E.2d 500 (1942); Moore v. Edmonds, 384 Ill. 535, 52 N.E.2d 216 (1943).

[20] 397 Ill. 438, 74 N.E.2d 601 (1947).

volved a personal injury action to recover damages sustained by plaintiff when the automobile she was driving collided with an automobile owned by defendant. Plaintiff, on information and belief, alleged in an affidavit that the automobile involved in the accident was owned by defendant, that the defendant held a public liability insurance policy on this automobile issued by the Commercial Casualty Insurance Company, that the defendant was insured for damages that might be imposed on account of such collision, that the insurance company had employed investigators and investigated the accident, that it had engaged attorneys, including Samuel Levin, who appeared as attorney of record for the defendant, that the company would otherwise use its facilities and resources in the defense of defendant, that the insurance company employed "numerous persons" in its offices in Chicago, that it had many other persons acting as investigators, agents and brokers for it in Cook County, and that the plaintiff had reasonable grounds for believing that persons interested in the insurance company, financially or otherwise, may be called into the jury box. Because of this, the plaintiff contended, the right to a fair trial would be impaired. Thus, she argued, her attorneys should be permitted to question the prospective jurors on *voir dire* as to their possible interests in the insurance company.[21] Attorney Levin was sworn, and he testified that there was no stockholder of the Commercial Casualty Insurance Company residing in the State of Illinois, and that as far as he was informed and advised, there was no one on the jury panel who had been called as a prospective juror in this case that was a stockholder, officer, agent, broker or employee of the company, or any one financially interested in the company or otherwise, and that as far as he was able to ascertain, it was his belief that there was no one on the jury panel who knew anyone connected with the stockholders of the company. The trial court granted the plaintiff's request, and the prospective jurors were asked if they had any interest in, or any affiliation with, any company that investigates or defends cases of this kind, or whether they had any financial interest in such a company. In addition, the jurors were asked if they had any close friends or relatives associated with such a company or knew anyone with a financial interest in such a company.[22] All were answered in the negative. The supreme court, in reversing the judgment for plaintiff and remanding, said that to conform to the good faith requirement, something had to be shown that would indicate there was a reasonable possibility that one or more of the jurors to be called in the case was interested in, or related in some way, to the insurance company. The court added that such proof could not be made by the statement of conclusions, such as that the company has "numerous persons employed at its office" and that it "has many

21 *Id.* at 444, 74 N.E.2d at 604.    22 *Id.* at 440, 74 N.E.2d at 602.

other persons acting as investigators, agents and brokers in Cook County." The jurors suspected of being connected with the insurance company were not named, and no facts upon which a finding of good faith could be made as to the jurors' connection with the insurance company. Because of this, the court felt the plaintiff did not set out what her reasonable grounds for suspecting the jury were, and without them, the trial court had no way of determining whether she was justified in her belief that persons interested in the insurance company would be called into the jury box. The court concluded by ruling that "[i]f plaintiff's affidavit had been sufficient to show good faith for the asking of the question, it is clear that defendant's testimony did not refute it for it is subject to the criticism made as to plaintiff's affidavit."[23] It would seem that the supreme court either forgot or ignored its realistic approach in the Smithers case, in which they questioned how a plaintiff could be expected to obtain informtaion as to any affiliation of prospective jurors with the interested insurance company before knowing what jurors would be called into the jury.[24] The standard which the court declined to apply in the *Smithers* case became the rigid, restrictive standard imposed in the *Wheeler* case. Or, as Nichols so aptly put it, "[t]he showing there required is so great, that the practicability of the whole procedure is rendered doubtful."[25]

It should be noted that this was the last case decided by the Supreme Court of Illinois on this point.

In 1964, in the only published decision in point on the appellate level, a situation arose wherein, after applying the strict rule enunciated in the *Wheeler* case, *voir dire* on insurance was allowed. In this case, *Rains v. Schutte*,[26] defendant was insured for the alleged negligence by Country Mutual Insurance Co. Before the trial, plaintiff's counsel requested defendant's counsel to disclose if any of the prospective jurors were policyholders in said company. Seventeen were. Thereupon, plaintiff moved that all Country Mutual insureds be dismissed for cause without any interrogation by the court or counsel before any jurors are selected or sworn so that there will be no knowledge. The plaintiff felt that such action would prevent any juror discovering the reasons for the dismissal. The plaintiff hoped that such action would make it unnecessary that any inquiry be made or unusual circumstances presented so as to cause speculation or con-

---

[23] *Id.* at 446, 74 N.E.2d at 605.

