# THE VOIR DIRE INSURANCE DILEMMA

### INTRODUCTION

When a lawyer is representing a plaintiff in a damage suit against an insured defendant, it is normal for him to think that his lot will be considerably easier if he can somehow tell the jury that the defendant is insured. When a lawyer is defending in such an action, he is certain that his lot will be made more difficult if his adversary is able to communicate the fact of insurance to the jury.

Whether it is actually the fact that a plaintiff gains or a defendant loses anything by virtue of the jury's knowledge that insurance is involved seems to have had little bearing on the state of the law. It is clearly the general rule that in a personal injury or death action a plaintiff cannot introduce *evidence* for the purpose of informing the jury that an individual defendant is insured against liability.[1] Absent a statute to the contrary[2] this is as it should be. Evidence of insurance is inadmissible for the reason that it has no probative force to show that a defendant did an act for which liability ought to attach. Some courts supply a second reason to support this rule of exclusion. If, they hold, insurance is injected into the trial, the jury will be more likely to tip doubtful scales in a plaintiff's favor and to render a staggering award to be paid by a rich and soulless corporation.[3]

Mississippi by virtue of the case of *Herrin v. Daly*,[4] absolutely excludes evidence of liability insurance, and the extra-evidentiary devices, the insurance-by-innuendo, by means of which the information can be imparted are few and far between. Is the position of the Mississippi Supreme Court consonant with the practical realities of today? To attempt to answer such a question is only to become a partisan in the debate.

There are four stages in a trial proceeding at which a plaintiff's lawyer has an opportunity to demonstrate to the jury that his adversary is insured: (1) on the voir dire examination of the prospective jurors; (2) on direct examination of the plaintiff or of the plaintiff's witnesses; (3) on cross-examination of the defendant or of the defendant's witnesses; and (4) on the final argument or summation. The variety of techniques utilized at any of these stages of the proceedings varies directly with the inventiveness of the plaintiff's counsel. The success of the techniques varies directly with the vigilance of the trial court and defense counsel and the attitude of the appellate court. No matter how clever the device he has contrived or at what stage of the proceeding he attempts to employ it, no matter how lofty his motive, a plaintiff's counsel who tells a Mississippi jury that a defendant is insured is skating on thin ice with the danger of a mistrial hinging on every syllable. Nevertheless, there are the venturesome. They perhaps find their chances of success greater on the voir dire than during the trial proper.

---

[1]Annot., 4 A.L.R. 764, 765 (1947).

[2]Three states have enacted so-called "direct action" statutes: La. R. S. 22:655 (1950); Wis. Stat. 85:93, 260:11 (1953); R. I. Gen. Laws 155:1 (1938), the effect of which is to make the question of the propriety of direct evidence of insurance moot, the jury obviously being aware that the tort-feasor is insured.

[3]Herrin v. Daly, 80 Miss. 340, 31 So. 790 (1902); Star Furniture v. Holland, 273 Ky. 617, 117 S. W 603 (1938); Sutton v. Bell, 79 N.J.L. 507, 77 Atl. 42 (1910).

[4]Herrin v. Daly, supra note 3.

Exhibit 8

That a plaintiff no less than a defendant is entitled to an unbiased jury is a proposition basic to the common law. That a jury is not unbiased if any of its members have sufficiently vital insurance interests is clear.[5] The dilemma, then, is this: If the plaintiff is prevented from eliminating all veniremen tainted with insurance interests, he is denied the substantial right of a fair trial. If a defendant is shackled with a jury whose verdict is apt to be perverted because of the injection of an irrelevant issue, he is denied the substantial right of a fair trial. When the dilemma presents itself, it is the job of the court to try to balance the interests and arrive at a compromise solution that dispenses something approximating justice in the given case. Such a task is not an easy one.

It is not the purpose of this Comment to attempt to resolve the dilemma. It is rather the objective to suggest an unoriginal remedy that might eliminate the cause of the dilemma as it arises on the voir dire. Before the remedy is submitted, it is well to pose the problem slightly more in detail.

