# TRIAL

March 1989 — Volume 25, Number 3

| | |
|---|---|
| **President's Page** — Bill Wagner | 5 |
| **Education Calendar** | 9 |
| **Letters** | 10 |
| **Law Office Technology** — Curtis C. Simpson, III | 12 |
| **Supreme Court Review** — Daniel A. Farber | 16 |

## Intellectual Property

| | |
|---|---|
| **Gray Market Litigation** — J. Michael Cleary and Norm D. St. Landau | 22 |
| **The Fair Use Defense in Trademark Cases** — H. John Campaign | 28 |
| **Proving Patent Infringement** — Ronald B. Hildreth | 36 |
| **Remedies in Patent-Infringement Cases** — Joseph W. Berenato, III | 40 |
| **Money Damages in Trade-Secret Cases** — Steven S. Young and Margaret J. Palladino | 45 |
| **Computer Software Cases** — Michael D. Scott | 48 |
| **Propeller Guards for Recreational Boats** — R. Ben Hogan, III | 56 |
| **Impeachment by Prior Inconsistent Statement** — James Martin Davis | 64 |
| **Electrocution Accidents on the Job** — Robert J. Mongeluzzi | 68 |
| **Sports Helmets: More Harm Than Protection?** — Larry E. Coben | 74 |
| **Federal Voir Dire and Jury Selection** — David Hittner | 85 |
| **Trends** | 88 |
| **Washington Focus** — Alan A. Parker | 97 |
| **Ethics** — Ronald D. Rotunda | 98 |
| **Books** | 102 |
| **Classified** | 109 |
| **Index of Advertisers** | 119 |
| **Quotes** | 120 |



What's an Idea Worth?   36



High-Tech High Jinks   48



Out of Harm's Way?   68



Going Full Tilt   74

TRIAL © 1989 (ISSN 00412538) is published monthly by The Association of Trial Lawyers of America, 202-965-3500; 1050 31st St., NW, Washington, DC 20007-4499. Printed in the United States of America. Subscriptions: $36 annually (furnished as a benefit to ATLA members). Student price $10. Back issues $6 each. Second-class postage paid at Washington, DC, and additional mailing offices. Postmaster: Send address changes to ATLA, P.O. Box 3717, Washington, DC 20007-4499.

The Cover: Six seminal thinkers in various fields of endeavor illustrate this month's theme. From left to right, top to bottom: Plato, Einstein, Shakespeare, Darwin, Bach, and Leonardo. Source: FPG

Exhibit 11

*Exclusively from* **PEG**



## Trial Transcript Series
With Forewords by Irving Younger, James W. Jeans, Sr. and James W. McElhaney

| Volume | Featuring | Price |
|---|---|---|
| 1 | Max Steuer - *Triangle Shirtwaist* and Joseph Proskauer in *Oppenheim* | $12.00 |
| 2 | Robert Hanley - *MCI v. AT&T II* | $20.00 |
| 3 | Clarence Darrow - *TN v. Scopes* | $12.00 |
| 4 | Irving Younger - *Tavoulareas v. The Washington Post* | $12.00 |

**Select Any 8 Volumes (including storage cases) and SAVE 10%**

| | | |
|---|---|---|
| 5 | Thomas Murphy - *U.S. v. Alger Hiss* | $20.00 |
| 6 | Edward Bennett Williams - *U.S. v. Connally* | $20.00 |
| 7 | Highlights from *The Nuremberg Trial* | $20.00 |
| 8 | Clarence Darrow - *Leopold and Loeb* | $12.00 |
| 9 | James Brosnahan - *The Sanctuary Trial* | $12.00 |
| 10 | William H. Wallace - *Missouri v. Frank James* | $12.00 |

**Save 20% on 16 Volume Set (including storage cases) . . . . . . . . . $204.80**

| | | |
|---|---|---|
| 12 | Vincent Fuller - *U.S. v. Hinckley* | $12.00 |
| 13 | Highlights from *The Lizzie Borden Trial* | $20.00 |
| 14 | Richard Hauptmann in *The Lindbergh Kidnapping Trial* | $20.00 |
| 15 | Lantz Welch - *Kansas City Hyatt Skywalk* | $12.00 |
| 16 | Irving Younger - *Ulysses* (the novel) in Court (speech) | $20.00 |

Send mail orders to:
**The Professional Education Group, Inc.**
12401 Minnetonka Boulevard, Minnetonka, MN 55343
American Express - Visa - MasterCard - Discover Accepted.
MN Residents add 6% sales tax.

