THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ILA LaFRENTZ, JIM LaFRENTZ, KATHERINE PORTERFIELD, and WILLIAM LaFRENTZ, Individually and as Representatives of the Estate of JAMES B. LaFRENTZ, <br><br> Plaintiffs, <br><br> vs. <br><br> 3M COMPANY, et al., <br><br> Defendants. | Civil Action <br> 4:18-cv-04229 |

The videotaped videoconference Zoom deposition of JENNIFER SAHMEL, MPH, CIH, CSP, FAIHA, called for examination pursuant to Notice and pursuant to the Rules of Civil Procedure for the United States District Courts pertaining to the taking of depositions, taken by Roselind C. Pisano, C.S.R. No. 084-002031, Certified Shorthand Reporter and a Notary Public within and for the County of Cook and State of Illinois, on December 9, 2020, between the hours of 11:07 a.m. and 12:42 p.m. Central Time.

**Exhibit 6**

1  Q. You have no opinions on how the mask -- how
2  the 8710 was designed, correct?
3  A. The specific design of the 8710 is outside
4  the scope of my opinions in this case, other than its
5  performance, of course, and how that's been reviewed
6  and reported by government agencies and others.
7  Q. Sure. You're not going to tell the jury
8  that Mr. LaFrentz was not exposed to asbestos, are
9  you?
10 A. Regarding the information I have in the
11 materials that I've received, I don't have enough
12 specific information one way or the other to
13 definitively confirm whether or not he was exposed to
14 asbestos given that the airborne fiber concentration
15 measurements that are reported for his work were in
16 the phase contrast microscopy, or PCM, measurement
17 metric, which is not specific to asbestos.
18             However, for the purposes of my analysis, I
19 assumed that he did or could have theoretically had
20 asbestos exposures associated with the products he
21 describes, whether or not that is, in fact, true.
22 Q. Do you intend to tell the jury that based on
23 those assumptions, the level of asbestos that he
24 would have been exposed to would have been a safe
25 level of asbestos?

1  A.  As I note in my report beginning on page 53,
2  the quantitative calculations that I have performed
3  for an upper-bound cumulative exposure potential to
4  Mr. LaFrentz, regardless of whether I used an
5  estimate combining both the measured airborne fiber
6  concentration data from the facility in which they
7  did a one-minute test during his work and also
8  encompassing the peer-reviewed airborne fiber
9  concentration data with respect to adhesives, or if I
10 had hypothetically assumed that all of the exposure
11 that he experienced was, again, theoretically both
12 asbestos and at a fiber concentration of up to 28.8
13 fibers per cc, again, for which we have no evidence.
14      In fact, even, for example, individuals
15 working on insulation full-time in shipyards in small
16 spaces would not have experienced a full-shift
17 exposure as high as that level.
18      And, of course, based on the information
19 from General Dynamics, there is no evidence that any
20 such environment ever occurred at the General
21 Dynamics facility.
22      Given all of those pieces of information and
23 all of the various hypothetical calculations that
24 I've performed, each and every one of those
25 calculations results, even with an upper bound, in a

1  cumulative asbestos exposure potential to
2  Mr. LaFrentz that would be within the airborne fiber
3  concentrations reported by U.S. ATSDR and other
4  peer-reviewed literature, for example, the background
5  or ambient cumulative lifetime exposure estimates for
6  anyone in the general U.S. population.
7       And I am not aware of any evidence in the
8  peer-reviewed and published literature which would
9  indicate or suggest a statistically significant
10 increased risk of asbestos-related disease at or
11 below those levels of exposure.
12      And, furthermore, I'm also not aware of any
13 evidence which would indicate or suggest a
14 statistically significant increased risk of asbestos-
15 related disease using measured human exposure data
16 for exposures up to and below the current equivalent
17 working lifetime at the current OSHA-permissible
18 exposure limit for asbestos. Again, this is
19 different from their risk assessment that they
20 performed.
21      But at that level of .1 fibers per cc as an
22 eight-hour time-weighted average, which is currently
23 allowed in all workplaces in the United States, over
24 a 45-year working lifetime, that would be equivalent
25 to 4.5 fiber/cc-years on a cumulative working

lifetime basis.

I'm not aware of any evidence in the literature, again, using measured human exposure data which would indicate or suggest a statistically significant increased risk of asbestos-related disease at or below those levels of exposures, which would be over twice the background level of exposure.

Q. What was the last number you referenced there that you said -- did you say point -- I'm sorry. I was trying to read something and follow what you were saying.

A. No problem. What was the question?

Q. The very last number you referenced that was your background that you were referring to in the last example you were giving, what number was that?

A. The last example that I gave was with respect to the OSHA-permissible exposure limit for asbestos and the equivalent cumulative working lifetime exposure to a worker who would work at that level of exposure over 45 years, which would be equivalent to 4.5 fiber/cc-years on an occupational basis.

Q. Do you intend on performing -- or telling the jury that while Mr. LaFrentz wore a 3M 8710 at General Dynamics, he would not have inhaled any

1  Q. Same thing during his time later doing the
2  cleanup work on the construction sites, can you point
3  to any objective evidence that a jury will see that
4  will enable you to make a -- draw a conclusion that
5  Mr. LaFrentz was exposed to asbestos on those sites?
6  **A. Again, based on his testimony in what was**
7  **limited in what he reported or discussed or observed,**
8  **I can't rule out that he could have experienced such**
9  **exposures, although I don't have sufficient**
10 **information to definitively say that he would have**
11 **experienced such exposures.**
12 Q. And the only actual objective evidence of
13 Mr. LaFrentz ever placing his hands on a component
14 part that utilized asbestos was during the time
15 between 1979 and 1982, I believe specifically 1980,
16 when he was working with the asbestos-containing
17 adhesive while he was working at General Dynamics,
18 correct?
19 MR. RAMIREZ: Objection; calls for speculation,
20 lack of foundation.
21 THE WITNESS: No, that's not accurate. As I
22 mentioned before, we also don't have definitive
23 evidence that Mr. LaFrentz experienced asbestos
24 exposure there based on the airborne fiber
25 concentration measurements which were in the PCM

1  lack of foundation, vague.
2  THE WITNESS: Again, going back to the airborne
3  fiber concentration measurements reported in this
4  matter, because they are PCM, or phase contrast
5  microscopy, they are not specific to asbestos and so
6  I cannot say exactly how many of those fibers
7  measured were, in fact, asbestos or mineral fibers.
8  So even as a hypothetical, I don't know that
9  I can answer who would have had more asbestos just
10 based on the information that I have been provided
11 for review in this case.
12 BY MR. PEEK:
13 Q.  But it's fair to say that Mr. LaFrentz --
14 now, the real Mr. LaFrentz -- would have had the
15 traditional, accepted background exposure throughout
16 his life plus whatever potentially occurred while at
17 General Dynamics, correct?
18 MR. RAMIREZ: Objection; speculation, lack of
19 foundation, vague.
20 THE WITNESS: Again, I have made that theoretical
21 assumption for purposes of my analysis, but based on
22 the airborne fiber concentration measurements that I
23 have, I can't definitively say that those were, in
24 fact, asbestos, or how many of them were asbestos,
25 again, hypothetically.