IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ILA LaFRENTZ, JIM LaFRENTZ, | § | |
| KATHERINE PORTERFIELD, and | § | |
| WILLIAM LaFRENTZ, Individually | § | |
| and as Representative of the Estate | § | |
| of JAMES B. LaFRENTZ | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:18-cv-04229 |
| | § | JURY DEMANDED |
| | § | |
| 3M COMPANY, ET AL | § | |

**DEFENDANT 3M COMPANY'S MEMORANDUM IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**Statement of the Issues to be Ruled upon by the Court**

This motion presents three issues under Rule 56(a): "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]

1. ***Asbestos causation.*** Under Texas law, a plaintiff must show the frequency, regularity, and proximity of his exposure to asbestos, and that his dose of asbestos attributable to a defendant's product was a substantial factor in causing his claimed injury.[2] It is undisputed that Plaintiffs have provided only a one-minute air sampling report, which counted fibers outside of the 3M 8710 respirator that may or may not be asbestos. Consequently, their expert's approximate dose calculation, founded on this sample, rests on sheer speculation. Given Plaintiffs' lack of evidence to satisfy the frequency, proximity, and regularity standard, shouldn't Plaintiffs' claims fail as a matter of law?

2. ***Fraudulent misrepresentation.*** Under Texas law, a plaintiff may maintain a fraudulent misrepresentation claim based on a written representation only if he read and relied on the written representation.[3] It is undisputed that Plaintiffs' decedent James B. LaFrentz read neither the instructions nor warnings that came with the 3M

---

[1] Fed. R. Civ. P. 56(a).
[2] *Borg-Warner Corp. v. Flores*, 232 S.W. 3d 765, 772-73 (Tex. 2007); *Bostic v. Georgia-Pac. Corp.*, 439 S.W.3d 332, 350 (Tex. 2014).
[3] *McReynolds v. Barrett Daffin Frappier Turner & Engel, LLP*, 2013 WL 754240, at *3 (S.D. Tex. Feb. 27, 2013).

respirator he allegedly used, nor any other 3M literature. Given that LaFrentz could not rely on information he did not read, shouldn't Plaintiffs' fraudulent misrepresentation claim fail as a matter of law?

3. **Failure to warn.** Texas law does not impose a duty on manufacturers to warn of risks of other manufacturers' asbestos products.[4] Plaintiffs don't allege that 3M made any asbestos-containing product to which LaFrentz was exposed. Further, a plaintiff can't maintain a failure-to-warn claim unless he read and heeded the allegedly inadequate warnings.[5] And it is undisputed LaFrentz didn't do so. Given the lack of evidence to support Plaintiffs' failure-to-warn claim, shouldn't it fail as a matter of law?

**Facts**

Plaintiffs' decedent James B. LaFrentz was a laborer from Austin, Texas.[6] He passed away in October 2019.[7] Plaintiffs—his surviving family members—allege that LaFrentz developed mesothelioma[8] from his exposure to asbestos while he worked for General Dynamics Corporation at Air Force Plant 4 of the Carswell Air Force Base in Fort Worth.[9] General

---

[4] *Phares v. Actavis-Elizabeth LLC*, 892 F. Supp. 2d 835, 845 (S.D. Tex. 2012) (quoting *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996)).

[5] *Gen. Motors Corp. v. Saenz on Behalf of Saenz*, 873 S.W.2d 353, 360 (Tex. 1993); *Foltz v. Smith & Wesson Corp.*, No. 3:08-CV-0858-K, 2009 WL 2596598, at *3 (N.D. Tex. Aug. 20, 2009); accord *Blythe v. Bumbo Int'l Tr.*, No. 6:12-CV-36, 2013 WL 6190284, at *4 (S.D. Tex. Nov. 26, 2013).

[6] Ex. 1 LaFrentz Dep. Vol. I, 24:16-19.

[7] Plaintiffs' Second Amended Compl. ¶ 9.

