**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ILA LaFRENTZ, JIM LaFRENTZ,** | § | |
| **KATHERINE PORTERFIELD, and** | § | |
| **WILLIAM LaFRENTZ, Individually** | § | |
| **and as Representative of the Estate** | § | |
| **of JAMES B. LaFRENTZ** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:18-cv-04229** |
| | § | **JURY DEMANDED** |
| | § | |
| **3M COMPANY, ET AL** | § | |

**DEFENDANT 3M COMPANY'S MOTION**
**AND COMBINED MEMORANDUM OF AUTHORITIES**
**TO EXCLUDE EXPERT TESTIMONY**
<u>**FROM PLAINTIFFS' EXPERT CHING-TSEN BIEN**</u>

After their proposed expert witness Darell Bevis died, Plaintiffs designated Ching-tsen Bien as a replacement. 3M Company moves for an order *in limine* excluding Bien's testimony. Bien is not qualified to testify, nor do his generic opinions fit the facts of this case. His testimony therefore should be excluded under Rule 702 of the Federal Rules of Evidence and *Daubert*. Moreover, his testimony is more prejudicial than probative, so it should also be excluded under Rule 403 of the Federal Rules of Evidence. 3M submits this motion and memorandum of authorities in support of its motion to exclude Bien's testimony.

**LR 7.1(D) Certificate of Conferral**

Under LR 7.1(D) and this Court's Civil Procedures § 7.C., the undersigned counsel certifies that she conferred in good faith with Plaintiffs' counsel Bradley Peek, regarding the relief sought in this motion and is advised that this motion is opposed because Plaintiffs' counsel believes that Bien's testimony is admissible, while 3M believes it is not.

### Statement of the Issue to be Ruled upon by the Court

This motion presents three straightforward issues:

- Bien is a retired certified industrial hygienist who has never designed or manufactured a respirator; nor has he tested the 3M 8710 respirator in any relevant way. Rule 702 of the Federal Rules of Evidence requires an expert witness to be qualified by knowledge, skill, experience, training, or education. Given his lack of qualifications, shouldn't Bien's opinion testimony about the 3M 8710 respirator be excluded?

- Under Rule 702, expert testimony must be based on sufficient facts or data and reliable principles and methods. Here, Bien offers a wide variety of untested opinions, speculation, and supposition without a reliable basis for his opinions. Because his opinions are made without any indicia of reliability, shouldn't Bien's testimony be excluded on this basis, as well?

- Under Rule 702, expert testimony can be offered to help the jury understand the evidence or determine a fact in issue—in other words, it must "fit" the facts of the case.[1] Relatedly, Rule 403 allows the Court to exclude evidence when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or wasting time. Bien has made no effort to tailor his report to the specifics of this case. His opinions about respirator fit, submicron particles, and breathing resistance are offered completely in the abstract, without any connection to the facts at hand. Do Rules 403 and 702 bar Bien's testimony about the 3M 8710 respirator's ability to protect LaFrentz against asbestos given the absence of any fit between Bien's opinions and the facts of this case?

### Factual Background

Plaintiffs say their decedent James LaFrentz developed mesothelioma from his exposures to asbestos while he worked for General Dynamics Corporation at Air Force Plant 4 of the Carswell Air Force Base in Fort Worth.[2] LaFrentz testified that he used a 3M 8710 respirator while he worked as a drill press operator from 1979 to 1982,[3] and Plaintiffs say that defects in the respirator's design, warnings, and instructions allowed LaFrentz to be exposed to asbestos

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591-92 (1993).

[2] Plaintiffs' Second Amended Compl. ¶ 8; **Ex. A**, LaFrentz Dep. Vol. I, 55:13-17; **Ex. B**, LaFrentz Dep. Vol. II, 148:7-17.

[3] **Ex. A**, LaFrentz Dep. Vol. I., 78:7-20, 80:15-81:13.

that caused his injury.

In April 2021, Plaintiffs retained Bien after their original respirator expert, Darell Bevis, died.[4] Bien is a retired industrial hygienist who used to work for the Occupational Safety and Health Administration (OSHA). He left OSHA in 1995.[5] Bien is 84 years old, and has been retired since 1995, working only for plaintiffs as an expert since that time. He prepared a 21-page report entitled *Performance Issues of 3M 8710 Respirator*.[6] The report mainly consists of a lengthy generic narrative of various industrial-hygiene principles and regulatory history. His opinions about the 3M 8710 respirator are scattered throughout his report in no discernible order.

