United States District Court
Southern District of Texas
**ENTERED**
September 10, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JAMES B LAFRENTZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:18-CV-4229 |
| | § | |
| LOCKHEED MARTIN CORPORATION, *et al*, | § | |
| | § | |
| Defendants. | § | |

## <u>ORDER</u>

Pending before the Court is the Defendant 3M Company's ("3M") Motion for Summary Judgment (Doc. No. 164).[1] The Plaintiffs filed a response (Doc. No. 186) and the Defendant filed a reply (Doc. No. 187). After considering the motion, briefing, summary judgment evidence, and applicable law, the Court grants the motion.

## I.     Background

This is an asbestos case. The Plaintiffs are family members of the decedent, James LaFrentz, who was employed by General Dynamics Corporation from 1978 to 1984 at the Carswell Airforce Base in Fort Worth, Texas. During that time, LaFrentz was a drill press operator and a machinist. He drilled holes into and performed belt sanding on "coupons" used in the construction of military aircraft. The Plaintiffs claim that LaFrentz, while performing this job, was exposed to asbestos and that the 3M dust mask (the 8710 Respirator) he wore did not sufficiently protect him from that exposure. He filed suit in 2018, but unfortunately died on October 12, 2019 from, according to the Plaintiffs, mesothelioma. The Plaintiffs have settled with General Dynamics, so

---

[1] There are also many other motions from both parties pending, including various motions to exclude experts and motions in limine. The Court need not rule on these motions because, as will be discussed below, summary judgment is warranted even when the Court considers all the parties' experts.

the only remaining defendant is 3M. The Plaintiffs have alleged four causes of action against 3M: (1) negligence; (2) design defect; (3) fraudulent misrepresentation; and (4) marketing defect (failure to warn).

## II.      Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

## III.      Analysis

3M argues that all of the Plaintiffs' claims against it fail. First, it argues that the Plaintiffs, as a matter of law, cannot show causation, which is an essential element for both their negligence and design defect claims. Next, 3M argues that LaFrentz's acknowledgement that he did not read

2

the instructions or warnings that came with the 3M 8710 Respirator is fatal to both his fraudulent misrepresentation and failure to warn claims. 3M further argues that the Plaintiffs' failure to warn claim also fails because 3M had no duty to warn of risks inherent in other manufacturers' products—namely, the risks associated with asbestos exposure that arise from products containing asbestos.

## A.       Negligence and Design Defect

Causation is an essential element of both negligence and defective design in a products liability context. *Borg-Warner Corp. v. Flores*, 232 S.W.3d 765, 774 (Tex. 2007). In a typical asbestos case in which the plaintiff alleges that asbestos exposure caused him mesothelioma, a plaintiff "must show general causation—that asbestos can cause mesothelioma—and specific causation—that [the defendant's] products caused [the plaintiff's] mesothelioma." *Michel v. Ford Motor Co.*, CV 18-4738, 2019 WL 118008, at *1 (E.D. La. Jan. 7, 2019). In Texas, to show specific causation, a mesothelioma plaintiff "must prove that the defendant's product was a substantial factor in causing the alleged harm." *Borg-Warner Corp.*, 232 S.W.3d at 773. "[P]roof of mere frequency, regularity, and proximity [of exposure] is necessary but not sufficient, as it provides none of the quantitative information necessary to support causation under Texas law." *Id.* at 772. Here, because the Plaintiffs' claim is not against an asbestos manufacturer, they are relieved of the burden to show "Defendant-specific evidence," *id.* at 773, of who manufactured the asbestos that allegedly caused LaFrentz's mesothelioma. Still, the Plaintiffs must show that, while LaFrentz was wearing the 3M respirator, "the dose [of asbestos] was a substantial factor in causing," *id.*, LaFrentz's mesothelioma because they argue that the 8710 Respirator did not sufficiently protect LaFrentz from asbestos in products manufactured by others.

3M argues that the Plaintiffs have failed to produce sufficient evidence of the "frequency, regularity, and proximity" of LaFrentz's asbestos exposure. Specifically, the Plaintiffs need to provide evidence of the frequency, regularity, and proximity of LaFrentz's asbestos exposure *while he was wearing the 8710 Respirator*. According to 3M, the Plaintiffs' main proof, an air sample report created by a General Dynamics employee while LaFrentz was working there in February of 1980, is not sufficient. The sampling report shows that, for one minute, fibers in the air were counted while LaFrentz sanded a "P 653 Panel" that contained adhesive identified as "FMS 3018." (Doc. No. 163, Ex. 9). In addition, the report shows that LaFrentz was wearing the 8710 Respirator during the testing. (*Id.*). The report concludes that the testing showed 28.8 fibers of asbestos per cubic centimeter of space. (*Id.*). LaFrentz testified in his deposition that he sanded approximately 1000 coupons during his lifetime. (Doc. No. 163, Ex. 2 at 4). Based on these two data points, the Plaintiffs' expert Kenneth Garza (whose testimony 3M has also moved to exclude[2]) calculated his opinion of LaFrentz's total asbestos exposure. To do so, Garza assigned the same concentration of fibers shown in the sampling report (28.8 fibers/cubic centimeter) to 1000 instances of sanding by LaFrentz. (*See* Doc. No. 163, Ex. 5 at 31). Using this calculation, Garza came to the conclusion that LaFrentz's cumulative exposure to asbestos while he worked for General Dynamics was 0.960 fiber-years/cubic centimeter. (*Id.*).