[24] The court further stated that "[i]n any case, to say that as a basis for such an inquiry, litigants must, before the trial, examine the jury list and investigate and determine the qualifications of prospective jurors, would impose an onerous and unreasonable task upon them, and, in effect, nullify the statutory provision, and time-honored custom of examining jurors upon the trial." (*Supra* note 15 at 591, 15 N.E.2d at 501.)

[25] 3A NICHOLS, ILLINOIS CIVIL PRACTICE § 3250, n. 90 (1961).

[26] 53 Ill. App. 2d 214, 202 N.E.2d 660 (1964).

jecture among the jurors as to the reason for the dismissal of the Country Mutual insured.[27] If the court should deny plaintiff's motion to dismiss said jurors, plaintiff moved in the alternative for leave to inquire of the jurors as to their relationship with that insurance company, and the effect such relationship would have upon any verdict they should determine to return.[28] The allegations in support of the motion pointed out that the company was of a mutual nature, that plaintiff had only five peremptory challenges, that seventeen of the prospective jurors were policyholders, and that he would be irreparably prejudiced if the requested relief were not granted. The trial court denied the relief. Judgment for the defendant was reversed by the appellate court which, in elaborating on the good faith rule, said that the rule

> extends to the probability of there being jurors who may be called that would be unsuitable to plaintiff for jury service by reason of their interest in, or relationship with an insurance company. If there is no reasonable probability of any of the jurors who are to be called being connected in some way or interested in the company, then the inquiry should not be made. . . .[29]

The appellate court ruled that plaintiff had a right either to have the seventeen jurors insured by Country Mutual Insurance excused from the jury or to inquire of these jurors concerning their relationship to that company and the effect, if any, such relationship might have upon their verdict. It is worth noting that a few months earlier, the same appellate court, in an unpublished opinion, affirmed a judgment denying the right to so question in a case involving similar facts. In that case, *Steele v. Bennett*,[30] plaintiff filed an affidavit alleging that Country Mutual Insurance Company was defendant's insurer and that he anticipated that many of the jurors would be interested in that company "for the reason that many farms are insured with said insurance company."[31] Plaintiff was refused the right to inquire on *voir dire* of the prospective jurors' interests in Country Mutual. The appellate court held that in light of the *Wheeler* case, the plaintiff did not demonstrate reasonable grounds to believe that there would be interested parties on the jury, since he merely stated that he anticipated their presence. Such anticipation was deemed insufficient to conform to the requirement of good faith. The court added the following:

> Our courts should be cautious in permitting the questioning of jurors as to their interest in or to any insurance company. . . . On the basis of the holding in Wheeler v. Rudek, and for the further reason that we are not inclined to question the discretion of the trial court, this court must hold that the refusal

---

[27] *Id.* at 216, 202 N.E.2d at 661.   [28] *Ibid.*

[29] *Id.* at 219, 202 N.E.2d at 662.

[30] 50 Ill. App. 2d 70, 200 N.E.2d 10 (1964).

[31] 10 CIVIL PRACTICE AND PROCEDURE TRIAL BRIEFS 858 (1964).

of the trial court to permit plaintiffs to examine the jurors as to their interest in Country Mutual Insurance Company, was correct.[32]

The only appreciable difference between the *Rains* case and the *Steele* case would seem to be that in *Steele*, there was no showing of record as to specified jurors, whereas, in *Rains*, such showing was made.

Thus, the courts have been forced to choose between undesirable alternatives, and thus we have a true dilemma. Since this dilemma cannot be solved, it must be remedied.

### THE REMEDY

Our dilemma stems from the contention that the jury's knowledge of insurance tends to color, improperly, a just determination of liability and the amount to be awarded. If this were not true, we would be faced with a false dilemma to which there are two apparent solutions: (1) allow *voir dire* on insurance, or (2) enact a direct action statute similar to that of Wisconsin.[33] However, since it appears we cannot ascertain objectively each juror's state of mind or what triggers his decision, we can only make an "educated guess" based upon studies such as the University of Chicago Jury Project,[34] and what we know of human nature. These impel one to the conclusion that knowledge of insurance tends to prejudice the jurors in favor of the plaintiff and against the defendant. It is respectfully submitted that, while some might think otherwise, we must recognize the practicalities of the situation: insurance companies, defendants' lawyers, and many others will not accept any other basis upon which a remedy is to be predicted until absolute proof of the opposite is shown. Thus, any remedy, to be readily acceptable, must also satisfy these interests.