### I. THE MISSISSIPPI CASES

#### A. *Good Faith of Counsel and Waiver*

The first voir dire case, *Yazoo City v. Loggins*,[6] went up to the Mississippi Supreme Court thirty years ago. In the trial court plaintiff's counsel had been allowed to ask the jury panel whether or not any of them were interested in or represented any insurance company. Judge Cook, speaking for the Court, said that the general rule, announced twenty-four years earlier,[7] does not prohibit counsel from testing within reasonable limits, and in good faith, the qualifications of the proposed jurors in respect to their connection with or interest in any indemnification the defendant may have."[8] The purpose of according this privilege was to enable counsel intelligently to exercise his right to challenge peremptorily or for cause. There was certainly nothing startling about the Court's position. It simply comported with the proposition that litigants have a right to an unbiased jury [9] and that a venireman may be shown to be of the same society or corporation which has a contract of indemnity with the defendant.[10] But did it not leave the defendant in the hands of a jury with "inflamed sympathies and prejudices"?[11] Undeniably it did. In 1902 *evidence* of insurance was error because it tended to "seduce a verdict."[12] Twenty-four years later[13] questions to a panel which, though presumably aimed at procuring an unbiased jury obviously had a tendency to seduce a verdict, were proper. Apparently

---

[5]This principle goes back at least as far as the eighteenth century. Though the right of counsel to examine on the voir dire did not exist at the time of Blackstone, he recognized that "jurors may be challenged *propter affectum*, for suspicion of bias or partiality. He found *principal* challenge proper if it appeared that the juror "is the party's master, servant, counsellor, steward, or attorney, or of the same society or corporation with him.     3 Wendell's Blackstone's Commentaries 362 (1854).
[6]145 Miss. 793, 110 So. 833 (1926).
[7]Herrin v. Daly, 80 Miss. 340, 31 So. 790 (1902).
[8]Yazoo City v. Loggins, 145 Miss. 793, 808, 110 So. 833, 835 (1926).
[9]Fedorinchik v. Stewart, 289 Mich. 436, 286 N.W. 673 (1939).
[10]See note   supra.
[11]Chief Justice Marshall, dissenting in Pavilonis v. Valentine, 120 Ohio 154, 165 N. E. 730 (1929).
[12]Herrin v. Daly, 80 Miss. 340, 31 So. 790 (1902).
[13]Yazoo City v. Loggins, 145 Miss. 793, 110 So. 833 (1926).

Judge Cook felt that if the by-product of the questioning was prejudicial it was not error. Because the opinion was careful to point out that the voir dire examination "may usually be conducted in such a manner as not necessarily to disclose the existence of such insurance in the particular case,"[14] it is reasonable to suppose that the Court attached considerable significance to the good faith of the plaintiff's counsel.

It is submitted that the good faith test is of questionable worth. Though there may be only a modicum of truth in Judge Brian's observation that "not even the devil knoweth the thought of man,"[15] it is patent that the determination of the good faith of any individual, lawyer or layman, is a process that lies at least partly within the realm of gastronomical jurisprudence. On so insubstantial a peg should not hang so substantial an issue. An attorney is an officer of the court. The law denominates him an honorable man. If he states that his inquiries on the voir dire are in good faith, the court must either believe him and find his inquiries proper or disbelieve him and take appropriate disciplinary measures. The element of good faith can quite obviously be present even when there are no reasonable grounds for the insurance question. It is enough if the particular plaintiff's lawyer believes the grounds exist. Diligence has failed to unearth any disbarment proceedings grounded in bad faith interrogation on the voir dire. Yet it would be naive to suggest that every time a jury panel has been informed that insurance was a factor in the case, the knowledge came as a by-product of legitimate inquiry. Even assuming this idyllic state of affairs, the mental attitude of the examiner has no relation to the damage the question does to the defendant. Whether the lawyer asking the questions asks them in good or bad faith the net effect is precisely the same. The conclusion is inescapable that the good faith test is no solution to the dilemma. It is plain that if the injustices produced by the dilemma are to be eliminated something other than the good faith test must be contrived.