**PHONE ORDERS (612) 933-9990**

---



### The Association of Trial Lawyers of America

**National Officers**
Bill Wagner, President
Russ M. Herman, President-Elect
Sidney Gilreath, Vice President
Bob Gibbins, Secretary
Michael Maher, Treasurer
Roxanne Barton Conlin,
    Parliamentarian
Eugene I. Pavalon,
    Immediate Past President
John B. Davidson,
    TRIAL Editorial Adviser

Thomas H. Henderson, Jr.
    Executive Director

**TRIAL Staff**
George M. Gold, Editor
Elizabeth E. Yeary,
    Managing Editor
Therese Eve Painter, Senior Editor
Claudia J. Postell, Associate Editor
Virginia Cope, Associate Editor
Margaret Suter, Assistant Editor
Mari Lisa Pappas,
    Administrative Assistant
Rita Jones, Editorial Production
Paul Hadhazy,
    Production Services Manager
Dan Skripkar, Production Manager
Martha Loomis,
    Typesetting Supervisor
R. Hudson II, Susan K. Sandbach,
Kimberly Keith,
    Production Assistants
Patricia C. Delgado,
    Advertising Manager
Judith A. Fair,
    Advertising Assistant
Jane D'Alelio, Ice House Graphics
    Cover and Illustrations

TRIAL is published by The Association of Trial Lawyers of America as part of ATLA's overall program to educate the trial bar. Its purpose is to provide information and opinion that is timely, practical, and readable. The editors welcome submissions; interested authors should write for written guidelines.

Statements and opinions in editorials or articles are not necessarily those of ATLA. Publication of advertising does not imply endorsement. All advertising is subject to approval of the publisher.

It is suggested that the reader make appropriate inquiries before sending any money, incurring any expense or entering into a binding commitment in relation to an advertisement. TRIAL will not be liable to any person for loss or damage incurred or suffered as a result of accepting or offering to accept an invitation contained in any advertisement published in TRIAL.

Material published in TRIAL remains the property of ATLA. No material may be reproduced or used out of context without prior approval of, and proper credit to, the magazine.

This material may be protected by Copyright law (Title 17 U.S. Code)

# Federal Voir Dire and Jury Selection

## An Alternative View

By David Hittner

"Counsel, you may proceed with the voir dire examination." To trial attorneys, these words are familiar in state court—but not in federal court. Most state court judges permit, either by custom or rule, full and complete voir dire by counsel for plaintiff (or, in a criminal case, the state) and by counsel for defendant. Attorney voir dire is not the custom in federal courts, however, where voir dire is usually conducted by the trial judge. The federal rules of both civil[1] and criminal[2] procedure stipulate that either counsel or the judge may conduct voir dire, but in practice, particularly in criminal cases, it is the judge who conducts it in federal courts.[3]

The purpose of this article is not to criticize my brothers and sisters on the federal trial bench who conduct some or all of the voir dire. Rather, it is to discuss an alternate approach that has worked for me, and, also, to allay the skepticism of judges who may be concerned that voir dire by attorneys in federal court will lead to abuses and waste court time.

After serving for seven-and-a-half years as a judge of a state trial court of general jurisdiction, giving preference to civil cases, I have observed

David Hittner is a United States District Court Judge for the Southern District of Texas, Houston. Before assuming the federal bench in 1986, he served as a state district judge for seven years. He was a trial attorney before his state court tenure.

Judge Hittner has lectured widely on trial practice and procedure and has presented his Saturday Morning in Court CLE programs throughout the United States.

(and have been subjected to) a variety of voir dire examinations. The lawyers were generally free to discuss a wide range of subjects and theories, and voir dire often lasted a number of hours. This is not uncommon in many state jurisdictions, especially since comments and questions from state judges are generally restricted, in contrast to federal court, where judges may comment on the weight of the evidence.

When I became a federal judge in 1986, I discovered that the standard procedure in federal court was for the judge to initially question each prospective juror, often asking each to stand and give a synopsis of his or her background. After the initial examination, the judge posed the questions that were requested by counsel for both sides in their pretrial orders. The court might also allow counsel a few minutes to ask some follow-up questions or to submit additional ones for the judge to ask the panel.