[8] 3M disputes the mesothelioma diagnosis, and even LaFrentz's physicians did not agree on the diagnosis. Because Defendants have, since the beginning of the lawsuit, questioned whether LaFrentz had mesothelioma, rather than a lung cancer related to his longtime tobacco use, Defendants made several requests prior to LaFrentz's death to preserve his lung tissue for analysis. That analysis would have established which diagnosis was correct. Plaintiffs and their counsel failed to preserve the tissue or request an autopsy. General Dynamics and 3M therefore moved for sanctions for spoliation of evidence, which the Court granted in part in March. Doc. 133.

[9] Plaintiffs' Second Amended Compl. ¶ 8; Ex. 1 LaFrentz Dep. Vol. I, 55:13-17; Ex. 2 LaFrentz Dep. Vol. II, 148:7-17.

Dynamics manufactured aircrafts at Air Force Plant 4;[10] the facility is now operated by Lockheed Martin Corporation.

LaFrentz worked at Air Force Plant 4 as a drill press operator from 1979 to 1982.[11] About two days a month,[12] he drilled and sanded aircraft panels, which he said were referred to as "coupons."[13] LaFrentz testified that when he drilled and sanded coupons, and cleaned up after that work, he wore a 3M 8710 respirator.[14] LaFrentz drilled and sanded three types of coupons: honeycombs, strips, and panels.[15] He estimated that during that three-year period, he worked on a thousand coupons.[16] LaFrentz did not remember if each coupon was made from the same material.[17]

LaFrentz admitted he did not read the warnings or instructions on the 3M 8710 respirator or its package.[18] He could not remember if the 3M 8710 respirator had writing printed on the facepiece.[19] Nor did he ever read any 3M advertisements, brochures, or any other type of literature related to the 3M 8710 respirator.[20]

---

[10] Ex. 1 LaFrentz Dep. Vol. I, 56:8-13.
[11] Ex. 2 LaFrentz Dep. Vol. II, 146:14-147:3.
[12] Ex. 1 LaFrentz Dep. Vol. I, 65:4-13.
[13] *Id.* at 59:13-60:3.
[14] *Id.* at 78:7-20, 80:15-81:13. 3M accepts that identification for purposes of this motion.
[15] *Id.* at 59:23-60:14.
[16] Ex. 2 LaFrentz Dep. Vol. II, 113:2-8.
[17] *Id.* at 113:14-24.
[18] Ex. 1 LaFrentz Dep. Vol. I, 78:13-16; Ex. 2 LaFrentz Dep. Vol. II, 108:4-15.
[19] Ex. 1 LaFrentz Dep. Vol. I, 78:13-16.
[20] Ex. 2 LaFrentz Dep. Vol. II, 108:4-15.

On February 26, 1980, a General Dynamics industrial hygienist, Barbara J. Hallstein, conducted a single air sampling test near LaFrentz's worksite.[21] The air was sampled for one minute while LaFrentz belt-sanded a "P 653 Panel"—according to LaFrentz, a strip coupon[22]—which contained an adhesive identified as "FMS 3018."[23] LaFrentz did not know anything about the FMS 3018 adhesive used on the strip coupon that he sanded that day.[24] He did not know whether the adhesive was used on all the strip coupons he sanded, nor if it was used on the other types of coupons.[25] All he knew was that the coupon he sanded that day, February 26, 1980, included FMS 3018 adhesive.[26] The record contains no other evidence of what the coupon (panel) and adhesive were made of, or whether either contained asbestos.

The air sampling test measured a concentration of "28.8 fibers/cc" in the air outside the 3M 8710 respirator.[27] Although the Air Sampling Report identified these fibers as "asbestos," Plaintiffs' own expert has testified that the counted fibers were not necessarily asbestos: the air sampling test merely counted fibers of a certain length, which might or might not include asbestos fibers.[28] There are no measurements of fibers in the atmosphere inside the respirator allegedly warn by LaFrentz. And Hallstein, the industrial hygienist who conducted the air sampling test, testified that she did not create the report, and couldn't remember any details from the air sampling, such as what fibers she sampled or the results from the air sampling.[29]

---

[21] Ex. 9 Air Sampling Report; Ex. 2 LaFrentz Dep. Vol. II, 158:20-25; Ex. 3 Hallstein Dep., 21:14-22, 23:3-5.
[22] Ex. 2 LaFrentz Dep. Vol. II, 121:2-7.
[23] Ex. 9 Air Sampling Report.
[24] Ex. 2 LaFrentz Dep. Vol. II, 169:15-22.
[25] *Id.* at 170:18-23.
[26] *Id.* at 170:18-23.
[27] Ex. 9 Air Sampling Report.
[28] Ex. 4 Garza Dep., 36:11-15.
[29] Ex. 3 Hallstein Dep., 29:3-30:1.