Bien's primary criticisms of the 3M 8710 respirator are that:

(1) the respirator doesn't fit all users due to non-adjustable headbands and the fact that the respirator was manufactured in only one size;

(2) the respirator couldn't be tested for adequate fit in a manner compliant with the then-existing regulatory and industry requirements;

(3) submicron-sized particles can pass through the respirator's filter media and can be inhaled by the user; and

(4) as the respirator is used in a contaminated environment, contaminants will be captured and "cake" on the filter surface, thereby increasing the filtration capability of the respirator as the caked-on material provides a barrier against inhalation of additional particles, but also causing increasing breathing resistance as the user must inhale and exhale more vigorously to draw air through the caked filter media.[7]

Importantly, however, Bien's report and later deposition testimony don't address whether *LaFrentz* encountered any of these problems. With regard to respirator fit, Bien is silent about whether LaFrentz ever had difficulty achieving a good fit when using a 3M 8710 respirator,

---

[4]   **Ex. C**, Bien Dep., *LaFrentz v. 3M*, No. 4:18-cv-04229 (S.D. Tex. June 11, 2021), at 11:18 to 11:20.

[5]   **Ex. D**, Bien Dep., *Medlin v. 3M Co.*, No. 2009 CA 008958 A (D.C. Super. Aug. 22, 2011), at 22:21 to 23:1; 36:11-13; 187:6-7.

[6]   **Ex. E**, Bien Report [ECF # 146-1] 1 of 21.

[7]   **Ex. E**, Bien Report 19.

whether the straps were too loose or too tight for him, whether the respirator surface ever deformed when he wore it, or whether the perimeter of the respirator fit tightly to his face when he used it. Further, Bien never considered whether General Dynamics provided LaFrentz information on how to perform a fit-test or fit-check for a 3M 8710 respirator to ensure that he had achieved a proper fit.

In addition, although Bien's report focuses heavily on the alleged ability of submicron-sized particles to pass through the filter media of the 3M 8710 respirator, Bien has no evidence that the asbestos fibers LaFrentz allegedly encountered contained submicron-size particles. The single asbestos air sample obtained from LaFrentz's work zone (a one-minute sample taken in 1981) included a count of fibers *greater than five microns* in length only.[8] It is unknown whether smaller (much less submicron-sized) fibers were present then, or at any other time.[9] There's simply no evidence that LaFrentz's exposures included the ultra-small particles that are the focus of Bien's criticisms.

Finally, on the issue of breathing resistance, nothing in Bien's report or deposition, or anything else in the record, suggests that LaFrentz ever experienced high levels of breathing resistance while wearing a 3M 8710 respirator, or the "caking" described in Bien's report.

Bien's report never mentions LaFrentz by name.[10] Nor does his report contain any information specific to LaFrentz.[11] Bien didn't even know LaFrentz's name when he was

---

[8]   **Ex. F**, Hallstein Dep., Jan. 12, 2021, at 35:11 to 36:1.

[9]   Further, as the Court is aware, LaFrentz didn't undergo an autopsy and no lung tissue was preserved to allow the parties to evaluate the fiber length of any asbestos that may have been in his lungs. *See generally* Order on Motion for Sanctions [ECF #133], March 31, 2021.

[10]   **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 81:14 to 81:17.

[11]   **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 81:18 to 81;24.

deposed.[12] Eventually, after extended inquiry by counsel that included spelling the decedent's last name no few than three times, Bien exclaimed, "Oh. Oh, LaFrentz, is that – LaFrentz, is that the plaintiff?"[13] Even after this exchange, Bien confirmed that his "report is general," and is "not really talking specific on certain – especially on the plaintiff."[14] Bien explained his report wasn't "specific … to the plaintiff of this case" because the "time was too short" and he wasn't able to review any deposition testimony.[15] He said, "I didn't really have too much time because I was several other cases working the same time. I didn't really spend too much time [to] read [LaFrentz's] deposition."[16]

Bien's report bears no date or title. It could have been written at any time for use in almost any case involving the 3M 8710 respirator. Indeed, the only customization that Bien appears to have done is to insert the word "asbestos" since that is the substance at issue here.[17] But the report continues to focus on smaller particles than asbestos, and it makes no attempt to address *LaFrentz's* alleged asbestos exposures. Asked if his report in this case was any different from his report in other asbestos cases, Bien responded, bafflingly: "Depend – depend the plaintiff exposure. Yeah. May be different. Depend the history of plaintiff exposure. For this I use —most time I just start at Eighties. Yeah. I have a more – more recent document. I didn't use it."[18] With nothing to tie his opinions to this case, Bien's opinions can't assist the factfinder.