First, 3M argues that this method by Garza is flawed because, even if the air sampling for that minute is accurate, the Plaintiffs have provided no evidence that every time that LaFrentz sanded a panel, the same amount of asbestos would have been released. In response, the Plaintiffs direct the Court to LaFrentz's deposition testimony in which LaFrentz describes his job duties in

---

[2] *See* Doc. No. 118. 3M moves to exclude Garza based under Federal Rule of Evidence 702. It argues that Garza's testimony is not supported by sufficient facts or data and that the methodology underlying his opinions is unreliable. As will be explained, the Court need not rule on the merits of this motion because, even considering Garza's proposed testimony, the Plaintiffs have failed to raise a fact issue on causation.

detail. (*See* Doc. No. 186, Ex. 1 at 59–61). This very testimony, however, demonstrates 3M's point. LaFrentz recalled in his deposition that there were "three different varieties" of coupons. (*Id.* at 59). He further elaborated that he believed that the different varieties were composed of different materials. (*Id.*). At another time in the deposition, LaFrentz repeated that there were three different types of coupons, and further stated that he was unaware whether the different varieties all had the same adhesive on them as when the air sampling took place, or even whether they had adhesive on them at all. (*See* Doc. No. 163, Ex. 2 at 4, 6). LaFrentz's own testimony, then, demonstrates that Garza's extrapolation from the sampling may not accurately measure LaFrentz's cumulative asbestos exposure.

Next, 3M provides evidence in the form of its own expert Jennifer Sahmel's deposition testimony that the sampling report does not necessarily indicate that the fibers measured were in fact asbestos fibers.[3] According to Sahmel, while the sampling report itself indicates that it detected asbestos, the testing method, called "phase contrast microscopy," on which the report is based simply measures all fibers in the atmosphere of a certain size. (*See* Doc. No. 163, Ex. 3 at 7). Therefore, in Sahmel's view, it is not possible to know how many, if any, of the measured fibers were actually asbestos fibers. (*See id.*). Indeed, the Plaintiffs' own expert Garza testified similarly in his deposition. (*See* Doc. No. 163, Ex. 4 at 2) ("You're actually counting fibers within a certain sizing criteria, which include asbestos."). The Plaintiffs do not offer evidence to contradict this assertion, but instead simply argue that phase contrast microscopy is a standard industrial hygiene test to measure toxins in the air. (*See* Doc. No. 186 at 9). This may be true, but

---

[3] The Plaintiffs have moved to exclude some of Sahmel's testimony under Rule 702. (*See* Doc. No. 167). Specifically, the Plaintiffs object to Sahmel's testimony that LaFrentz may have been exposed to asbestos at jobs other than his employment with General Dynamics during his life (*id.* at 7–8) and opinions on the efficacy of the 8710 Respirator (*id.* at 8–9). The Court relies on neither of these opinions in finding that the Plaintiffs have failed to show a genuine dispute of material fact on the causation element, so it need not rule on these objections to Sahmel's testimony.

5

does not refute Sahmel's and Garza's opinions that phase contrast microscopy may measure fibers in the air other than asbestos.

Moreover, even if one accepts that the method supporting the sampling report accurately measured asbestos in the atmosphere, the Plaintiffs have provided no evidence that the asbestos fibers made it *inside the respirator*. Even if the Court were to assume that all of Garza's calculations are accurate, they only show that there was asbestos in the atmosphere while LaFrentz was working. Using only Garza's report and deposition, the evidence could equally indicate that the 8710 Respirator was functioning perfectly and did protect LaFrentz from any asbestos. In their response brief, the Plaintiffs direct the Court to the report and deposition of their expert Ching-Tsen Bien. Bien is an industrial hygienist who has opined that the 3M 8710 Respirator is defective because its filter allows in too much dust and the respirator does not seal to the face adequately. (*See* Doc. No. 186, Ex. 4, Ex. 5). Significantly, however, neither Bien's report nor his deposition testimony addresses whether LaFrentz encountered any of the problems he identified. Bien himself conceded that his "report is general" and that it is "not really talking specific on certain -- especially on the plaintiff." (Doc. No. 187, Ex. 1 at 2). While Bien's report may suffice as evidence of general causation, it does not provide more than a scintilla of evidence as to *specific causation*—that the respirators that LaFrentz wore were defective in the way that Bien opines is possible in the 8710 Respirator.