With these thoughts in mind, the remedy for this dilemma is to make available to the parties' counsel, before the case is reached for trial, information concerning the prospective juror's possible interest in an insurance company, and to ascertain that information in such a way that the jurors would be unaware that this is related to the trial of any particular case.

The remedy which is here proposed is not original. It is a pretrial

[32] *Ibid.*

[33] "Any bond or policy of insurance covering liability to others by reason of the operation of a motor vehicle shall be deemed and construed to contain the following conditions: That the insurer shall be liable to the persons entitled to recover for the death of any person, or for injury to person or property, irrespective of whether such liability be in praesenti or contingent and to become fixed or certain by final judgment against the insured, when caused by the negligent operation, maintenance, use or defective construction of the vehicle described therein, such liability not to exceed the amount named in said bond of policy." WIS. STAT. § 204.30(4) (1965).

[34] To be published in the winter of 1965.

questionnaire to be answered by all prospective jurors.[35] The answers to the questionnaire would make available at the outset all insurance data and would obviate the necessity of asking about it on *voir dire*. In fact, by providing this information in advance, counsel could either challenge for cause or, if unavailing, peremptorily challenge and excuse those prospective jurors who had insurance interests or connections without being in danger of treading upon the good faith rule enunciated in the *Wheeler* case.[36] This remedy also rids *voir dire* of the insurance-by-innuendo technique. The numerous cases actually being defended by insurance companies would, it seems, amply justify the additional clerical work involved.[37]

However, used alone, there is a possible disadvantage in this questionnaire. The suggestion may thereby be implanted in the prospective juror's mind that the defendant in a personal injury or property damage action is insured, to the potential harm of the uninsured or partially insured defendant or the insurance company. To this extent it shares the drawbacks of interrogation on *voir dire*.

In order to neutralize this disadvantage, the Chief Judge of the Circuit or whomever he would designate, should, along with general instructions to the veniremen, explain to the prospective jurors the nature of liability insurance protection. They should be instructed that liability insurance is not synonymous with liability, nor does such coverage increase the amount of damages suffered by the plaintiff, and by the same token, the amount to be awarded even in a clear-cut case of liability. It should be made patently clear that the jurors, when chosen to serve, are to consider the issues of negligence and liability as if there were no insurance, and the fact that they may believe the defendant is insured should not weigh with them when they are considering their verdict in the jury room. It should be further pointed out to them that insurance premiums are paid not as guarantees of compensation for any injury, but only for the purpose of indemnifying the defendant in a proper case where there is liability, and then only in the amount permitted by law. Then, too, it should be pointed out that even if the particular defendant is insured, he might only be partially covered, or in fact not at all under the factual situation in question.

---

[35] This device has been suggested, in one form or another, in the following: Comment 28 MISS. L.J. 65 (1956); Comment, 48 ILL. L. REV. 657 (1948); Note, 52 HARV. L. REV. 166 (1938); Comment, 17 MINN. L. REV. 299 (1933). See also, Nilles, *The Right to Interrogate Jurors With Reference to Insurance in Negligence Cases*, 3 DAKOTA L. REV. 406 (1931).

[36] *Supra* note 20.

[37] For a suggested list of questions which is designed to cover most of the material a plaintiff's lawyer might conceivably wish to bring out on the voir dire, see Comment, 28 MISS. L.J. 65, 73, n. 51 (1956).

It should be emphasized that the cost of liability insurance is borne by the public, including those jurors who are covered by liability insurance, and that, because of excessive or unwarranted verdicts, the cost of insurance could rise beyond that which most people could pay. If that occurs, those affected by the increased cost would be without protection against liability not only for their own negligent conduct, but also the negligent conduct of others. Moreover, in those cases of excessive or unwarranted verdicts, there would be the consequential waste of money, time and effort by the court, the litigants, and their attorneys.

The success of the proposed remedy quite obviously would depend on the thoroughness and proficiency with which it would be promulgated. In that respect counsel should be taken with plaintiff's lawyers, defendants' lawyers, and the bar generally as well as insurance companies, judges and legal scholars.

CONCLUSION

The purpose of this comment has been to take a realistic look at the *voir dire* examination of prospective jurors in Illinois, the dilemma posited thereby, and to propose a remedy to alleviate the consequences of the problem. As a practical method, it is believed that the combination of the questionnaire and special instructions should be acceptable to all concerned. Trial courts would then no longer be forced to "steer a safe course between the Scylla of a packed jury on the one hand and the Charybdis of pettifoggery on the other."[38]

*Michael Greenblatt*

[38] Putnam v. Pacific Monthly Company, 68 Ore. 36, 53, 130 Pac. 986, 992 (1913).