In *Lee County Gin Co. v. Middlebrooks*,[16] decided seven years after the *Loggins*[17] case, plaintiff's cousel was permitted, over defendant's objection, to ask veniremen whether or not they had stock in any insurance company or any interest therein.[18] After the objection to the question was overruled, defense counsel, apparently trying to neutralize whatever damage had been done by the oblique disclosure of insurance, remarked that "the insurance company we had our insurance in is 'busted'" In holding that the trial court's ruling was not reversible error, the Court expressly relied on the *Loggins* case and thought *Herrin v. Daly* was not in point. It is not altogether clear whether the Court thought plaintiff's voir dire interrogation was proper per se or whether it thought that even if it was improper the defendant, by this remark, had acquiesced in the abuse. The opinion simply says, "Under these circumstances there is no error."[19] Judge Ethridge, twenty-two years later,[20] thought that the 1931 Court went along with the plaintiff because the defendant "waived

---

[14]Id. at 808, 110 So. at 835.
[15]Radin, Anglo-American Legal History 264 (1936).
[16]161 Miss. 422, 137 So. 108 (1931).
[17]Yazoo City v. Loggins, 145 Miss. 793, 110 So. 833 (1926).
[18]Lee County Gin Co. v. Middlebrooks, 161 Miss. 422, 428, 137 So. 108, 109 (1931).
[19]Id. at 429, 137 So. at 109.
[20]Shearron v. Shearron, 219 Miss. 27, 68 So. 2d 71 (1953).

his objection by such a statement."[21] Regardless of whether Judge Ethridge is right or wrong in his surmise, the exponents of the insurance-by-indirection technique can rely on the *Middlebrooks* case as a shield against a mistrial only when defense counsel has bungled. The good faith test, reiterated in *Middlebrooks*, is, of course, vulnerable to the same objections raised against it with reference to *Loggins*. *Middlebrooks*, then, provides no formula for the resolution of the dilemma, which formula, if it is to serve well, must needs allow a plaintiff to protect himself against any inadvertent acceptance of an interested or biased juror and at the same time prevent the inquiry of a juror on his voir dire examination as to the existence or nonexistence of such interest or bias."[22]

### B. *Curing the Error by Jury Instruction*

Three years after the *Middlebrooks* decision came *Avery v. Collins*,[23] wherein plaintiff's counsel asked the jury panel whether or not any of them "were engaged in the business of accident or indemnity insurance."[24] Defendant objected. The objection was overruled. Defendant then requested that the jury be instructed that insurance had nothing to do with the merits of the case. The request was refused. Writing for the Court which affirmed on liability and reversed on damages, Judge Griffith[25] held that the refusal of the trial court to admonish the jury "that the matter of insurance shall have nothing to do with the decision"[26] was error.

The opinion of the Court is as important for what it does not say as it is for what it does say. It does not say that the lower court was reversed on the issue of damages because it was error to permit the plaintiff's counsel to question the panel respecting insurance interests. It does say that the reversible error was the refusal of the trial court to give the requested admonition. The fair inference is that if the jury had been told to disregard the insinuation respecting insurance the lower court would have been affirmed on liability *and* damages. It is submitted that if a juror has become prejudiced as a result of insurance by innuendo there is not very much difference between his state of mind before and after a trial judges admonition. "To attempt a distinction between the two is equivalent to giving weight to the mental processes of an ostrich that puts its head in the sand and assumes the nonexistence of a danger that thereby it is unable to see."[27]

Another significant feature of *Avery v. Collins* is Judge Griffith's proposal for solving the ubiquitous dilemma. He suggests, by way of implementing the plan outlined in *Loggins*,[28] that there is indeed a method by which the voir dire examination may usually be conducted so