Juror questionnaires also may affect the length of voir dire examinations. State-court juror questionnaires in Texas (as in most states) are generally limited; the federal questionnaire routinely used in my district is even more limited. The federal form provides only the following information about the potential juror and his or her spouse: name, address, marital status, occupation, and employer.

## A Different Approach

Proceeding on the proposition that the lawyers are better versed in their cases than the judge, I permit them to conduct the entire voir dire examination in criminal and civil cases. But to promote an efficient voir dire, I provide them with the answers to an extensive juror questionnaire.

I advise the lawyers at the pretrial conference that the completed juror questionnaires will be available before their voir dire examination, and I encourage them to bring highlighters to court to note areas of concern or interest on each juror's form. I also tell them that they will not be permitted to ask any questions on the form but that they will be free to follow up on any written answer submitted by a juror that they deem important to their particular case.

All questioning of jurors that might involve a controversial, embarrassing, or personal area is conducted at the bench. Challenges for cause are made at the bench immediately after the examination and reseating of a questionable juror.

I ask the lawyers how much time they think they will need to voir dire the panel. The average time per side (assuming only two parties) is about half an hour, but I have routinely allocated more time in complex or multiparty cases.

In almost every federal case tried in my court using this system, most lawyers have not used all their allotted time. The questionnaire, completed by each juror in advance, is the key to this efficient and personalized voir dire examination by counsel.

This is how it works. Jury panels in my court are assembled about an hour and a half before the beginning of voir dire, and each prospective juror completes a detailed questionnaire, which is photocopied and provided to all counsel about 30 minutes before they are permitted to question the jury panel.

Although jurors are told that they do not have to answer a question if they prefer not to,[4] they are requested to provide the following information: name; age; city of residence; length of residence in area; employment; place of birth; marital status; children (age and sex); similar information for



# ATLA MONOGRAPH SERIES

**ATLA presents three new studies on personal injury law.**

### The Case for Punitive Damages: A New Audit
*by Thomas F. Lambert, Jr.*
Review the arguments for retaining the civil remedy of punitive damages and countering attacks by well-financed insurance interests.

### Tactical Decisions in a Personal Injury Lawsuit
*by Paul L. Stritmatter*
Analyze an experienced attorney's strategy at each stage of an actual personal injury case, where a motorcycle collision caused plaintiff's spastic quadriplegia.

### Theory of Bad Faith
*by Sanford M. Gage*
Explore the requirements for proving damages against insurance companies that breach their obligations.

To order, call *1-800-424-2727* or fill out the form below.

---

☐ Please send me the following new monograph(s) from ATLA:

☐ **The Case for Punitive Damages: A New Audit**
by Thomas F. Lambert, Jr.
(54B)   $6.00

☐ **Tactical Decisions in a Personal Injury Lawsuit**
by Paul L. Stritmatter
(55B)   $6.00

☐ **Theory of Bad Faith**
by Sanford M. Gage
(53B)   $7.50

Name _____
Firm _____
Address _____
City _____ State _____ Zip _____
☐ Check is enclosed (payable to ATLA Educational Materials) in the amount of $ _____
☐ Charge to ☐ VISA ☐ American Express ☐ MasterCard
Card Number _____
Exp. Date (mo/yr) _____
Signature _____

Return to: Marketing & Member Services, ATLA, 1050 31st Street, NW, Washington, DC 20007.

---

spouse; completed education history (including schools, degrees, and majors); military service; government employment; prior jury-service details; involvement in civil suits and/or criminal investigations; medical and legal background; acquaintance with other panel members; newspapers and magazines read by the juror; organization membership of the juror and spouse; and physical or other reasons that may interfere with jury service.

Before the voir dire examination, I admonish the lawyers on the record that if any of them deliberately (or in a way that appears deliberate) tries to cause a mistrial, that lawyer will never again personally conduct a voir dire examination in my court.[5] I usually take about 5 minutes to greet and thank a new jury panel and offer whatever remarks might be appropriate before turning the questioning over to counsel.

### Alternate Jurors

Civil juries are routinely composed of 6 (or, in some federal districts, 12) people, and criminal juries are composed of 12 jurors, with 1 or 2 alternatives seated. I give counsel the opportunity of selecting the entire panel, including alternates, with their initial strikes. For example, a total, including alternates, of 4 peremptory strikes for each side in a 2-party civil case, and 7 for the government and 11 for the defense in a criminal case. All jurors seated will be "fully qualified jurors," and none will be designated an alternate.