After the air sampling test, and after LaFrentz was provided a copy of the Air Sampling Report, neither General Dynamics nor LaFrentz did anything to change his work or work environment. LaFrentz did not share the air sampling report with his work union.[30]

**Legal Standard**

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[31] "A fact is 'material' if its resolution could affect the outcome of the action."[32] And a genuine dispute is present "only if a reasonable jury could return a verdict for the non-movant."[33] "The movant bears the initial burden of showing the absence of a genuine issue of material fact."[34] But "on matters for which the non-movant would bear the burden of proof at trial . . . the movant's burden is reduced to merely pointing to the absence of evidence."[35]

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial" and "mandates the entry of summary judgment" for the moving party.[36] "Once the moving party has initially shown 'that there is an absence of evidence to support the non-moving party's cause,' the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial."[37] "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and

---

[30] Ex. 2 LaFrentz Dep. Vol. II, 159:9-22.
[31] Fed. R. Civ. P. 56(a).
[32] *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 411 (5th Cir. 2007) (quotation marks and citation omitted).
[33] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006) (citation omitted).
[34] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[35] *Id.* at 323-25.
[36] *Id.* at 322-23.
[37] *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Celotex Corp.*, 477 U.S. at 325).

legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial."[38]

**Summary of the Argument**

1. Plaintiffs must show the frequency, regularity, and proximity of LaFrentz's exposure to asbestos, and that his dose while wearing 3M respirators was a substantial factor in causing his claimed injury. Plaintiffs have provided only a one-minute air sampling report, with no measurement taken of the atmosphere inside a 3M respirator, which counted fibers that may or may not be asbestos. Consequently, their expert's approximate dose calculation, founded on this sample, rests on sheer speculation and fails the frequency, proximity, and regularity standard.

2. Plaintiffs may maintain a fraudulent misrepresentation claim based on a written representation only if LaFrentz read and relied on the written representation. LaFrentz's testimony shows that he did not read the instructions or warnings that came with the respirator or any other 3M literature. Because he could not rely on information he did not read, the fraudulent misrepresentation claim fails.

3. Plaintiffs' failure-to-warn claims are unsupported by evidence. They don't allege that 3M made any asbestos-containing product to which LaFrentz was exposed, and cannot make a failure-to-warn claim against 3M for not warning LaFrentz about the risks of other manufacturers' asbestos products. Texas law does not impose such a duty on 3M. As with their fraudulent misrepresentation claim, in order to make a claim for inadequate warnings provided with the 3M respirators LaFrentz allegedly used, Plaintiffs must show LaFrentz read and heeded

---

[38] *Id.*

3M's warnings and instructions. But LaFrentz did not do so; thus, Plaintiffs cannot prove any alleged inadequacy in 3M's warnings caused LaFrentz's injuries.

## Argument

1. **Plaintiffs' failure to produce evidence required under the *Borg-Warner* standard mandates entry of summary judgment for 3M on all Plaintiffs' claims.**

Plaintiffs' claims against 3M are for negligence, strict liability, and fraudulent misrepresentation.[39] Each claim sounds in products liability,[40] and the root injury attributed to each claim is mesothelioma, which Plaintiffs say resulted from LaFrentz's asbestos exposures.[41]

Texas asbestos and mesothelioma claims are governed by the *Borg-Warner* substantial-factor causation standard.[42] In *Borg-Warner*, the Texas Supreme Court agreed that the familiar "frequency, regularity, and proximity" test is necessary—but not necessarily sufficient—to prove causation. The Court therefore added an additional element to establish substantial-factor causation.[43] Recognizing toxicology's central tenet that "the dose makes the poison," the court reasoned that "substantial-factor causation, which separates the speculative from the probable, need not be reduced to mathematical precision."[44] However, Plaintiffs must provide "Defendant-specific evidence relating to the approximate dose [of asbestos] to which the plaintiff was exposed, coupled with evidence that the dose was a substantial factor in causing the asbestos-related disease."[45]