---

[12]   **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 12:21 to 13:19.

[13]   **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 14:23 to 15:18.

[14]   **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 15:20 to 15:22.

[15]   **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 15:24 to 16:9.

[16]   **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 81:9 to 81:12.

[17]   **Ex. E**, Bien Report 2, 4, 5, 6, 10, 12, 13, 14, 16, 18, 19, 20.

[18]   **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 81:2 to 81:6.

## Legal Standard

Under Rule 702 of the Federal Rules of Evidence, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: … (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."[19] Expert testimony is not permitted to include facts that are within the common knowledge of jurors.[20] Expert testimony serves to inform the jury about affairs not within the understanding of the average layperson.[21] Therefore, "[a] district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."[22]

In addition to ensuring that the expert is qualified, Rule 702 "imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony … is not only relevant, but reliable.'"[23] The court must "make certain that an expert, whether basing testimony upon

---

[19]   Fed. R. Evid. 702.

[20]   *Kyong Hui Lane v. Target Corp.*, No. C-05-306, 2006 WL 870805 (S.D. Tex. Apr. 3, 2006) (citing *Scott v. Sears, Roebuck & Co*., 789 F.2d 1052, 1055 (4th Cir. 1986)); *see also* Fed. R. Evid. 702 advisory committee's note (suggesting expert testimony is inadmissible when "the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue" to which the expert will testify) (1972 comments).

[21]   *Bryant*, 78 F. Supp. 3d 626, 631 (S.D. Miss. 2015) (quoting *United States v. Moore*, 997 F.2d 55, 57 (5th Cir. 1993)).

[22]   *Id.* (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).

[23]   *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)); *Garcia v. BRK Brands, Inc*., 266 F. Supp. 2d 566, 573 (S.D. Tex. 2003).

professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."[24] The reliability requirement of *Daubert* means that the expert's opinion must be based on the methods and procedures of science, rather than on "subjective belief or unsupported speculation;" the expert must have good grounds for his or her belief.[25]

Although there is no precise formula for admissibility, the Supreme Court "has delineated certain factors to assist courts in evaluating the foundation of a given expert's testimony."[26] These include: "whether the theory or technique the expert employs is generally accepted; whether the theory has been subjected to peer review and publication; whether the theory can [be] and has been tested; whether the known or potential rate of error is acceptable; and whether there are standards controlling the technique's operation."[27] As this Court has recognized, the first factor – whether the theory or conclusion can be and has been tested – has been described as the "most significant *Daubert* factor."[28] Numerous cases have held that the failure to subject a proffered opinion to scientific testing alone justifies exclusion.[29]

## Summary of Argument

Plaintiffs' respirator performance expert, Ching-tsen Bien, has a variety of opinions about

---

[24]   *Kumho Tire*, 526 U.S. at 152.

[25]   *Moore v. Ashland Chem., Inc*., 151 F.3d 269, 275 (5th Cir. 1998) (*en banc*).

[26]   *Knight v. Kirby Inland Marine Inc*., 482 F.3d 347, 351 (5th Cir. 2007); *Isa v. Acad., Ltd*., No. 4:16-CV-2041 (S.D. Tex. Mar. 5, 2018).

[27]   *Wells v. SmithKline Beecham Corp*., 601 F.3d 375, 379 (5th Cir. 2010) (citing *Daubert*, 509 U.S. at 593).

[28]   *Garcia*, 266 F. Supp. 2d at 574 (quoting *Cummins v. Lyle Indus.*, 93 F.3d 362, 368 (7th Cir. 1996)).

[29]   *Id.* (citing *Brooks v. Outboard Marine Corp*., 234 F.3d 89, 92 (2d Cir. 2000); *Moore v. Ashland Chem., Inc.*, 151 F.3d at 279; *Pride v. BIC Corp.*, 218 F.3d 566, 577-78 (6th Cir. 2000); and *Bourelle v. Crown Equip. Corp*., 220 F.3d 532, 536-38 (7th Cir. 2000)).

respiratory protection, generally, and the 3M 8710 respirator, specifically. With respect to the respirator's design, manufacturing, and testing, Bien believes that the filter media of the 3M 8710 respirator doesn't filter out submicron-sized particles. He also believes that it is impossible to perform an effective fit check or fit test on the respirator, and that the respirator's single-size and non-adjustable headbands mean that it will not fit some users. These opinions are not based on reliable facts or data and bear no relation to the facts of this case. Bien knows nothing about LaFrentz's asbestos exposures or respirator use; he cannot address the industrial-hygiene issues surrounding LaFrentz's alleged use of the respirator in any way that will be helpful to the jury.