The Plaintiffs have not carried their summary judgment burden to show a dispute of material fact as to whether asbestos exposure while LaFrentz worked at General Dynamics was a substantial factor in causing his mesothelioma. Moreover, assuming there was asbestos in the atmosphere while LaFrentz worked, the Plaintiffs have not shown any evidence that it was able to get through the 3M respirators that LaFrentz wore. This failure is fatal to the element of causation,

essential to the Plaintiffs' negligence and design defect claims. Accordingly, summary judgment as to the Plaintiffs negligence and design defect claims is appropriate.

**B.      Fraudulent Misrepresentation**

In a Texas products liability fraudulent misrepresentation case, the plaintiff must show that he actually relied on the alleged misrepresentation by the defendant. *See Allgood v. R.J. Reynolds Tobacco Co.*, 80 F.3d 168, 171 (5th Cir. 1996). The plaintiff cannot assert reliance on a written representation he did not read. *Glenn v. L. Ray Calhoun & Co.*, 83 F. Supp. 3d 733, 745 n.5 (W.D. Tex. 2015).

Here, LaFrentz testified during his deposition that he never read any brochures, advertisements, warnings, or any other literature associated with the 3M 8710 Respirator. (*See* Doc. No. 163, Ex. 2 at 3). 3M argues this admission is fatal to the Plaintiffs' fraudulent misrepresentation claim. The Plaintiffs argue in their response brief that 3M is liable for fraud not based on affirmative *misrepresentations*, but instead based on a failure to disclose theory. (*See* Doc. No. 186 at 13). The Plaintiffs are not permitted to rely on this unpled theory. In their second amended complaint, the operative pleading, the Plaintiffs asserted that "3M Company made representations that reasonably implied to workers and users of its dust masks that the asbestos and asbestos-containing products in question were safe and would not cause injury if dust masks were worn." (Doc. No. 48 ¶ 20). The Plaintiffs pled that 3M made representations to the users of the 8710 Respirator, but LaFrentz admitted in his deposition that he did not read any representations by 3M. Accordingly, the Plaintiffs cannot show reliance on the representations and summary judgment is appropriate.

### C.   Marketing Defect (Failure to Warn)

Similar to a fraudulent misrepresentation claim, in a failure-to-warn claim, "failing to read the warnings provided negate[s] the causal link between the alleged inadequate warnings and the user's injury." *Foltz v. Smith & Wesson Corp.*, 3:08-CV-0858-K, 2009 WL 2596598, at *3 (N.D. Tex. Aug. 20, 2009). The Plaintiffs argue in their response brief that 3M failed to provide *any* warnings related to the 8710 Respirator, much less adequate ones. (*See* Doc. No. 186 at 11–13). According to the Plaintiffs, it is "not a plaintiff's burden to prove that a warning was not adequate when there is no evidence that a warning was ever given." (*Id.* at 12).[4] Again, while this may be a true legal principle, it is not applicable here because of the Plaintiffs' judicial admission that 3M did make representations with and relating to the 8710 Respirator.

Moreover, and to the extent that Plaintiffs have pleaded a claim against 3M for the failure to warn of the risks associated with asbestos exposure, that claim also fails because 3M had no duty to warn of risks caused by other manufacturers' products. *See Phares v. Actavis-Elizabeth LLC*, 892 F. Supp. 2d 835, 845 (S.D. Tex. 2012) ("A manufacturer generally *does not have a duty to warn or instruct about another manufacturer's products*, even though a third party might use those products in connection with the manufacturer's own product.") (quoting *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996)) (alterations omitted). Summary judgment as to a claim for 3M's failure to warn of risks associated with asbestos exposure from other manufacturers' products is appropriate.

---

[4] There is, however, evidence that a warning was given. 3M has provided as summary judgment evidence the Sample Packaging that would have come with the 8710 Respirator. The Plaintiffs have moved to strike that evidence based on a lack of foundation. 3M argues that the Sample Packaging is self-authenticating under Federal Rule of Evidence 902(7), which provides for the self-authentication of labels "purporting to have been affixed in the course of business and indicating origin, ownership, or control." Fed. R. Evid. 902(7). Regardless of whether this is accurate, 3M also provided a declaration to authenticate the Sample Packaging. (Doc. No. 187, Ex. 2). This declaration cures any authentication problems and the Plaintiffs' objection to the authentication of the Sample Packaging is hereby overruled.

## IV.    Conclusion

For the foregoing reasons, the Defendant's motion for summary judgment (Doc. No. 163) is hereby granted in full.

Signed at Houston, Texas, this 10th day of September, 2021.

Andrew S. Hanen
United States District Judge