---

[21] Id. at 60, 68 So.2d at 85.
[22] Pavilonis v. Valentine, 120 Ohio 154, 165 N.E. 730 (1929).
[23] 171 Miss. 636, 157 So. 695 (1934).
[24] Id. at 649, 157 So. at 699.
[25] Judge Griffith's general attitude in the area under discussion was unmistakable. See, for example, his opinion in Walley v. Williams, 201 Miss. 84, 28 So. 2d 579 (1947) wherein he stated that .if we should accept that proposition as true [that most jurors know all employers carry liability insurance], we should be confronted with the deeper question whether trials before jurors of personal injury cases would be valid under the due process clause of the federal Constitution.
[26] Avery v. Collins, 171 Miss. 636, 650, 157 So. 695, 699 (1934).
[27] Johns v. Shinall, 103 Colo. 381, 86 P.2d 605 (1939).
[28] Yazoo City v. Loggins, 145 Miss. 793, 110 So. 833 (1926).

as to guarantee plaintiff a non-insurance jury and at the same time to protect a defendant from the bias that follows insurance by insinuation. A prospective juror, Judge Griffith says, may be asked "what business he is in, and, if he answer, for instance, that he is a farmer, then the further precautionary question may be put to him whether he has any other business and if he answers that he has not, that usually ought to end the privilege."[29] It is deferentially submitted that Judge Griffith's formula would not resolve the dilemma. What happens if the farmer answers the other business question by announcing that he sells a little insurance now and then as a sideline? The plaintiff's lawyer will have abided by Judge Griffith's instructions, but when he excuses the farmer-insurance salesman, the defendant is almost certain to be saddled with a jury that is just as biased as if the insurance policy were admitted as exhibit A.

### C. *The Prejudicial Effect Test*

*M. & A. Motor Freight Lines v. Villere*[30] is not a voir dire case, but it is important to this discussion for the reason that it sets up, as a criterion of the propriety of plaintiff's voir dire interrogation, the prejudicial effect" of the disclosure rather than the motive (good faith test) for its adduction.[31] Since the holding of the Mississippi Supreme Court is that a defendant is in fact prejudicially affected when a jury panel is presented with the insurance issue, it would seem that an exploration into the degree of prejudice is a fruitless venture. If voir dire questions are to be prohibited because of the prejudicial effect of the answers they elicit, there is no way for a plaintiff's lawyer to assure himself that the board of directors of the insurance company which has contracted to indemnify the defendant against liability is not sitting on the jury

To look at the prejudicial effect" test is to expose its weaknesses. To look at it further is to reveal its incompatability with Judge Griffith s formula for resolving the dilemma under consideration. If the plaintiff's lawyer asks a venireman what business he is engaged in and the venire man replies that he is engaged in adjusting claims for a liability insurance company the holding in *Avery v. Collins* would require that the defendant's motion for a mistrial be overruled, unless the defendant had been denied an instruction to the jury to disregard the reply of the venireman. Yet few would argue that when he walks out of the box his departure has had no prejudicial effect on the defendant's case.

### D. *More Good Faith*

Two weeks after *Villere, Kennedy v. Little*[32] was decided. In the trial court plaintiff's counsel asked two prospective jurors if they or any of their close relatives were connected in any way with any liability insurance company. Defendant objected to the question, and the trial court sustained the objection. Defendant moved for a mistrial. His motion was overruled. The ruling was assigned as error but the point was not argued on appeal. Even so, the ruling was challenged at the conference of the judges. The verdict for the plaintiff was affirmed by

---

[29] Avery v. Collins, 171 Miss. 636, 650, 157 So. 695, 699 (1934).
[30] 190 Miss. 848, 1 So.2d 788 (1941).
[31] Id. at 858, 1 So.2d at 791.
[32] 191 Miss. 73, 2 So.2d 163 (1941).

a three to three vote.³³ The controlling opinion. reverting to the good faith test, held that since the motives of plaintiff's counsel were not challenged there could have been no question as to the propriety of the voir dire examination.³⁴ Chief Justice Smith felt that the matter had been "put at rest"³⁵ by *Loggins, Middlebrooks,* and *Avery v. Collins.* If the matter had been put at rest at all, it did not rest very long.