At the conclusion of trial, after the summations and instructions have been presented to the jury, the names of all jurors, on separate slips of paper, are placed in a container and one juror draws the names of the "alternates." This is popular with jurors and should be welcomed by lawyers. With no juror designated an alternate throughout the trial, no one turns off or tunes out just because he or she is in seat number 7 or 13 or 14. The jurors are told about the system at the beginning of trial and seem to appreciate what they perceive to be a fair method of selecting the alternates.

I also give lawyers the option of proceeding to verdict with less than a unanimous verdict in civil cases, and often the "seventh juror" becomes a full participant if the lawyers involved agree to a 6-to-1 or even 7-to-0 ver-

dict. By agreement, almost any combination of verdict is permissible in a civil case.[6]

### The Advantages

Full participation by counsel in voir dire should not be of major concern to a federal district judge. When correctly conducted by counsel, it serves the dual purpose of allowing lawyers to question and interact with prospective jurors and can also be a preview of each side's perception of the facts, its theory of the case, and its position in the case. This process works in my court, and in more than two years on the federal bench, I have not even come close to declaring a mistrial because of an improper voir dire examination conducted by an attorney.

Because attorneys use the juror questionnaire, the juror examinations are succinct and take little, if any, more time than judge-conducted voir dire. Only occasionally do I have to intervene during the questioning period. Also, because I usually use a fully qualified juror panel with no designated alternate jurors, all jurors remain attentive throughout the trial. This system, it seems to me, is a good one.

### Notes

1. FED. R. CIV. P. 47(a).
2. FED. R. CRIM. P. 24(a).
3. United States v. White, 750 F.2d 726, 728 (8th Cir. 1984); United States v. Ainesworth, 716 F.2d 769, 770-71 (10th Cir. 1983); United States v. Verkuilen, 690 F.2d 648, 659-60 (7th Cir. 1982); United States v. Holman, 680 F.2d 1340, 1344-45 (11th Cir. 1982); United States v. L'Hoste, 609 F.2d 796, 801-02 (5th Cir. 1980).
4. The caption of the questionnaire given to jurors states: "This questionnaire is intended to help the lawyers and the Court during jury selection. Please complete all applicable questions. Print your answers in ink. The questions are not intended to unreasonably invade your privacy. If, however, you prefer not to answer a question, please draw a line through the space provided for an answer. If the question is not applicable to you, please mark 'N/A' in the space provided."
5. I oppose legislation to *require* federal judges to allow counsel to conduct the voir dire. My admonition that future individual voir dire will be refused if misconduct occurs by counsel is effective, in part, because attorneys are aware that they can be precluded from juror questioning under the prevailing rules. Counsel also are required to submit their voir dire questions in writing before trial (usually in the pretrial order), and any areas of potential conflict are discussed either via a motion in limine or orally, on the record, before the trial actually begins.
6. *See generally* FED. R. CIV. P. 48.

## "MISSING"

Witnesses, defendants, debtors, policy holders, heirs. Let us locate them for you. 48 hour service. You pay only for a successful search. Our fee is $150.00 when last known address is 4 years old or less.

For additional information, or to start a search, call **1-800-426-7728** Jaisan-Patlen Company. Offices in New York, Atlanta, Cleveland and Fort Lauderdale.



### LEARN HOW TO CONDUCT VIDEOTAPE DEPOSITIONS

A **Videocassette** Produced **by** and **for** Attorneys!

- Special techniques needed for admissible *and* effective videotape depositions.
- Know-how and experience taught by a lawyer/producer of thousands of successful legal videotapes since 1979.
- Non-technical guide with strategies, practical tips and demonstrations.

**Lawyers' Video Service, Inc.**
2601 Pennsylvania Ave. • Phila., PA 19130



$89.50

plus $5.00 shipping, handling & insurance

**1-800-544-1160**

Most Major Credit Cards Accepted or send check or money order

### Make A Binding Commitment to TRIAL

Keep each year's issue of TRIAL neatly organized for ready reference, in a sturdy binder Large enough to hold a complete volume of twelve issues.

For each binder send $15 to:
TRIAL Binders
1050 31st Street, N.W.
Washington, D.C. 20007-4499