Even assuming LaFrentz's injury was actually asbestos-related mesothelioma—which Defendants dispute—Plaintiffs have failed to produce the evidence *Borg-Warner* requires. First,

---

[39] Plaintiffs' Second Amended Compl. ¶¶ 11-21.
[40] *Id.* at ¶¶ 12, 18, 19.
[41] *Id.* at ¶¶ 8-9.
[42] *Borg-Warner*, 232 S.W. 3d at 772-73; *Bostic*, 439 S.W.3d at 350.
[43] *Borg-Warner*, 232 S.W. 3d at 772-73.
[44] *Id.* at 770 (first quote), 773 (second quote).
[45] *Id.* at 773.

7

they have failed to produce evidence of frequency, regularity, and proximity with respect to LaFrentz's alleged exposures to asbestos. Second, they have failed to produce credible evidence of the approximate dose of asbestos to which LaFrentz was exposed. Third, they have failed to produce evidence that LaFrentz breathed even a single asbestos fiber while he was wearing a 3M respirator. Each failure dooms Plaintiffs' claims.

Plaintiffs' proof rests on a single fleeting air sample taken on February 26, 1980.[46] The test lasted just one minute, while LaFrentz sanded one specific type of coupon, which contained one specific type of adhesive.[47] There's no evidence whether the coupon or adhesive contained asbestos. And Plaintiffs' expert admits the sampling report only proves exposure to some quantity of fibers of a defined length—maybe asbestos fibers, but maybe not. Significantly, the air sample did not measure any fibers in the atmosphere *inside* the 3M 8710 respirator—which independently dooms Plaintiffs' claims under *Borg-Warner*.

Even assuming the sample demonstrated some asbestos in the air, Plaintiffs haven't provided evidence of the frequency, regularity, and proximity of LaFrentz's exposure to asbestos for any *other* day, month, or year during his work at Air Force Plant 4. A single brief air sampling report, as a matter of law, cannot satisfy the *Borg-Warner* standard. One minute of alleged exposure is plainly *de minimis*.

Plaintiffs' proposed expert, Kenneth Garza, provided a report in which he attempted to calculate LaFrentz's approximate asbestos dose using the one-minute air sample as a jumping-off point.[48] But that attempt to extrapolate LaFrentz's approximate dose of asbestos from this one-

---

[46] Ex. 9 Air Sampling Report. 3M disputes the admissibility of the Air Sampling Report. Relatedly, 3M is separately moving to exclude the report under Federal Rules of Evidence 403 and 901(a). 3M incorporates that motion here.
[47] *Id*.
[48] Ex. 5 Garza Report, App. B, Chart 3, Box 3-G.

8

minute sample is fanciful. It is "[t]estimony based on conjecture or speculation," which "is insufficient to raise an issue of fact to defeat a summary judgment motion."[49]

Garza's theories and related testimony about the level of LaFrentz's asbestos exposure are unreliable.[50] His dose calculation is based on only the February 26, 1980 Air Sampling Report and LaFrentz's deposition testimony.[51] The Air Sampling Report shows a "28.8 fibers/cc" concentration of some type of fibers outside of the 3M 8710 respirator; there is no evidence that any or all those fibers were asbestos, or that they were ever in the atmosphere inside the 3M 8710 respirator.[52] The fibers were counted in the air during one minute while LaFrentz sanded a "P 653 Panel." The panel—a "coupon," in LaFrentz's parlance—contained an adhesive identified as "FMS 3018."[53] LaFrentz estimated he worked on a thousand coupons during the three years he was a drill operator.[54] To calculate LaFrentz's approximate dose, Garza assigned the same concentration of fibers shown in the Air Sampling Report to every one of the thousand instances when LaFrentz estimated he sanded a coupon; and he assumed all the fibers were