Bien also has opinions about the adequacy of the respirator's warnings, and the accuracy of its advertising. These opinions are beyond his expertise, and are unreliable when considered in light of the analysis required by the Federal Rules of Evidence and the substantive law. Further, Bien's testimony is more prejudicial than probative. Thus, it should be excluded in its entirety.

## Argument

**Bien's opinions regarding the 3M 8710 respirator are not based on reliable data, and are unrelated to the facts of this case.**

### 1.      Bien is unqualified to opine on design defect or negligence in the manufacturing or design of the 3M 8710 respirator.

Bien seeks to opine about a range of issues related to alleged defects in the 3M 8710 respirator. He is trained as an industrial hygienist and has general experience with respiratory-protection equipment. But his specific experience with negative-pressure, air-purifying, single-use, disposable respirators—including the 3M 8710 respirator—is inadequate to support the opinions he seeks to give. Although Bien worked for OSHA, he has no credentials concerning design or manufacture of respirators like the 3M 8710 respirator, nor does he have any expertise concerning marketing, advertising, or warnings regarding any product. Decades after being

separated from his government job, following an unsuccessful discrimination claim against the Department of Labor,[30] Bien has created a second, albeit somewhat less than part-time, career as a plaintiff's expert witness in cases involving respiratory-protection issues. As discussed below, his chief opinions are unrelated to his government career. They have been developed for litigation purposes only.

Bien has never designed a respirator.[31] His experience testing respirators is very limited. While at OSHA, he designed a filter-efficiency test related to lead.[32] He did not test the 3M 8710 respirator.[33] Bien's job duties at OSHA did not involve development of respiratory-protection programs for employers, or training workers to use respiratory protection.[34] In fact, Bien has never personally administered a respiratory-protection program for any employer.[35] He has never had to wear a respirator as a routine part of his job duties.[36]

Indeed, Bien has almost no personal or professional experience with the 3M 8710 respirator. Before being hired to give opinions about the respirator in litigation, Bien had never put on a 3M 8710 respirator.[37] Bien doesn't know what the 3M 8710 respirator is made of, referring to it as a "fabric respirator,"[38] and adding, "I know it's made of some fibers…. Later on

---

[30]  *See Ching-Tsen Bien v. Chao*, No. 00-5287, 2001 U.S. App. LEXIS 7610 (D.C. Cir. Mar. 16, 2001), *cert. denied*, 537 U.S. 975 (2002); **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 42:11 to 42:22.

[31]  **Ex. D**, Bien Dep., *Medlin v. 3M*, 190:22 to 191:2.

[32]  **Ex. D**, Bien Dep., *Medlin v. 3M*, 191:7-16.

[33]  **Ex. D**, Bien Dep., *Medlin v. 3M*, 192:21 to 193:2.

[34]  **Ex. D**, Bien Dep., *Medlin v. 3M*, 188:17 to 189:6.

[35]  **Ex. D**, Bien Dep., *Medlin v. 3M*, 189:7-9.

[36]  *See* **Ex. D**, Bien Dep., *Medlin v. 3M*, 189:10-13.

[37]  **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 96:21 to 96:24; **Ex. D**, Bien Dep., *Medlin v. 3M*, 189:14-16.

[38]  **Ex. E**, Bien Report 3.

it maybe -- … using some electric -- electric material added to the 8710.... [L]ater on I found out they're using certain electric materials in the 8710."[39]

Further, although Bien expresses several opinions about the adequacy of 3M warnings and instructions, he admits he is not an expert on warnings, instructions, labeling, or advertising for respirators like the 3M 8710 respirator.[40] He has never designed or drafted a warning for any product.[41] He has not drafted any product labels, instructions, or packaging, either.[42] Nor has he drafted advertising or marketing brochures for any products.[43] He has not performed any testing on the effectiveness of product warnings, labels, or instructions.[44] He has never published any peer-reviewed articles regarding product warnings, labels, or brochures.[45] When asked about how NIOSH approves packaging information for respirators, Bien was unable to respond, saying "I'm not too familiar with the process."[46]

In sum, Bien's qualifications and experience with the 3M 8710 respirator are so limited that he cannot be allowed to testify concerning its design, any alleged defect in it, or its warnings, instructions, or advertising. His testimony on those subjects should be excluded.