### E. *The Shearron Case*

The disinterment came in *Shearron v. Shearron*.³⁶ In the trial court plaintiff's counsel asked the panel whether any of them were working or had worked for a casualty company or an insurance company. Defendant objected and moved for a mistrial. In arguing the motion, after the jury was excused, plaintiff's counsel convinced the trial judge that in order to be able to exercise intelligently his right to challenge peremptorily or for cause he would have to ask the explosive questions. It appears that the plausibility of counsel's position hinged on the factual situation that numerous policyholders with the insurer of the defendant were farmers who were in effect partners with the insurer, that there was reason to suppose that at least one agent of the insurer operated in the county where the case was being tried, and that there was a possibility that there might be more than one agent operating in the area. There seems—at least in the trial court—to have been no question of the good faith of the plaintiff's lawyer or of the necessity of the questions he asked. The jury brought in a verdict for $17,500. On appeal the justices voted as follows: (1) for affirmance as to liability· Justices Arrington, Kyle, Holmes, Hall, and McGehee; (2) for affirmance as to both liability and damages; Justices Arrington, Holmes, and Hall; (3) for reversal and a new trial on the question of damages: Justices Lotterhos, Ethridge, Kyle, Roberds, and McGehee; (4) for reversal and remand as to both liability and damages: Justices Lotterhos, Ethridge, and Roberds. A tabulation of the votes resulted in an affirmance on the question of liability (5-3) and a reversal on the question of damages (5-3).³⁷

The holding of the Court on the first appeal was that "the method of examining the jurors on their voir dire examination   could have had no prejudicial effect upon the jury in their determination of the case on the issue of liability "³⁸ but that it had sufficient prejudicial effect on the issue of damages to constitute reversible error. This is not an unusual proposition, but it is one that admits of some examination. If a jury has sufficient discernment not to allow insurance-by-innuendo to muddy the waters on the issue of liability it is not unreasonable to suppose that the same detached judgement which produced an uninflamed

---

³³Robertson v. Mississippi Valley Co., 120 Miss. 159, 81 So. 799 (1919) held that judgment of   court made on an equal division of the judges thereof is judicial precedent for the principles of law involved.

³⁴Justice McGehee, joined by Justice Anderson and Griffith, apparently thought there was enough question of good faith to require   reversal. Kennedy v. Little, 191 Miss. 73, 82, 2 So.2d 163, 166 (1941).

³⁵Id. at 77  2 So.2d at 164.

³⁶219 Miss. 27, 68 So.2d 71   (1953), suggestion of error overruled in part, sustained in part, 219 Miss. 27, 69 So.2d 801, suggestion of error overruled in part, sustained in part, 219 Miss. 27  70 So.2d 922 (1954).

³⁷Justice Lee took no part in the decision of the case.

³⁸Shearron v. Shearron, 219 Miss. 27, 52, 68 So.2d 71, 81 (1953).

verdict respecting liability might be relied on to do justice on the issue of damages. The intricacy of the mathematics of the *Shearron* case is exceeded only by the speed and dexterity with which the Court modified its position. On the first appeal, November 23, 1953, in a per curiam opinion, the verdict for the plaintiff was reversed on the issue of damages "for the reasons set forth in the opinion written by Justice Ethridge"[39] who concurred in part and dissented in part. Justice Ethridge[40] thought that "the size of the verdict, $17,500, in favor of a 78-year old appellee with no proof of life expectancy against her daughter, was very probably affected by the voir dire examination indicating defendant was covered by liability insurance. Justice Ethridge, and by adoption the Court, then, on the first appeal, obviously concluded that insurance via innuendo had resulted in a biased jury on the issue of damages. Yet two months later, on the first suggestion of error,[41] in a per curiam opinion, the lower court was affirmed on liability *and* damages, the affirmance on damages being conditioned on a $5,000 remittitur.