---

[49] *Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994); *see also Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 405 (5th Cir. 1999).
[50] 3M has separately moved to exclude Garza's testimony under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as described in a separate motion. That motion is incorporated here by reference.
[51] Ex. 5 Garza Report, App. B, Chart 3, Box 3-G, 3-1.
[52] Ex. 4 Garza Dep., 36:4-15. 3M's expert witness, Jennifer Sahmel, agrees that the sample is not evidence that the fibers were asbestos. Ex. 6 Sahmel Dep., 34:10-21, 50:1-11, 57:2-7. Further, Hallstein, who conducted the air sampling, did not create the report, could not recall any details from the air sampling, and could not recall whether the materials LaFrentz belt sanded during the air sampling contained asbestos fibers. Ex. 3 Hallstein Dep., 21:4-23:1, 29:14-30:14, 52:12-53-15.
[53] Ex. 9 Air Sampling Report.
[54] Ex. 2 LaFrentz Dep. Vol. II, 113:2-8.

asbestos.[55] That assignment is unsupported speculation. Moreover, Garza does not say *any* of those fibers reached LaFrentz's breathing zone inside his 3M respirator.

LaFrentz recalled that the panel he was sanding during the air-sampling test was a strip coupon.[56] But neither he nor Garza could establish what the strip coupon was made of, or what the other types of coupons—honeycomb and panel coupons—were made of.[57] And LaFrentz described the coupons as having different textures.[58] Indeed, the record contains no evidence about the composition of either the coupons (panels) or the adhesive.

Further, Garza did not know how many of the other coupons LaFrentz sanded had the same adhesive on them.[59] Even if the others had *some* type of adhesive on them, there is no way to know whether it was different than the "FMS 3018" adhesive identified in the Air Sampling Report. Such a unique description of the adhesive in the report suggests there were different types of adhesives. Whether there were other adhesives, whether they contained asbestos or other types of similarly-sized fibers, and whether any of the other panels had adhesive on them at all, are facts Plaintiffs have failed to produce.

Garza's dose calculation[60] thus makes a mountain of a very small molehill: he speculates that all of the estimated 1000 coupons LaFrentz worked on would produce the same concentration of fibers shown in the Air Sampling Report. Despite acknowledging that the report only measured fibers of a certain length, Garza assumes that all those fibers were asbestos.[61] But

---

[55] Ex. 5 Garza Report, App. B, Chart 3, Box 3-G
[56] Ex. 2 LaFrentz Dep. Vol. II, 121:2-7.
[57] *Id.* at 113:19-24; Ex. 4 Garza Dep., 38:19-39:3.
[58] Ex. 2 LaFrentz Dep. Vol. II, 120:5-10.
[59] *Id.* at 170:18-23.
[60] Garza's low-dose causation opinions are nothing more than a repackaging of the no-safe-threshold theory condemned by the Texas Supreme Court in actions against asbestos product manufacturers. *See Bostic*, 439 S.W.3d at 341-41; *see also Borg-Warner*, 232 S.W.3d 773-74.
[61] Ex. 4 Garza Dep., 36:11-15.

he does not know (1) what each of the three types of coupons *or* the adhesive were made of; (2) how many were strip coupons; (3) whether the strip coupon's material or adhesive changed before or after the air sampling date; (4) whether adhesives were used on the other types of coupons and if so, (5) whether those adhesives were the same FMS 3018 adhesive.

This speculation cannot save Plaintiffs' claims from summary judgment.[62] When the "foundational data underlying opinion testimony are unreliable . . . the expert's scientific testimony is unreliable and, legally, no[t] evidence."[63] Under this standard, Garza's testimony is "not evidence," and the Court should disregard it. Plaintiffs have no specific evidence of LaFrentz's exposure to any approximate dose of asbestos at Air Force Plant 4 that could have been a substantial factor in causing his alleged mesothelioma.[64] Indeed, the only competent evidence in the record (from 3M's expert) is that any amount of asbestos to which LaFrentz was exposed at the plant was insignificant, and not a substantial factor in causing any injury.[65] 3M is therefore entitled to summary judgment.