---

[39] **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 19:11 to 20:18. Although there are not "electric materials" in the 3M 8710 respirator, it's possible that Bien was referring to an electrostatic charge that was added to the filter media of the 3M 8710 respirator in 1982.

[40] **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 94:24 to 95:2; **Ex. D**, Bien Dep., *Medlin v. 3M*, 174:1-3.

[41] **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 95:3 to 95:5; **Ex. D**, Bien Dep., *Medlin v. 3M*, 181:22 to 182:2; 195:1-3.

[42] **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 95:6 to 95:8; **Ex. D**, Bien Dep., *Medlin v. 3M*, 181:19-21, 195:4-9.

[43] **Ex. D**, Bien Dep., *Medlin v. 3M*, 195:10-15.

[44] **Ex. D**, Bien Dep., *Medlin v. 3M*, 195:16 to 198:13.

[45] **Ex. D**, Bien Dep., *Medlin v. 3M*, 198:14-17.

[46] **Ex. D**, Bien Dep., *Medlin v. 3M*, 185:2-7.

     **2.**     **Bien's opinions concerning alleged design defects are purely speculative and have no scientific or engineering basis.**

Bien's report and deposition testimony disguise a simple fact: he has no evidence to show that there is a design defect in the 3M 8710 respirator. Without reliable evidence of a defect, none of his testimony is relevant to any issue in this product-liability action.

     **a.**     **Bien's opinions about filtration of submicron-sized particles are irrelevant and speculative.**

Bien's primary, albeit untested, criticisms of the 3M 8710 respirator focus on its alleged inability to filter submicron-sized particles. These opinions demonstrate just how cut-and-paste Bien's opinions are; they were developed for coal dust and silica cases (which involve those smaller particles), not for asbestos cases. OSHA's authoritative standards for asbestos workplace safety concern particles that are five microns in size; they do not consider submicron-size particles.[47] And Bien concedes that, based on at least one study done at OSHA's request, respirators like the 3M 8710 respirator are *effective* as protection against these larger particles; the study showed that the respirators have low penetration of asbestos fibers.[48] His opinions about submicron-sized particles, in other words, are irrelevant to this case, involving asbestos exposures only.

And even if they were relevant, Bien's opinions about submicron-sized particles are entirely speculative. Bien has never conducted a workplace protection factor study on the 3M 8710.[49] But he contends that 3M used flawed information in evaluating workplace protection factors for the 3M 8710 respirator, because it tested the respirator only in workplaces where the

---

[47]  **Ex. D**, Bien Dep., *Medlin v. 3M*, 105:6-14.

[48]  **Ex. D**, Bien Dep., *Medlin v. 3M*, 106:16-22; 108:17-19.

[49]  **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 97:12 to 97:15.

airborne contaminants were large particles.[50] The information on which Bien relied in making that statement is a South Korean study that did not involve the 3M 8710 respirator.[51] Bien has never seen any 3M document or testimony from any 3M witness suggesting that 3M chose only locations with large-particle contaminants to perform workplace protection factor studies.[52]

Returning again to his submicron-sized filtration theories, Bien suggests that an appropriate worksite for a workplace protection factor study would be one where the average size of airborne contaminant particles is one micron or smaller, but then readily admits he cannot think of any such worksite.[53] The only industry that Bien suggests could provide an appropriate test is welding.[54] But Bien concedes that the 3M 8710 respirator was never intended or approved as protection against welding fumes.[55] And he concedes that such a test would show nothing about the respirator's performance against asbestos: he admits that workplace protection factor studies *never* consider asbestos particle size, but simply measure fiber concentration. This means that Bien's large-vs.-small particle distinction (like his hypothetical workplace testing against welding fumes) is simply irrelevant.[56]

In prior cases, Bien admitted that he had never tested the 3M 8710 respirator in any way.[57] But in his deposition in this case, when asked about whether he had ever tested any of his theories regarding the filtration capability of the 3M 8710, he recalled vaguely: "I maybe

---

[50]   **Ex. D**, Bien Dep., *Medlin v. 3M*, 128:15-21.

[51]   **Ex. D**, Bien Dep., *Medlin v. 3M*, 128:22 to 130:12.

[52]   **Ex. D**, Bien Dep., *Medlin v. 3M*, 130:15 to 132:5.