In the two months that elapsed between the first opinion and the first suggestion of error Justices Lotterhos, Ethridge, Kyle, Roberds, and McGehee apparently decided that the insinuation of insurance was not as inflammatory and prejudicial as at first they had suspected. That a court has a right, and often time a need, to change its mind is not questioned, but there does seem to be some logic in the proposition that if the reference to insurance was prejudicial as to the size of the verdict on November 23, 1953 it was equally prejudicial on January 25, 1954. It is respectfully submitted that a remittitur is an unsatisfactory method of dealing with the prejudice. It merely attaches a price tag to it.

A careful look at the *Shearron* case invites the conclusion that the Court was in no wise guilty of an error of judgment. The difficulty is inherent in the dilemma that pervades damage suits in Mississippi. By definition[42] a dilemma is a situation involving a choice between two equally unsatisfactory alternatives. A dilemma cannot be solved, it must be remedied.

## II. SUGGESTED REMEDY

### A. *Direct Action*

Probably the most obvious way to deal with the dilemma that besets our Court would be the enactment by the Legislature of a direct action statute similar to the one in operation in Louisiana.[43] The Louisiana statute has been held constitutional.[44] It has been held not to contravene any public policy in Mississippi.[45] It has been the object of considerable advocacy One writer, for example, says, "Under such a statute all the subtle and divers means by which the plaintiff's counsel have for years sought to suggest the fact of insurance to the jury become archaic and outmoded. The court and jury are then faced squarely with the problem

---

[39]Id. at 33, 68 So.2d at 72.
[40]Id. at 59, 68 So.2d at 85.
[41]219 Miss. 27, 69 So.2d 801 (1954).
[42]Webster, New International Dictionary (1930).
[43]La. R.S. 22:655 (1950).
[44]Watson v. Employers Liability Assurance Corp., 348 U.S. 66 (1954), rehearing denied, 348 U.S. 921 (1955).
[45]Burkett v. Globe Indemnity Co., 182 Miss. 423, 181 So. 316 (1938), overruled on other grounds, McArthur v. Maryland Casualty Co., 184 Miss. 663, 186 So. 305 (1939).

whether the jury system has sufficient vitality and strength so that a reasonable approximation of justice can be achieved between an injured or bereaved person on one hand, and a corporation whose business it is to insure against liability arising from accidents on the other hand."[46] Doubtless the vitality of the jury system will continue to justify the confidence placed in it; (in spite of the adverse criticism engendered by the abuse of the voir dire).[47] But there is no getting around the fact that if insurance is prejudicial, legislative sanction would not make it less so. Nor can legislative sanction render evidence material if it has not probative force.

It is improbable that the Mississippi Legislature will enact a direct action statute any time soon. This conclusion seems reasonable in light of the general and altogether understandable attitude of the insurance companies. If the companies are not the real parties in interest in negligence cases by virtue of having contracted to indemnify defendants being sued, they are certainly real and articulate parties in interest when a legislature starts considering an insurance bill. That most companies are opposed to "direct action statutes is generally conceded. That there is ample opulence back of that opposition to prevent the enactment of such a law in this state within the foreseeable future is probable. Hence, it would be unrealistic to suggest that the Mississippi Supreme Court will be "rescued" from its dilemma by a direct action statute.

### B. *Questionnaire*

The most promising remedy for the dilemma seems to be a pre-trial questionnaire[48] that would require all citizens summoned for jury service to disclose in advance of the first day of the term of court to which they are summoned any insurance interests or connections which they might have.[49] The questionnaire forms could be delivered by the sheriff along with the summonses. The forms could be returnable to the office of the circuit clerk before the first day of the term of court. Thus, the persons summoned would have a reasonable time to study the questions, properly supply the answers, and make oath that the responses given were true and correct. It is important to emphasize that the information required by the questionnaires would be on file in the office of the clerk *before* any jury was empanelled or assigned to a case.