---

[62] *TIG Ins.*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Celotex Corp.*, 477 U.S. at 325).
[63] *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 714 (Tex. 1997).
[64] Even assuming the Plaintiffs had provided defendant-specific evidence of asbestos exposure, Plaintiffs can't show that such an insignificant exposure was a substantial factor in causing any injury: there is no evidence of any exposure *inside* the respirators that LaFrentz used. Moreover, there is record evidence of other significant asbestos exposures outside LaFrentz's three-year period as a drill operator at Air Force Plant 4. These include, but are not limited to, LaFrentz: (1) tearing down and cleaning up drywall for a construction company in the early 1960s, Ex. 1 LaFrentz Dep. Vol. II, 135:3-13; (2) removing and replacing old pipe and insulation in a hospital basement for a steamfitter in the early 1960s, *id.* at 136:6-18; and (3) constructing mobile homes top to bottom, including plumbing and being around others installing insulation, between 1970 and 1971, *id.* at 88:1-98:22, 144:14-19.
[65] Ex. 6 Sahmel Dep., 35:1-37:7; Ex. 7 Sahmel Report, 53-55, all paragraphs under section entitled: "Summary: Mr. LaFrentz's Cumulative Exposure Potential (C) during Work with Encapsulated Adhesive Products."

### 2. Plaintiffs' failure to produce evidence that LaFrentz read any 3M representation mandates summary judgment on their fraudulent-misrepresentation claim.

Plaintiffs' fraudulent misrepresentation claims are barred for an additional reason. Such a claim requires a plaintiff to prove that he justifiably relied upon the alleged misrepresentation.[66] A plaintiff cannot assert reliance on a written representation he did not read.[67] LaFrentz did not read any representation made by 3M. He testified that:

- he did not read the warnings or instructions on the 3M 8710 package or respirator;
- he did not read any advertisements, brochures, or any other type of literature relating to the 3M 8710 respirator; and
- he could not remember if the 3M 8710 respirator had writing printed on the facepiece.[68]

Plaintiffs have no evidence that LaFrentz relied upon any 3M representation; that bars their claim as a matter of law, and mandates summary judgment.

### 3. Any claim for inadequate warnings also fails because 3M had no duty to warn LaFrentz about other manufacturers' asbestos products, and because LaFrentz did not read the warnings and instructions 3M provided with its respirators.

Plaintiffs' Complaint attempts to assert two types of failure-to-warn claims against 3M. Those claims fail as a matter of law.

First, Plaintiffs aver that 3M had a duty to warn LaFrentz about dangers of asbestos,[69] although they have not alleged that 3M manufactured any asbestos-containing product to which LaFrentz was exposed. Plaintiffs merely allege that LaFrentz wore 3M respirators while working with other manufacturers' products, and that those other products allegedly contained asbestos.

---

[66] *McReynolds*, 2013 WL 754240, at *3.
[67] *Glenn v. L. Ray Calhoun & Co.*, 83 F. Supp. 3d 733, 745 (W.D. Tex. 2015).
[68] Ex. 2 LaFrentz Dep. Vol. II, 108:4-15.
[69] Plaintiffs' Second Amended Compl. ¶ 21.

Texas law doesn't require 3M to warn about other manufacturers' asbestos products. A product manufacturer has no duty to warn consumers of dangers associated with products manufactured by others, even if such products will be used in connection with the manufacturer's own product.[70]

Second, Plaintiffs allege that the 3M 8710 respirator was "defectively marketed,"[71] *i.e.*, that the warnings and instructions that accompanied it were insufficient. This failure-to-warn claim, like Plaintiffs' claim for fraudulent misrepresentation, fails because LaFrentz neither read nor relied on the warnings and instructions that 3M provided.

"When the warning that would have prevented injury was ignored, there is no presumption that some additional warning would have been heeded."[72] Put another way, "failing to read the warnings provided negate[s] the causal link between the alleged inadequate warnings and the user's injury."[73] 3M provided warnings and instructions on the packaging for the 3M 8710 respirator, including an explanation on how to perform a fit check (or user seal check); an explanation of the environments for which the 3M 8710 respirator was suitable protection (*i.e.*, information about the permissible concentration of dust in the air for which the respirator was sufficient protection); and an admonition to ask a supervisor or call a 3M 800-number to resolve any questions about the product's proper uses.[74]

---

[70] *Phares*, 892 F. Supp. 2d at 845 (S.D. Tex. 2012) (quoting *Firestone Steel*, 927 S.W.2d at 614).