[53]   **Ex. D**, Bien Dep., *Medlin v. 3M*, 142:13 to 143:14; 145:5-11.

[54]   **Ex. D**, Bien Dep., *Medlin v. 3M*, 140:14-17.

[55]   **Ex. D**, Bien Dep., *Medlin v. 3M*, 144:-19-21.

[56]   **Ex. D**, Bien Dep., *Medlin v. 3M*, 137:6-12.

[57]   **Ex. D**, Bien Dep., *Medlin v. 3M Co.*, 192:9-14.

sometime long time ago did it using some irritant smoke," apparently referencing some sort of

effort to test the filtration of the respirator using irritant smoke as the test challenge.[58] He has no

recollection as when he "maybe" tried to use irritant smoke to examine a 3M respirator.[59] Bien

admitted that his dimly recalled "irritant fume" testing was "qualitative" in nature, [60] meaning

that it produced no quantitative data. In fact, Bien concedes he has no "data relating to testing of

the 8710 that [he] personally did."[61] The "most significant *Daubert* factor" is whether a theory or

technique has been tested.[62] Bien's theories about the filtration capabilities of the 3M 8710

respirator are capable of being tested, but Bien has never performed any of the actual testing

required to validate those theories. His untested opinions should be excluded.

> **b.    Bien's opinions about fit testing, fit checking, and warnings also are inherently unreliable.**

Bien also says that the 3M 8710 respirator can't be reliably fit tested or fit checked. Bien

has never performed an actual fit test of the 3M 8710 respirator. At most, he recalls performing a

"fit check" of the respirator *on himself*—in essence, donning the respirator and attempting to

determine whether he had achieved an adequate fit for his own face.[63] He admitted that he

recorded no data from the "fit check" he performed on himself, saying that this is simply a "go"

or "no go" test, and not one from which any data could be derived.[64] And (despite his opinions

on these subjects) he has done nothing to test the respirator's fit on other people whose faces are

---

[58]   **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 22:8 to 22:9.

[59]   **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 22:12 to 22:15.

[60]   **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 22:21 to 22:22.

[61]   **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 10:24 to 11:2.

[62]   *Garcia*, 266 F. Supp. 2d at 574.

[63]   **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 21:18 to 22:5.

[64]   **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 22:16 to 22:19.

different sizes or shapes, nor to evaluate the fit capability of its non-adjustable straps.

Bien is aware that through most of the time that LaFrentz was allegedly using a 3M 8710 respirator, OSHA had concluded that the 3M 8710 respirator was capable of being fit checked (and fit tested) if the user followed the manufacturer's fit-checking instructions.[65] He simply claims, without evidence, that there was "no acceptable fit testing method for the 8710 as far as Plaintiff was concerned."[66] Except for his own brief effort to fit check himself at some unknown time, Bien has not done any testing to support his contention that the 3M 8710 respirator was incapable of being fit checked using the instructions that 3M provided for the product. Further, he has no information as to whether LaFrentz's employers ever even tried to perform a fit test or fit check on LaFrentz.[67]

Bien also criticizes OSHA-approved fit tests using saccharin, which became available in the early 1980s, because he claims that the saccharin particles "grow" under test conditions, allowing respirators to filter them more easily than the small particles that might be encountered in a work environment.[68] He has never tested this claim.[69] And, although OSHA considered this concern as part of its rulemaking process in deciding whether to accept the saccharin-mist test, the test was approved notwithstanding this issue.[70]

Although he admits he is not an expert on warnings,[71] Bien is also critical of 3M's advertising, claiming based on his submicron filtration arguments that the 3M 8710 respirator

---

[65]  **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 60:18 to 63:4.

[66]  **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 80:21 to 80:23; 88:21 to 89:22.

[67]  **Ex. C**, Bien Dep., *LaFrentz v. 3M*, 89:23 to 90:8.

[68]  **Ex. E**, Bien Report at 9.

[69]  *See* **Ex. D**, Bien Dep., *Medlin v. 3M*, 162:17 to 164:8.

[70]  **Ex. D**, Bien Dep., *Medlin v. 3M*, 164:19 to 166:8.

[71]  **Ex. D**, Bien Dep., *Medlin v. 3M*, 174:1-3.

was inappropriately marketed for use around asbestos.[72] As discussed, this opinion is irrelevant, because standards for asbestos protection measure fiber count, not particle size, and because asbestos fibers are generally not submicron-sized particles. He also claims (irrelevantly, in this asbestos case) that 3M was wrong to market the 8710 as a means of protecting against submicron-size-sized particles like silica. Despite holding that opinion, Bien concedes that NIOSH certification required the respirator to be tested against silica dust particles of .4 to .6 microns, *i.e.*, submicron-sized particles.[73] He admits the 8710 passed those certification tests.[74] Bien's opinions about 3M warnings and advertising are speculative and unable to assist the jury.