The information furnished by the questionnaires would be available

---

[46]Kramer, "The Role of Casualty Insurance Companies In Automobile Casualty Litigation—Open or Concealed, in Section of Insurance Law, 1949 Proceedings, American Bar Association 118 (1949).

[47]No other single cause has had greater effect in bringing jury trial into disrepute than the abuse by counsel of the voir dire examination. Grant, "Notes on Judicial Organization and Procedure, in 24 American Political Science Review 117, 127 (1930).

[48]This device has been suggested, in one form or another, in A Successor to the Good Faith Rule—Pre Trial Questionnaires and Adequate Jury Instruction, 48 Ill. L. Rev. 657 (1948); note, 52 Harv. L. Rev. 166 (1938); "Jury—Examination of Prospective Jurors on Voir Dire" 17 Minn. L. Rev. 299 (1933); Nilles, "The Right to Interrogate Jurors with Reference to Insurance in Negligence Cases" 3 Dakota L. Rev. 406 (1931). At least one federal court has approved the practice of trial judge's questioning panel members on the first day of the term touching insurance interests. The answers given were made available to all parties with cases to be tried at the term. City Ice & Fuel Co. v. Dankmer, 52 F 2d 929 (4th Cir. 1931).

[49]This proposal should in no way be construed to advocate the abolition of the statutory right of counsel to examine the prospective jurors on the voir dire on legitimate issues other than insurance interests.

to the trial judge and to any attorney with a case on the docket at the term. Since the questionnaires would yield up all information touching insurance interests of the prospective jurors, there would never be any need or excuse for a voir dire question touching insurance. To state it more simply· If the judge and the lawyers in a case already know the answer to a particular question, nobody can very well argue that he ought to have a right to ask that question on the voir dire.

This suggested remedy, then, would afford a method whereby a plaintiff's counsel could protect himself against a contaminated jury without the constant threat of a mistrial. With all the insurance information already at his command he could excuse a juror *without in any manner insinuating insurance into the proceeding* A peremptory challenge requires no explanation.[50] In addition it is likely that the questionnaires would disclose sufficient information for the court to dismiss some of the veniremen for cause.

It is readily apparent that a plaintiff's lawyer who is motivated by something less than good faith will find that the proposed plan deprives him of the benefits of the insurance-by-innuendo technique. He should be so deprived.

Would the suggested plan guarantee defense counsel a jury unbiased by the insurance issue? If citizen Jones, for example, upon being handed a summons for jury duty, received at the same time a questionnaire requiring him to disclose his insurance interests or connections, would not the very tenor of the questionnaire lead him to believe that he was being hailed into court to try a case involving insurance? Not at all. While it is true that a substantial part of the litigation tried by our courts involves insurance, there is no certainty that citizen Jones case would. And, too, the procedure would eventually be looked upon as routine. On the other hand, suppose that the questionnaire discloses that citizen Jones has vital insurance interests, and that the jury on which he sits is assigned to a damage suit underwritten by an insurance company The plaintiff's lawyer would excuse him without contaminating the rest of the panel.

The practicability of the proposed plan quite obviously depends on the skill with which the questionnaire submitted to citizen Jones is drafted. A legislative committee framing a bill to effectuate the plan under discussion or one similar to it should take counsel with plaintiffs' lawyers, defendants lawyers, undecided lawyers, insurance companies, judges, legal scholars and teachers, and any other respectable sources available.[51]

---

[50]The process of excusing juror because of insurance interests disclosed on his questionnaire would be even more effective under the Stennis "Struck Jury" system. Pigott, "Stennis-Coleman-Brady System of Jury Selection in Mississippi, 25 Miss. L.J. 31 (1953).

[51]There follows suggested list of questions which is designed to cover most of the material plaintiff's lawyer might conceivably wish to bring out on the voir dire.
 1. Name.
 2. Present home address.
 3. Address of present employer.
 4. Nature of present employment.
 5. If you are self employed, what is the address at which you do your principal work?
 6. Are you now or have you ever been an officer, director, stockholder, agent, representative or employee of any insurance company or insurance association of any kind?