[71] Plaintiffs' Second Amended Compl. ¶ 18.

[72] *Gen. Motors*, 873 S.W.2d at 360.

[73] *Foltz*, 2009 WL 2596598, at *3; *accord Blythe*, 2013 WL 6190284, at *4.

[74] Ex. 8, Sample Packaging (3M 1054482-1054486).

These warnings, if heeded, reduced the risk of injury. A filtering facepiece respirator like the 3M 8710 respirator provides a protection factor of at least ten when properly fitted to a user's face.[75] This means that if a user wears the properly-fitted respirator where the concentration of asbestos in the air is no greater than ten-times the permissible exposure limit, then the respirator reduces the user's exposure to within the permissible exposure limit.[76]

Likely because he did not read 3M's warnings,[77] there is no evidence that LaFrentz performed a proper fit check; no evidence that he or a supervisor compared the concentration of dust in the air to the concentration for which the respirator was designed; and no evidence that he inquired with a supervisor or with 3M about whether the 3M 8710 respirator was suitable for his environment. Because LaFrentz did not read and heed the warnings and instructions 3M provided, Plaintiffs cannot prove that any defect in those warnings caused his injury. Accordingly, this failure-to-warn theory also fails as a matter of law.

## Conclusion

Plaintiffs' claims fail under the *Borg-Warner* standard, because their inadequate proof fails to show the frequency, regularity, and proximity of LaFrentz's exposure to asbestos or that his exposure dose while wearing 3M respirators was a substantial factor in causing his claimed injury. Plaintiffs' fraudulent-misrepresentation claim fails for an additional reason: Plaintiffs have failed to produce evidence that LaFrentz read or relied upon any 3M representation. Any attempted failure-to-warn claim also fails, because 3M has no duty to warn of dangers associated with other manufacturers' products, and because LaFrentz did not read and heed 3M's warnings

---

[75] Assigned Protection Factors, 71 Fed. Reg. 50122, 50161-50164 (Aug. 24, 2006).
[76] *Id.* at 50188, Table 1 – Assigned Protection Factors.
[77] Ex. 2, LaFrentz Dep. Vol. II, 108:4-15.

and instructions. Accordingly, the Court should grant 3M's motion and dismiss all claims asserted against 3M with prejudice.

Respectfully Submitted,

*/s/ Michele E. Taylor*
William Book
Southern District Bar No. 1761
Michele E. Taylor
Southern District Bar No. 14240
Leah M. Homan
Southern District Bar No. 3438531
TAYLOR BOOK ALLEN & MORRIS, L.L.P.
1221 McKinney, Suite 4300
LyondellBasell Tower
Houston, Texas 77010
Telephone: (713) 222-9542
Facsimile: (713) 655-7727
E-mail: wbook@tavlorbook.com
E-mail: mt@tavlorbook.com
E-mail: lhoman@taylorbook.com

and

*/s/ Kevin B. Brown*
Kevin B. Brown
Southern District Bar No.: 732586
THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201
Telephone: (214) 871-8200
Facsimile: (214) 871-8209
E-mail: kbrown@thompsoncoe.com

and

*/s/ W. Curt Webb*
W. Curt Webb
State Bar No.: 21035900
BECK REDDEN, LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720
E-mail: cwebb@beckredden.com

and

*/s/ Zandra Foley*
Zandra Foley
Southern District Bar No.: 632778
THOMPSON, COE, COUSINS & IRONS, L.L.P.
One Riverway, Suite 1400
Houston, Texas 77056
Telephone: (713) 403-8200
Facsimile: (713) 403-8299
E-mail: zfoley@thompsoncoe.com

and

/s/ *L. Michael Brooks, Jr.*
WELLS, ANDERSON & RACE, LLC
1700 Broadway, Suite 1020
Denver, Colorado 80290
Telephone: (303) 812-1256
Facsimile: (303) 830-0898
Email: mbrooks@warllc.com

**COUNSEL FOR DEFENDANT
3M COMPANY**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of July, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have thereby electronically served this document upon all counsel of record who are registered with the Court's CM/ECF system.

*/s/ Michele E. Taylor*
Michele E. Taylor