### c.   Bien's opinions about breathing resistance also are speculative and unreliable.

Bien has a number of opinions related to so-called breathing resistance, which describes the way in which a respirator may become harder to breathe through under hot and humid conditions or when its filter becomes loaded with dust. These opinions are speculative and unreliable at best; at worst, they are objectively wrong.

For example, Bien believes that breathing resistance reduces the functionality of the 3M 8710 respirator; but this opinion is not based on a review of any study, analysis, or 3M materials.[75] Bien did not recall the results of an OSHA-requested study in which dust/mist respirators like the 3M 8710 respirator were tested in a highly humid environment. In fact, the respirators passed the test without any finding of impaired filtration capabilities.[76]

---

[72]   **Ex. D**, Bien Dep., *Medlin v. 3M*, 103:15-16.

[73]   **Ex. D**, Bien Dep., *Medlin v. 3M*, 155:6-20.

[74]   *See* **Ex. D**, Bien Dep., *Medlin v. 3M*, 151:2-7.

[75]   **Ex. D**, Bien Dep., *Medlin v. 3M*, 112:17-21; 114:3-12.

[76]   *See* **Ex. D**, Bien Dep., *Medlin v. 3M*, 109:16 to 110:16.

Bien also claims that the 3M 8710 respirator and other single-use respirators were designed with lower breathing resistance so that they could more easily be used by workers who already had asbestosis or other conditions that impaired their lung capacity.[77] But he admits that the only information that supports this opinion is something his former OSHA supervisor allegedly told him informally sometime in the 1970s.[78] Again, Bien's supposed expert "opinion" is based on no review of 3M materials, peer-reviewed literature, studies, or testing.

Bien also asserts baldly that the 3M 8710 respirator failed a breathing-resistance test.[79] However, he concedes that the 3M 8710 respirator *passed* breathing-resistance tests multiple times, when it was certified and recertified by NIOSH.[80] Bien also implies that 3M failed to test the 3M 8710 respirator against asbestos as part of the certification process.[81] Yet, as he agrees, the regulation under which NIOSH certified respirators in the 1980s – under 30 C.F.R. Part 11 – did not require testing it against asbestos.[82]

Under Rule 702, expert testimony is admissible only when it is based on facts and adequate data, and when it will assist the jury. Opinion evidence that is conjectural or speculative (much less evidence that is objectively incorrect, as the expert concedes) is not permitted. Expert testimony must be excluded when the expert is unable to show a reliable basis for his or her theory. Bien's testimony does not meet those standards.

### 3. Bien knows virtually nothing about the facts of this case; his opinions cannot assist the jury in deciding the specific issues related to Plaintiffs' claims, and

---

[77] **Ex. D**, Bien Dep., *Medlin v. 3M*, 147:1-16.

[78] **Ex. D**, Bien Dep., *Medlin v. 3M*, 147:17 to 148:5; 148:13-16.

[79] **Ex. D**, Bien Dep., Medlin v. 3M, 148:17-20.

[80] **Ex. D**, Bien Dep., *Medlin v. 3M*, 148:21 to 152:15.

[81] **Ex. D**, Bien Dep., *Medlin v. 3M*, 152:16-20.

[82] **Ex. D**, Bien Dep., *Medlin v. 3M*, 152:21 to 153:5.

**his testimony would be substantially more prejudicial than probative.**

Bien's opinions about the 3M 8710 respirator are abstract complaints that he copies and pastes from one report to another, with little regard to whether his opinions actually relate to the known facts. Bien is entirely uninterested in the facts of this particular case, caring only about whether LaFrentz identified a respirator that could be a 3M product. Believing that issue to be established to his satisfaction, Bien simply presented his off-the-shelf report against 3M, customizing it only by substituting the word "asbestos" for the words "coal dust" or "silica," which were the airborne contaminants in the last case where he deployed that report against 3M. Jurors are assisted when expert witnesses apply their specialized knowledge to the facts of a particular case, not when, as here, an opinion witness simply provides a generic report that uses the lawsuit as another forum for a stump speech.