### III. CONCLUSION

The purpose of this Comment has been to look at the voir dire examination of prospective jurors in Mississippi, to demonstrate that no

---

7. If your answer to question 6 was yes, list the name and address of the company or association involved.

8. If your answer to question 6 was yes, state the nature of your relationship to the company or association and the duration of such relationship.

9. Do you now have or have you ever had any intimate friends or relatives by blood or marriage (including father, mother, son, daughter, uncle, aunt, grandfather, grandmother, grandson, granddaughter, and first cousins) who are now or have in the past been an officer, director, stockholder, agent, representative, or employee of any insurance company or insurance association of any kind?

10. If your answer to question 9 was yes, state
   A. The name and address of the person so related to the company or association.
   B. The name and address of the company or association to which he or she is so related.
   C. The nature of his or her relationship to the company or association.
   D. The duration of his or her relationship to the company or association.
   E. The relationship of the person to you.

11. Are you now or have you ever been financially interested, directly or indirectly, in any insurance company or insurance association of any kind?

12. If your answer to question 11 was yes,
   A. State the name and address of the company or association.
   B. Briefly describe your interest.

13. Have you ever been  party litigant in  civil lawsuit of any kind?

14. If your answer to question 13 was yes,
   A. Were you  plaintiff or defendant?
   B. When and where was the case tried?
   C. Briefly describe the nature of the litigation and state the outcome.
   D. Were you satisfied or dissatisfied with the outcome?

15. Do you own or regularly drive  motor vehicle of any type or kind?

16. If your answer to question 15 was yes, is the vehicle covered by liability or indemnity insurance of any kind?

17. If your answer to question 16 was yes, state the name and address of the company or association carrying the insurance.

18. Do you or any of your intimate friends or relatives (as listed in question 9) have or have you or they ever had any claim of any kind against any insurance company or insurance association?

19. If your answer to question 18 was yes,
   A. State the name and address of the person asserting the claim.
   B. What is or was his or her relationship to you?
   C. State the name and address of the company or association against which the claim is or was asserted.
   D. Briefly describe the circumstances under which the claim is or was asserted.

20. Is there now being or has there ever been asserted  claim of any kind against you or any of your intimate friends or relatives (as listed in question 9)?

21. If your answer to question 20 was yes,
   A. By whom is or was the claim asserted?
   B. Against whom is or was the claim asserted?
   C. Briefly state the nature of the claim.

22. Has any claim which has ever been asserted by you or any of your intimate friends or relatives (as listed in question 9) or against you or any of your intimate friends or relatives (as listed in question 9) been settled by an insurance company or insurance association?

23. If your answer to question 22 was yes,
   A. State the name and address of the person or firm asserting claim.
   B. State the name and address of the person or firm against whom the claim was asserted.
   C. State the name and address of the Company or association which settled the claim.
   D. Briefly state the nature of the claim.

formula exists under the present system which will guarantee a plaintiff a non-insurance jury while it guarantees a defendant a non-inflamed jury and to propose a remedy for the dilemma that besets our Court. The observations made herein are necessarily confined to an isolated segment of a complicated field of law. No attempt has been made to deal with the problem as it arises in phases of a judicial proceeding other than the voir dire examination of jurors. No attempt has been made to examine the problem as it is found in the conflict of laws. It is, therefore, readily conceded that even if the remedy suggested were effected by legislation, the problems remaining in this field would be numerous and thorny. It is submitted, however, that if the proposed plan accomplished nothing else, it ought at least to prevent the trial court from being forced to "steer a course between the Scylla of a packed jury on the one hand and the Charybdis of pettifoggery on the other."[52]

*Scott Tennyson*

---

[52]Putnam v. Pacific Monthly Co., 68 Or. 36, 130 Pac. 986 (1913), modified on rehearing, 68 Or. 36, 136 Pac. 835 (1913).