Bien sought no information about LaFrentz, whom his report never mentions. He makes no effort to address the circumstances of LaFrentz's alleged asbestos exposure, how he was exposed, or the work conditions he encountered. Without that background information, Bien cannot provide testimony that assists the jury.

The facts about LaFrentz's alleged exposures to asbestos are critical. With only a one-minute air sample taken on a single day in 1981, Bien cannot say that LaFrentz was exposed to submicron-sized fibers, or to particles of asbestos or in what concentration—much less whether the 3M 8710 respirator would have provided him with adequate protection. Similarly, Bien's opinions about respirator fit are untethered to the facts about how the respirator fit LaFrentz. Bien has no information about whether LaFrentz had any difficulty obtaining an appropriate face seal for his respirators, whether he had any difficulty with broken or brittle headbands, or whether LaFrentz or his employers ever consulted the information on the 3M boxes to

understand the appropriate uses and limitations of the 3M 8710 respirator. In short, every major subject area of Bien's testimony is simply an abstract criticism with no link to the facts of this case. Indeed, he has defined his role in the litigation so narrowly that he was unprepared to talk about nearly any industrial-hygiene issues that were not specifically associated with the performance of 3M 8710 respirator.

Under Rule 702, an expert's opinion must be based upon evidence in the record, and on facts or adequate data. Expert testimony should be excluded when, as here, the expert is unable to show a reliable basis for his opinions.

Further, under Rule 403, when the probative value of an expert opinion is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or wasting time, the testimony should be excluded. Here, without any linkage to the facts of this case, Bien's generic opinions have little or no probative value, while the risks of unfair prejudice, jury confusion, delay, and waste of time are substantial. Accordingly, his testimony should be excluded.

## CONCLUSION

Bien has a series of abstract opinions about the 3M 8710 respirator. He does not concern himself with tailoring those opinions to this case; indeed, he has worked hard to avoid tying his opinions to the facts of LaFrentz's respirator use. And he replaces solid scientific research with speculation and conjecture. Bien is acutely unqualified to testify about the 3M 8710 respirator's effectiveness, design, warnings, or any issues about industrial hygiene at LaFrentz's worksites. He has never been accepted as an expert witness by any court on any subject. His opinions cannot aid the jury. His testimony should be excluded.

Defendant 3M Company respectfully requests that the Court enter an order excluding

18

Bien from testifying in this action.

Dated this 14th day of July 2021.

Respectfully Submitted,

/s/ Michele E. Taylor
William Book
Southern District Bar No. 1761
Michele E. Taylor
Southern District Bar No. 14240
Leah M. Homan
Southern District Bar No. 3438531
TAYLOR BOOK ALLEN & MORRIS, L.L.P.
1221 McKinney, Suite 4300
LyondellBasell Tower
Houston, Texas 77010
Telephone: (713) 222-9542
Facsimile: (713) 655-7727
E-mail: wbook@tavlorbook.com
E-mail: mt@tavlorbook.com
E-mail: lhoman@taylorbook.com

and

/s/ Kevin B. Brown
Kevin B. Brown
Southern District Bar No.: 732586
THOMPSON, COE, COUSINS & IRONS, L.L.P.
700 N. Pearl Street, 25th Floor
Dallas, Texas 75201
Telephone: (214) 871-8200
Facsimile: (214) 871-8209
E-mail: kbrown@thompsoncoe.com

and

/s/ W. Curt Webb
W. Curt Webb
State Bar No.: 21035900
BECK REDDEN, LLP
1221 McKinney Street, Suite 4500
Houston, Texas 77010
Telephone: (713) 951-3700
Facsimile: (713) 951-3720
E-mail: cwebb@beckredden.com

19

and

*/s/ Zandra Foley*
Zandra Foley
Southern District Bar No.: 632778
THOMPSON, COE, COUSINS & IRONS, L.L.P.
One Riverway, Suite 1400
Houston, Texas 77056
Telephone: (713) 403-8200
Facsimile: (713) 403-8299
E-mail: zfoley@thompsoncoe.com

and

*/s/ L. Michael Brooks, Jr.*
WELLS, ANDERSON & RACE, LLC
1700 Broadway, Suite 1020
Denver, Colorado 80290
Telephone: (303) 812-1256
Facsimile: (303) 830-0898
Email: mbrooks@warllc.com


**COUNSEL FOR DEFENDANT**
**3M COMPANY**


## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of July, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have thereby electronically served this document upon all counsel of record who are registered with the Court's CM/ECF system.

*/s/ Michele E. Taylor*
Michele E. Taylor